No. 24-20485

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

DARAIUS DUBASH; FARAZ HARSINI,

*Plaintiffs-Appellants,*

v.

CITY OF HOUSTON; HOUSTON DOWNTOWN PARK CORPORATION; ROBERT DOUGLAS; VERN WHITWORTH; DISCOVERY GREEN CONSERVANCY, FORMERLY KNOWN AS HOUSTON DOWNTOWN PARK CONSERVANCY; BARRY MANDEL,

*Defendants-Appellees.*

## BRIEF OF APPELLANTS
## DARAIUS DUBASH AND DR. FARAZ HARSINI

On Appeal from the United States District Court for the Southern District of Texas, Houston Division, Civil Action 4:23-cv-03556 Honorable Andrew S. Hanen Presiding

Sara Berinhout
FOUNDATION FOR INDIVIDUAL
RIGHTS & EXPRESSION (FIRE)
510 Walnut St., Ste. 900
Philadelphia, PA 19106
(215) 717-3473
sara.berinhout@thefire.org

John Greil
Steven T. Collis
Law & Religion Clinic
University of Texas School of Law
727 East Dean Keeton St.
Austin, TX 78705
(512) 471-5151
john.greil@law.utexas.edu
steve.collis@law.utexas.edu

(Additional counsel listed on next page)

JT Morris

FOUNDATION FOR INDIVIDUAL
RIGHTS & EXPRESSION (FIRE)
700 Pennsylvania Ave. SE, Ste. 340
Washington, DC 20003
(215) 717-3473
jt.morris@thefire.org

*Counsel for Plaintiffs-Appellants*

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

*Dubash, et al. v. City of Houston,* No. 24-20485

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. Daraius Dubash
   *Plaintiff*

2. Dr. Faraz Harsini
   *Plaintiff*

3. John Greil
   Steven T. Collis
   Law and Religion Clinic
   University of Texas School of Law
   727 E. Dean Keaton St.
   Austin, TX 78705
   *Attorneys for Plaintiffs*

4. JT Morris
   Gabe Walters
   Zach Silver
   Foundation for Individual Rights and Expression
   700 Pennsylvania Ave. SE, Ste. 340
   Washington, D.C. 20003
   *Attorneys for Plaintiffs*

5. Sara Berinhout
   Daniel Ortner

Foundation for Individual Rights and Expression
510 Walnut St., Ste. 900
Philadelphia, PA 19106
*Attorneys for Plaintiffs*

6. City of Houston, Texas
City of Houston Legal Department
900 Bagby, Fourth Floor
Houston, TX 77002
*Defendant*

7. Houston Downtown Park Corporation
City of Houston Legal Department
900 Bagby, Fourth Floor
Houston, TX 77002
*Defendant*

8. Officer Robert Douglas
Houston Police Department Headquarters
1200 Travis St.
Houston, TX 77002
*Defendant*

9. Officer Vern Whitworth
Houston Police Department Headquarters
1200 Travis St.
Houston, TX 77002
*Defendant*

10. Discovery Green Conservancy
f/k/a Houston Downtown Park Conservancy
900 Bagby, Fourth Floor
Houston, TX 77002
*Defendant*

11. Barry Mandel
927 W. 19th St., Unit A
Houston, TX 77008-3301

*Defendant*

12. Andrew S. Holland
    Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
    909 Fannin St., Ste. 3300
    Houston, TX 77010
    *Attorney for Defendants City of Houston, Texas, Officer Robert
    Douglas, Officer Vern Whitworth, Discovery Green Conservancy,
    and Barry Mandel*

13. Laura Flores Macom
    Michael H. Wallis
    Langley & Banack, Inc.
    745 E. Mulberry Ave, Ste. 700
    San Antonio, TX 78212
    *Attorneys for Defendant Houston Downtown Park Corporation*

                                        */s/ John Greil*
                                        John Greil

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Pursuant to Fifth Circuit Rule 28.2.3 and Federal Rule of Appellate Procedure 34(a)(1), Plaintiffs-Appellants respectfully request oral argument. This case presents important constitutional questions, including whether the government may evade its obligation to uphold First Amendment rights in public parks and other public forums by contracting with private third parties to operate them. The outcome of this case will have significant implications for fundamental constitutional rights in contexts far beyond the public park at issue here. Oral argument would assist the panel in more fully considering each side's argument and the weight of these issues.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ......................................... i

STATEMENT REGARDING ORAL ARGUMENT ................................ iv

STATEMENT OF JURISDICTION............................................................ 1

STATEMENT OF THE ISSUES PRESENTED ..................................... 2

PRELIMINARY STATEMENT................................................................ 3

STATEMENT OF THE CASE ................................................................ 5

    Discovery Green is a public park in downtown Houston that the City, its Downtown Park Corporation, and the Discovery Green Conservancy jointly maintain. .............................................. 5

    The City holds Discovery Green out as open to the public for peaceful protest and personal expression. ...................................... 7

    Plaintiffs Dubash and Harsini use their First Amendment rights to advocate for and proselytize nonviolence against animals. ........................................................................................... 8

    Park Conservancy staff and City police repeatedly expel Dubash and Harsini from the Park—and ultimately arrest Dubash—based on the content of their advocacy............................ 9

    The Conservancy confirms Plaintiffs are subject to an ongoing speech prohibition in Discovery Green, of which the City and its Park Corporation are aware. .................................... 11

PROCEDURAL HISTORY ..................................................................... 12

SUMMARY OF ARGUMENT ................................................................ 13

STANDARD OF REVIEW ..................................................................... 17

ARGUMENT ........................................................................................... 18

I.    The Conservancy and Its Then-President Acted Under Color of State Law. ................................................................... 18

A.    The Conservancy and its management act jointly with the City and the City's Park Corporation to operate a public park. ............................................................................... 19

B.    By operating a public park, the Conservancy and its management staff undertake a traditional, exclusive public function. ........................................................................ 21

II.    Defendants Violated, and Continue to Violate, Dubash and Harsini's Constitutional Rights. ...................................................... 23

A.    Dubash and Harsini Stated a Claim for Viewpoint- and Content-Based Violations of Their First Amendment Rights in a Public Forum (Count 1). ..................................... 23

1.    The Conservancy's prohibition on speech it deems "offensive" is an impermissible viewpoint-based restriction in a public forum. ........................................ 24

2.    Defendants' self-described prohibition on videos depicting "violence towards animals" is a content-based restriction that fails strict scrutiny. ................. 26

B.    Dubash and Harsini Stated a Claim for an Unconstitutional Prior Restraint (Count 2). ......................... 32

C.    Dubash Stated a Claim for a Violation of his Free Exercise Rights (Count 5). ...................................................... 36

D.    Dubash and Harsini Stated a First Amendment Damages Claim for Direct and Retaliatory Violations (Count 4). ................................................................................ 39

E.    Dubash Stated a Damages Claim for False Arrest and Unconstitutional Seizure in Violation of his Fourth Amendment Rights (Count 7). ............................................... 43

1.    The district court erred by failing to consider whether a reasonable person in Dubash's position would believe he was under arrest. ............................. 44

      2.     Well-settled Fourth Amendment principles foreclose a probable cause finding in this case. .......... 46

III.  Each Defendant Is Liable for Violations of Plaintiffs' Constitutional Rights. ....................................................... 48

    A.   The Complaint sufficiently alleges the City and its Park Corporation are liable under *Monell* for violating Plaintiffs' First and Fourth Amendment rights (Count 3). ............................................................................ 48

        1.     Dubash and Harsini sufficiently allege the City failed to train state actors regarding the First Amendment's applicability to Discovery Green. ........ 49

        2.     The Complaint pleads official City policy of delegating rulemaking authority to the Conservancy without ensuring the protection of constitutional rights. ....................................................... 52

        3.     The Complaint sufficiently alleges the City is liable for delegating final policymaking authority to the Conservancy. ...................................................... 54

        4.     Plaintiffs also sufficiently allege the government ratified the Conservancy's speech prohibition post-enforcement. ............................................................ 56

    B.   The Complaint alleges the Conservancy and its former president are liable for violating Plaintiffs' constitutional rights (Counts 1, 2, 4, and 5). ........................ 60

    C.   Plaintiffs sufficiently allege Officers Douglas and Whitworth are liable for violating Plaintiffs' rights and not entitled to qualified immunity (Counts 4 and 7). .......... 61

IV.  Only Immediate Injunctive Relief Can Resolve the Ongoing Violations of Dubash and Harsini's First and Fourth Amendment Rights. ........................................................ 65

CONCLUSION ................................................................. 67

# TABLE OF AUTHORITIES

**Cases**                                                              **Page(s)**

*Alexander v. United States*,
   509 U.S. 544 (1993)................................................................33

*Animal Legal Def. Fund v. Wasden*,
   878 F.3d 1184 (9th Cir. 2018) ...............................................32

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................49

*Bailey v. Iles*,
   87 F.4th 275 (5th Cir. 2023)..................................................64

*Beckerman v. City of Tupelo*,
   664 F.2d 502 (5th Cir. 1981) .................................................35

*BeVier v. Hucal*,
   806 F.2d 123 (7th Cir. 1986) .................................................48

*Bevill v. Fletcher*,
   26 F.4th 270 (5th Cir. 2022).............................................5, 17

*Bigford v. Taylor*,
   834 F.2d 1213 (5th Cir. 1988) ...................................47, 48, 62

*Bolger v. Youngs Drug Prods. Corp.*,
   463 U.S. 60 (1983)..................................................................31

*Boos v. Barry*,
   485 U.S. 312 (1988)..........................................................29, 30

*Burwell v. Hobby Lobby Stores, Inc.*,
   573 U.S. 682 (2014)................................................................37

*Byrum v. Landreth*,
   566 F.3d 442 (5th Cir. 2009) ...........................................18, 65

*Cath. Leadership Coal. of Tex. v. Reisman*,
   764 F.3d 409 (5th Cir. 2014) .................................................33

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Cf. Koger v. Dart,*
   950 F.3d 971 (7th Cir. 2020) .................................................. 59

*Chiu v. Plano Indep. Sch. Dist.,*
   339 F.3d 273 (5th Cir. 2003) ................................................. 35

*CISPES (Comm. in Solidarity with the People of El Sal.) v. FBI,*
   770 F.2d 468 (5th Cir. 1985) ................................................. 55

*City of Canton v. Harris,*
   489 U.S. 378 (1989) ............................................................. 51

*City of Ladue v. Gilleo,*
   512 U.S. 43 (1994) .............................................. 28, 31, 32, 38

*City of Lakewood v. Plain Dealer Publ'g Co.,*
   486 U.S. 750 (1988) ............................................................. 34

*City of St. Louis v. Praprotnik,*
   485 U.S. 112 (1988) ............................................................. 57

*Connick v. Thompson,*
   563 U.S. 51 (2011) ........................................................ 50, 56

*Consol. Edison Co. of N.Y. v. Pub. Serv. Comm'n,*
   447 U.S. 530 (1980) ............................................................. 28

*Cornish v. Corr. Servs. Corp.,*
   402 F.3d 545 (5th Cir. 2005) ................................................. 19

*Covington v. City of Madisonville,*
   812 F. App'x 219 (5th Cir. 2020) ........................................... 58

*Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't,*
   533 F.3d 780 (9th Cir. 2008) ................................................. 31

*Culbertson v. Lykos,*
   790 F.3d 608 (5th Cir. 2015) ................................................. 58

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Davidson v. City of Stafford,*
848 F.3d 384 (5th Cir. 2017) ........................................................ 40, 46

*Doe v. Taylor Indep. Sch. Dist.,*
15 F.3d 443 (5th Cir. 1994) ................................................................ 52

*Duvall v. Dallas County,*
631 F.3d 203 (5th Cir. 2011) ............................................................. 52

*Elrod v. Burns,*
427 U.S. 347 (1976) ............................................................................ 67

Erznoznik v. City of Jacksonville,
422 U.S. 205 (1975) ..................................................................... 30, 41

*Evans v. Newton,*
382 U.S. 296 (1966) ..................................................................... 21, 22

*Freeman v. Gore,*
483 F.3d 404 (5th Cir. 2007) ....................................................... 44, 45

*Fulton v. City of Philadelphia,*
593 U.S. 522 (2021) ........................................................................... 38

*Gonzalez v. Trevino,*
602 U.S. 653 (2024) ..................................................................... 17, 43

*Groden v. City of Dallas,*
826 F.3d 280 (5th Cir. 2016) ...........................................52, 54, 56, 58

*Herceg v. Hustler Mag., Inc.,*
814 F.2d 1017 (5th Cir. 1987) ........................................................... 64

*Hoggard v. Rhodes,*
141 S. Ct. 2421 (2021) ....................................................................... 64

*Hope v. Pelzer,*
536 U.S. 730 (2002) ........................................................................... 64

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Hustler Mag., Inc. v. Falwell,*
   485 U.S. 46 (1988)..................................................................... 64

*Hutcheson v. Dallas County,*
   994 F.3d 477 (5th Cir. 2021) ................................................... 51

*Iancu v. Brunetti,*
   588 U.S. 388 (2019)................................................................... 24

*Johnson v. City of Shelby,*
   574 U.S. 10 (2014).............................................................. 58, 59

*Joseph Burstyn, Inc. v. Wilson,*
   343 U.S. 495 (1952)..................................................... 23, 29, 41

*Keenan v. Tejeda,*
   290 F.3d 252 (5th Cir. 2002) ............................................ 41, 42

*Kennedy v. Bremerton Sch. Dist.,*
   597 U.S. 507 (2022)............................................................ 27, 37

*King v. Massarweh,*
   782 F.2d 825 (9th Cir. 1986) ................................................... 47

*Kinney v. Weaver,*
   367 F.3d 337 (5th Cir. 2004) ................................................... 61

*Knowles v. City of Waco,*
   462 F.3d 430 (5th Cir. 2006) ................................................... 28

*Kunz v. New York,*
   340 U.S. 290 (1951)................................................................... 13

*Littell v. Houston Indep. Sch. Dist.,*
   894 F.3d 616 (5th Cir. 2018) ............................................ 50, 51

*Matal v. Tam,*
   582 U.S. 218 (2017)................................................................... 24

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*McCullen v. Coakley,*
573 U.S. 464 (2014) ......................................................... 30, 38

*McNeal v. LeBlanc,*
90 F.4th 425 (5th Cir. 2024) .................................................. 52

*Michigan v. Chesternut,*
486 U.S. 567 (1988) ........................................................... 44

*Mink v. Knox,*
613 F.3d 995 (10th Cir. 2010) ...................................... 39, 46, 63

*Minn. Voters All. v. Mansky,*
585 U.S. 1 (2018) ............................................................. 24

*Monell v. Dep't of Soc. Servs. of the City of N.Y.,*
436 U.S. 658 (1978) ........................................................... 48

*N.Y. Times Co. v. United States,*
403 U.S. 713 (1971) ........................................................... 33

*Nat'l Rifle Ass'n of Am. v. Vullo,*
602 U.S. 175 (2024) ........................................................... 16

*Neb. Press Ass'n v. Stuart,*
427 U.S. 539 (1976) ........................................................... 32

*Niemotko v. Maryland,*
340 U.S. 268 (1951) ........................................................... 35

*Nieves v. Bartlett,*
587 U.S. 391 (2019) ....................................................... 17, 43

*Opulent Life Church v. City of Holly Springs,*
697 F.3d 279 (5th Cir. 2012) ................................................ 67

*Org. for a Better Austin v. Keefe,*
402 U.S. 415 (1971) ........................................................... 32

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Peña v. City of Rio Grande City*,
  879 F.3d 613 (5th Cir. 2018) .................................................................. 49

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*,
  460 U.S. 37 (1983)................................................................13, 22, 41

*Prime Healthcare Paradise Valley, LLC*,
  368 NLRB No. 10 (2019) .......................................................................56

*Reed v. State*,
  762 S.W.2d 640 (Tex. Ct. App. 1988)........................................40, 46, 63

*Reed v. Town of Gilbert*,
  576 U.S. 155 (2015)..................................................................................26

*Reeves v. McConn*,
  631 F.2d 377 (5th Cir. 1980) ..................................................................29

*Robinson v. Hunt County*,
  921 F.3d 440 (5th Cir. 2019) ..................................................................24

*Rosborough v. Mgmt. & Training Corp.*,
  350 F.3d 459 (5th Cir. 2003) ..................................................................21

*Sanders-Burns v. City of Plano*,
  594 F.3d 366 (5th Cir. 2010) ..................................................................50

*Scanlan v. Tex. A&M Univ.*,
  343 F.3d 533 (5th Cir. 2003) ..................................................................63

*Se. Promotions, Ltd. v. Conrad*,
  420 U.S. 546 (1975)..........................................................................32, 36

*Sindhi v. Raina*,
  905 F.3d 327 (5th Cir. 2018) ..........................................................18, 61

*Singleton v. Wulff*,
  428 U.S. 106 (1976)..................................................................................18

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Snyder v. Phelps,*
  562 U.S. 443 (2011)..................................................................23, 25, 41

*Speaks v. Kruse,*
  445 F.3d 396 (5th Cir. 2006) ............................................66, 67

*St. Maron Props., L.L.C. v. City of Houston,*
  78 F.4th 754 (5th Cir. 2023)................................................54

*Staub v. City of Baxley,*
  355 U.S. 313 (1958)..................................................15, 34, 35

*Tandon v. Newsom,*
  593 U.S. 61 (2021)........................................................37, 38

*Texas v. Johnson,*
  491 U.S. 397 (1989)........................................................14, 25

*Thurairajah v. City of Fort Smith,*
  925 F.3d 979 (8th Cir. 2019) ..............................................41

*United States v. Ho,*
  94 F.3d 932 (5th Cir. 1996) ............................................46, 47

*United States v. Marcavage,*
  609 F.3d 264 (3d Cir. 2010) ..............................................30

*United States v. Stevens,*
  559 U.S. 460 (2010)........................................................29

*United States v. Virginia,*
  518 U.S. 515 (1996)........................................................27

*Vance v. Universal Amusement Co.,*
  445 U.S. 308 (1980)........................................................33

*Wayte v. United States,*
  470 U.S. 598 (1985)........................................................40

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Webster v. City of Houston,*
  735 F.2d 838 (5th Cir.) ............................................................... 53, 54, 58

*Whitley v. Hanna,*
  726 F.3d 631 (5th Cir. 2013) ............................................................... 45

*World Wide Street Preachers Fellowship v. Town of Columbia,*
  245 F. App'x 336 (5th Cir. 2007) ....................................................... 26, 41

**Other Authorities**

William T. Mayton, *Toward A Theory of First Amendment Process:
  Injunctions of Speech, Subsequent Punishment, and the Costs of the
  Prior Restraint Doctrine*, 67 Cornell L. Rev. 245 (1982) ...................... 35

## STATEMENT OF JURISDICTION

The district court properly exercised federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiffs allege violations of their constitutional rights under the First and Fourth Amendments to the United States Constitution. *See* 42 U.S.C. § 1983.

This Court has appellate jurisdiction under 28 U.S.C. § 1291 because the district court's final judgment disposed of all claims. ROA.1307–08. It also has interlocutory appellate jurisdiction under 28 U.S.C. § 1292(a)(1) to review and reverse the district court's denial of a motion for preliminary injunction.

Plaintiffs filed a timely and sufficient notice of appeal on October 25, 2024. ROA.1313–15.

## STATEMENT OF THE ISSUES PRESENTED

1. Did Plaintiffs sufficiently allege a private organization engaged in state action where a city created it for the sole purpose of developing and operating a public park on the city's behalf, and the city and organization acted jointly to execute the traditional and exclusive public function of overseeing the park?

2. Did Plaintiffs sufficiently allege deprivation of their First Amendment rights where they were repeatedly expelled from a public park, with one ultimately arrested, based expressly on the "content" and "offensive[ness]" of their speech while advocating on a matter of public concern and proselytizing in a public park?

3. Did Plaintiff Daraius Dubash properly allege a violation of his Fourth Amendment rights where city police arrested him for trespass in a public park based solely on the "content" of his constitutionally protected speech?

4. Are Plaintiffs entitled to preliminary injunctive relief where they have shown likely success on the merits, supported by ample video evidence, regarding an ongoing ban from a public park based on the "content" and "offensive[ness]" of their peaceful advocacy?

## PRELIMINARY STATEMENT

For over three years, Defendants have forbidden Plaintiffs Daraius Dubash and Dr. Faraz Harsini from exercising their constitutional rights in Discovery Green—downtown Houston's largest public park. As animal rights activists, both seek to educate the public about the violence and harms they find inherent to many widespread industrialized farming practices. For Mr. Dubash, this motivation runs deeper still, as it is rooted in his Vedantic Hindu faith, which compels him to promote the teaching of *ahimsa*, or nonviolence.

Plaintiffs' First Amendment right to peacefully advocate on this matter of public concern within public parks is beyond dispute. Freedom of expression is one of our Constitution's most deeply entrenched and time-honored principles. Yet three times Plaintiffs were expelled from Discovery Green based explicitly on the content and perceived offensiveness of their message. The fourth time, Houston police arrested Mr. Dubash after he respectfully explained their First Amendment right to peacefully advocate in a public forum. The district court's decision to absolve each Defendant of liability for these unmistakable constitutional violations clashes with Fifth Circuit and Supreme Court precedent and

overlooks several important facts of this case. Most critically, in dismissing Plaintiffs' lawsuit, the district court effectively held the City of Houston may bypass constitutional guarantees by delegating rulemaking and oversight authority in its public park to a private organization. But our Constitution is not so easily circumvented.

Allowing the district court's decision to stand would threaten constitutional rights in any public space—so long as the government assigns its oversight to a private third party. It would mean the right to advocate in a public park rises and falls according to a private manager's preferences, or to the message's content or perceived offensiveness. And the district court's constrained view of municipal liability would make it effectively impossible for any plaintiff to assert claims for the violation of their fundamental constitutional rights.

Mr. Dubash and Dr. Harsini respectfully request this Court to reverse the district court's decision and remand with instructions to grant a preliminary injunction.

## STATEMENT OF THE CASE[1]

**Discovery Green is a public park in downtown Houston that the City, its Downtown Park Corporation, and the Discovery Green Conservancy jointly maintain.**

Discovery Green is a public park.[2] Established in 2008, Discovery Green (or "the Park") is open to the public at no cost. ROA.22–23 [¶¶ 46, 49, 56]. Its official website and "Park Rules" describe it as a "public park." ROA.22 [¶¶ 45, 47] (quoting Park Rules: Discovery Green § 1.2.2(p)). And a prominent sign at the Park's entrance informs visitors that the City of Houston owns it. ROA.23 [¶ 53].

The City conveyed the Park's land to the Discovery Green Conservancy ("the Conservancy"), a non-profit newly created to assist in the Park's oversight and development. ROA.23 [¶ 56]. That same day, the Conservancy deeded the land to the Houston Downtown Park Corporation ("the Park Corporation"), a local government corporation the City established exclusively "to aid and act on behalf of the City" to operate and maintain its "new public park." ROA.23–24 [¶¶ 56, 59]. The

---

[1] The Statement of the Case tracks the factual allegations in Plaintiffs' Complaint, which the Court must accept as true taking all reasonable inferences in Plaintiffs' favor. *Bevill v. Fletcher*, 26 F.4th 270, 274 (5th Cir. 2022). For clarity, additional facts from the preliminary injunction motion record appear separately in the final section of this brief addressing why this Court should order entry of a preliminary injunction.

[2] Defendants did not dispute this before the district court.

deed from the Conservancy to the Park Corporation restricts the land to "be used solely as an urban public park of high quality." ROA.23 [¶ 57]; ROA.301 [§ 2(b)(i)]. Members of the Park Corporation's board of directors are appointed by the Mayor and subject to confirmation by the City Council, and must also be members of the Conservancy's board. ROA.15 [¶ 15], 24 [¶ 60]; ROA.60–61 [art. VI]. The Park Corporation's Articles of Incorporation specify that its operations "are governmental and not proprietary functions." ROA.15 [¶ 15]; ROA.60 [art. IV].

Contractually, the Conservancy operates Discovery Green as a public park on behalf of the City and its Park Corporation. ROA.24 [¶ 61]; ROA.810 [Recitals ¶ B]. The Conservancy's IRS Form 990, which its then-president, defendant Barry Mandel, signed under penalty of perjury, states that it "operates a public park." ROA.22 [¶ 47]; ROA.328 [Question 4a]. At Discovery Green's inception, the City and its Park Corporation charged the Conservancy "with developing rules and regulations governing the use of Discovery Green (Park Rules)." ROA.24 [¶¶ 61, 63]; ROA.875 [§ 0.1]. Despite creating and providing for a public park, none of the documents enabling the Conservancy to operate Discovery Green include guidance on First Amendment protections for

public parks, or more generally about the Conservancy's legal or regulatory obligations in operating one.

The City retains oversight authority and certain reserved powers pertaining to Discovery Green. ROA.811 [§ 4.3]. Any rule change the Conservancy proposes "shall be subject to the Mayor's Approval." *Id*. And the Mayor and Houston Police Department work regularly with the Conservancy to facilitate political expression at the public park. ROA.25–26 [¶¶ 73–77].

**The City holds Discovery Green out as open to the public for peaceful protest and personal expression.**

Like any traditional public forum, citizens have used Discovery Green as a venue for free expression since its creation in 2008. Several examples include "Tea Party" protests of then-President Barack Obama, protests against the National Rifle Association, Black Lives Matter protests, and regular LGBTQ+ pride celebrations and drag shows. ROA.25 [¶¶ 70–72, 78]. The Houston Police Department, Mayor, and the

Conservancy regularly collaborate to facilitate these activities. ROA.25–26 [¶¶ 68–76].

**Plaintiffs Dubash and Harsini use their First Amendment rights to advocate for and proselytize nonviolence against animals.**

Mr. Dubash is a member of the Advaita Vedanta stream of Hinduism, which practices *ahimsa*, or nonviolence towards all living things. ROA.16–17 [¶¶ 22–23]. According to these religious teachings, failure to advocate for nonviolence makes one complicit in violence itself. ROA.17 [¶ 24]. Mr. Dubash spreads the message of *ahimsa* as an important part of his religious exercise by educating the public about what he perceives to be violent, widespread industrialized farming practices. *Id.* [¶¶ 24–25].

Dr. Harsini is a widely acclaimed biophysicist whose research has led him to believe many public-health threats and environmental issues are direct consequences of industrialized farming. ROA.18 [¶¶ 27, 29]. Dr. Harsini seeks to educate the public about these risks by, among other things, advocating in public spaces against them. ROA.18–19 [¶¶ 30–31].

For these reasons, Mr. Dubash and Dr. Harsini serve as co-organizers for the Houston chapter of Anonymous for the Voiceless, an international nonprofit animal rights advocacy group. ROA.19 [¶ 32].

The organization's signature event is called a "Cube of Truth" and involves two teams of volunteers. *Id.* [¶¶ 33–34]. One team wears "Guy Fawkes" masks, an international symbol of anonymous protest, and silently holds a video monitor displaying muted footage from *Dominion*, a documentary portraying actual industrialized farming practices.[3] ROA.19–20 [¶¶ 35–37]. Meanwhile, a second, unmasked team remains available to engage with interested passersby and answer questions. ROA.21 [¶ 41]. Anonymous for the Voiceless prohibits its volunteers from initiating these conversations, and the unmasked teams speak only with passersby who express desire to discuss the organization's message. *Id.*

**Park Conservancy staff and City police repeatedly expel Dubash and Harsini from the Park—and ultimately arrest Dubash—based on the content of their advocacy.[4]**

On three separate occasions from 2021 to 2022, when Mr. Dubash and Dr. Harsini were advocating in Cubes of Truth, Conservancy staff and City police forced them to leave the Park, explicitly citing "the content of the videos," and their perceived "offensive[ness]" and lack of

---

[3] The full-length *Dominion* film is available free online at www.dominionmovement.com/watch.

[4] The video evidence attached to Plaintiffs' Complaint confirms the events around Dubash's arrest. ROA.30–36 [¶¶ 107–41] (quoting Video 3 of July 23, 2022 [hereinafter Video 3]).

"appropriate[ness]," as the basis for removal. ROA.27–29 [¶¶ 83–102]. On July 23, 2022, after confirming on Discovery Green's website that it is indeed a public park, Plaintiffs returned a fourth time. ROA.29 [¶ 103]. The Park's security guards approached and explained that whether speech is permissible is determined on "a case by case" basis, so their "manager is going to come and come look at it." ROA.30 [¶ 107].

When the Defendant Houston police officers Douglas and Whitworth arrived, Mr. Dubash showed them property records establishing that the governmental Park Corporation owns the park land, along with information on Discovery Green's website confirming it is a public park. ROA.31 [¶ 121]. Officer Douglas replied, "We are all aware of" the First Amendment's protections, but "if you are showing offensive material [that the Park's management] does not like, you can't be here." *Id.* [¶¶ 123–24] (quoting Video 3, at 00:04:41).

The Park's manager then reported he had spoken with Mr. Mandel, then-president of the Conservancy, and affirmed "we are officially asking you to leave the property." ROA.32 [¶ 127] (quoting Video 3, at 00:10:25). When Mr. Dubash repeatedly asked the officers whether he must leave the public park, Officer Whitworth stated it is "up to the management"

and "[w]hatever management wants." ROA.33–34 [¶¶ 136, 141] (quoting Video 3, at 00:18:47). The Park manager confirmed that "[p]rivate park security has determined that this is now a criminal trespass," and Officer Douglas handcuffed Mr. Dubash and led him to a Park office where he sat with his arms behind his back for several hours. ROA.33 [¶ 137] (quoting Video 3, at 00:13.19), 34 [¶ 142]. Neither Conservancy staff nor the police officers identified any park rule or city ordinance Mr. Dubash or Dr. Harsini had purportedly violated. ROA.32 [¶ 128].

Houston police then transported Mr. Dubash to a detention center, where he remained overnight for a total of sixteen hours. ROA.35 [¶ 145]. The arrest left Mr. Dubash with abrasions on his wrist that took months to heal, anxiety, and aggravated post-acute sequelae of COVID-19. *Id.* [¶ 146].

**The Conservancy confirms Plaintiffs are subject to an ongoing speech prohibition in Discovery Green, of which the City and its Park Corporation are aware.**

Following these events, Mr. Dubash and Dr. Harsini sent a letter through counsel to the City of Houston, its Park Corporation, and the Conservancy, outlining the constitutional and statutory violations and the injuries underlying this action. ROA.36 [¶¶ 155–58]; ROA.160–63,

165–67. The City and its Park Corporation confirmed receipt of the letter but never responded. ROA.36 [¶ 159]. The Conservancy, however, replied that its "position has not changed," and that Mr. Dubash and Dr. Harsini may advocate for animal rights in Discovery Green only if they use an "alternate method" of expression. ROA.37 [¶ 160]; ROA.170.

## PROCEDURAL HISTORY

On September 20, 2023, Mr. Dubash and Dr. Harsini sued the Conservancy, City of Houston, Park Corporation, Officers Whitworth and Douglas, and then-President of the Conservancy, Mr. Mandel. ROA.38–56. Plaintiffs asserted claims for damages and injunctive and declaratory relief under the First Amendment's Free Speech and Free Exercise Clauses (Counts 1, 2, 3, 4, 5), the Texas Religious Freedom Restoration Act (Count 6), the Fourth Amendment (Count 7), and the Texas Constitution's private nondelegation doctrine (Count 8). *Id.* Shortly after filing suit, Plaintiffs moved for a preliminary injunction prohibiting Defendants from imposing content- or viewpoint-based restrictions on their speech, implementing a prior restraint, or banning Mr. Dubash's proselytization. ROA.216–19; *see also* ROA.227–61. Defendants moved to dismiss. ROA.634–68; ROA.782–804.

The United States Magistrate Judge recommended dismissal of Plaintiffs' federal claims for failure to state a claim; denial of Plaintiffs' Motion for Preliminary Injunction as moot; and dismissal of their state law claims for lack of supplemental jurisdiction. ROA.1186–87, 1231–32. Overruling Plaintiffs' objections without analysis, the district court issued an Order adopting the Magistrate Judge's recommendation *in toto*. ROA.1307–08. Plaintiffs timely appealed. ROA.1309–11.

## <u>SUMMARY OF ARGUMENT</u>

The First Amendment bars the government from censoring Plaintiffs' peaceful advocacy on a matter of public concern within a public park. Public parks like Discovery Green "have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Kunz v. New York*, 340 U.S. 290, 293 (1951) (quotations omitted). To promote the free and robust exchange of ideas, the First Amendment "sharply circumscribe[s]" the government's ability "to limit expressive activity" in these "quintessential public forums," no matter the view or belief expressed. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983).

Defendants flouted this well-established limit on their authority by repeatedly prohibiting Mr. Dubash and Dr. Harsini from attempting to educate the public about the perceived dangers of industrialized farming. And when Mr. Dubash respectfully asserted their First Amendment rights, Houston police responded by arresting him on the Conservancy's orders. As shown in the video footage attached to Plaintiffs' Complaint, the Conservancy and arresting police officers consistently cited the "content" of Plaintiffs' documentary clips, which they found "offensive" and not "appropriate," as the sole basis for their censorship. As one of the arresting officers unambiguously explained, "if [the Conservancy's manager] does not like [it], you can't be here." ROA.31 [¶ 124] (quoting Video 3, at 00:04:41).

This censorship based explicitly on such subjective determinations violates the First Amendment's "bedrock principle" that "government may not prohibit the expression of an idea simply because society"—or a park manager or police officer—"finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414 (1989). Because there is no compelling government interest in silencing disfavored speech, Defendants' speech prohibition cannot satisfy strict scrutiny. And the

Conservancy's directive that, going forward, Plaintiffs may advocate in Discovery Green only if they adopt an "alternative method" of expression, ROA.37 [¶ 160], continues to hang over Plaintiffs as an unconstitutional prior restraint. The Conservancy's exercise of "uncontrolled discretion" to choose what protected expression is permissible in a public park defies the First Amendment. *Staub v. City of Baxley*, 355 U.S. 313, 325 (1958).

Despite the district court's *sua sponte* conclusion to the contrary, state action underlies Plaintiffs' injuries. The City enlisted the Conservancy to carry out the traditional and exclusive public function of overseeing a public park, and it established the governmental Park Corporation for the sole purpose of facilitating that arrangement. City police officers and Conservancy staff worked together to repeatedly expel Plaintiffs from Discovery Green and eventually arrest Mr. Dubash. And the City ultimately ratified the very speech prohibition that Plaintiffs challenge by declining to intervene, despite having the power to do so.

The district court nonetheless held the Conservancy is not a state actor. That error effectively excludes a public park from First Amendment protections—and gives every local government a roadmap for contracting around its constitutional obligations in public forums. But

the government may not launder constitutional violations through intermediaries. A "government official cannot do indirectly what she is barred from doing directly." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 190 (2024).

Had the City offered even the most rudimentary training to its police officers or the Conservancy regarding First Amendment rights, or placed objective limitations on the Conservancy's rulemaking authority, these violations would have been avoided. But it did not. The foreseeable consequence of the City's dereliction was the violation of constitutional rights in Discovery Green Park, and the district court erred holding otherwise.

The court also erred in conferring qualified immunity based on purported probable cause for Mr. Dubash's arrest. First, the court improperly conducted a subjective rather than objective analysis, relying on the officers' "belief" that Discovery Green is exempt from the First Amendment without considering whether that belief was *reasonable* under the circumstances. Second, it ignored well-pleaded allegations that would bar any reasonable officer from believing Discovery Green is private. Discovery Green is the largest public park in downtown Houston.

It is home to regular political protests and a prominent sign proclaiming municipal ownership. And Mr. Dubash presented the officers undisputed public records at the time of arrest confirming Discovery Green is public. The officers' choice to disregard that information and arrest a peaceful activist conflicts with clearly established constitutional law. And in all events, Mr. Dubash's retaliatory arrest claim should proceed regardless of whether probable cause existed, as the Complaint's allegations show that officers singled him out for arrest based on his protected expression. *See Gonzalez v. Trevino*, 602 U.S. 653, 657–58 (2024) (per curiam); *Nieves v. Bartlett*, 587 U.S. 391, 405 (2019).

Each day Defendants continue to bar Mr. Dubash and Dr. Harsini from exercising their constitutional rights in Discovery Green is one too many. Plaintiffs respectfully ask this Court to reverse the decision below and remand with directions for entry of a preliminary injunction.

## STANDARD OF REVIEW

This Court reviews the ruling below on Defendants' Motions to Dismiss *de novo*, including its grant of qualified immunity. *Bevill*, 26 F.4th at 274. In doing so, it accepts all factual allegations in the Plaintiffs' Complaint as true and construes all inferences in their favor. *Id.*

17

Although the district court denied Plaintiffs' Motion for Preliminary Injunction as moot, this Court may consider whether Plaintiffs are entitled to injunctive relief based on "the facts of individual cases." *Singleton v. Wulff*, 428 U.S. 106, 121 (1976); *see Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009) (reversing and remanding for entry of preliminary injunction to protect First Amendment rights).

## ARGUMENT

## I.     The Conservancy and Its Then-President Acted Under Color of State Law.

The district court erred in dismissing Plaintiffs' claims for failure to allege the Conservancy acted under color of law. Most notably, neither the Conservancy nor Mr. Mandel disputed in their lengthy Motions to Dismiss that they are (or were, in Mr. Mandel's case) state actors, ROA.1219 n.12, 1226 n.13, and thus cannot do so on appeal. *See, e.g.*, *Sindhi v. Raina*, 905 F.3d 327, 333 (5th Cir. 2018) ("As we have consistently held, arguments not raised before the district court are waived and cannot be raised for the first time on appeal.") (cleaned up).

In any case, the Conservancy and its former president, Mr. Mandel, are state actors for at least two reasons: They engaged in joint action with the City of Houston, and they perform a traditional, exclusive public

function overseeing a public park. Because the district court premised several of its holdings on the mistaken conclusion that they are not state actors, ROA.1220–24, Plaintiffs address that threshold error here.

### A. The Conservancy and its management act jointly with the City and the City's Park Corporation to operate a public park.

By design, the City, its Park Corporation, and the Conservancy collaborate to develop, manage, and oversee the Park. *See, e.g.*, ROA.22–26 [¶¶ 47, 56, 59, 75–76] (quoting Park Corporation's Articles of Incorporation, Conservancy's Operating Agreement, and Conservancy's tax forms). It is, in fact, for that purpose alone that both the Park Corporation and Conservancy exist. ROA.23 [¶ 57]; ROA.24 [¶ 59]; ROA.60 [art. IV].

The Conservancy and its then-president, Mr. Mandel, are thus state actors "under the 'joint action test,'" because they are "willful participants in joint action with the State or its agents." *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 550 (5th Cir. 2005) (cleaned up). According to its Articles of Incorporation, the Park Corporation is a local government corporation the City created "to aid and act on [its] behalf … to accomplish the City's governmental purposes consisting of the

19

acquisition, development, operation and maintenance of a new public park." ROA.24 [¶ 59]; ROA.60 [art. IV]. Its board of directors is limited to members of the Conservancy's board, which manages the public park under an operating agreement that reserves supervisory authority to the Mayor. ROA.24 [¶ 60]; ROA.60–61 [art. VI].

The City and its Park Corporation expressly delegated rule-making authority for Discovery Green to the Conservancy. ROA.24 [¶ 62]. The very first sentence of the "Park Rules" announces: "The Discovery Green Conservancy has been charged with developing rules and regulations governing use of Discovery Green …." *Id.* [¶ 63]; ROA.875 [§ 0.1]. And as the involvement of Officers Douglas and Whitworth highlights, City police enforce park rules and laws at Discovery Green.

The district court ignored these allegations. Instead, it considered only whether the Conservancy or Mr. Mandel engaged in "joint action" with the government by ordering Mr. Dubash's arrest. ROA.1223–24. Whether this order, itself, constitutes joint action misses the more salient point: That the allegations and documents on the motion to dismiss show the Conservancy and Mr. Mandel acted under color of state law by working closely with the government to develop, oversee, and manage a

public park on the City's behalf. They acted under color of state law when they adopted and enforced—with the aid of city law enforcement—a content- and viewpoint-based speech prohibition in that public park. And they acted under color of state law when they adopted a prior restraint against Plaintiffs' speech and proselytization, with the City's awareness and tacit ratification. The district court erred by concluding otherwise.

## B. By operating a public park, the Conservancy and its management staff undertake a traditional, exclusive public function.

The Conservancy and Mr. Mandel are also state actors for the independent reason that they carry out a traditional, exclusive public function, meaning a "function traditionally reserved to the state." *Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459, 460–61 (5th Cir. 2003) (per curiam); *see also Evans v. Newton*, 382 U.S. 296, 301–02 (1966) (finding state action where private trustees maintained public park on behalf of city).

The district court held the Complaint had "no allegations that Mandel [and the Conservancy] performed a traditional, exclusive public function," ROA.1229, despite its facts showing the Conservancy exists for the sole purpose of operating a public park with a president (Mr. Mandel)

responsible for "day-to-day management of Discovery Green" on the government's behalf. *See, e.g.*, ROA.13–16 [¶¶ 4–5, 16, 19–20], 22–27 [¶¶ 45–67, 80, 82], 35–36 [¶¶ 153–54]. If operating and overseeing a public park is not a "traditional, exclusive public function," it is difficult to imagine what is. Public parks are the "quintessential public forums." *Perry Educ. Ass'n*, 460 U.S. at 45. The Supreme Court has likened them to "a fire department or police department that traditionally serves the community." *Evans*, 382 U.S. at 302. It has also emphasized that public parks' "use" is "plainly in the public domain." *Id.* (citation omitted). For this reason, when the Ninth Circuit faced the same question in a factually analogous case, it held a private entity exercising "functionally exclusive regulation of free speech within" a public park is "a State actor" and subject to § 1983 liability. *Lee v. Katz*, 276 F.3d 550, 556 (9th Cir. 2002).

Plaintiffs' allegations more than establish how the Conservancy and Mr. Mandel acted under color of state law and thus fall within Section 1983's scope. Were it otherwise, the consequences would far exceed the applicability of the First Amendment in public parks. Any local government could circumvent the Constitution merely by delegating

rulemaking authority in public spaces, or contracting out their management, to private third parties.

Once the district court's error on state action is remedied, Defendants' violation of Mr. Dubash and Dr. Harsini's rights comes into sharp relief.

## II.     Defendants Violated, and Continue to Violate, Dubash and Harsini's Constitutional Rights.

### A.     Dubash and Harsini Stated a Claim for Viewpoint- and Content-Based Violations of Their First Amendment Rights in a Public Forum (Count 1).

The City, its Park Corporation, and the Conservancy violated Mr. Dubash and Dr. Harsini's First Amendment rights by repeatedly censoring their speech in a public forum. Plaintiffs' effort to educate the public—including by displaying documentary footage about industrial farming practices, a matter of public concern—is protected expression. *See, e.g.*, *Snyder v. Phelps*, 562 U.S. 443, 451–52 (2011) (affirming First Amendment protects speech related to matters of public concern); *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 502 (1952) (affirming First Amendment protects expression through film). And the Conservancy and city police repeatedly affirmed it was the "content" and "offensive[ness]"

of Plaintiffs' speech that motivated its actions. ROA.30–32 [¶¶ 109–11, 114, 117, 124, 126, 129].

In a traditional public forum like Discovery Green, "restrictions based on content must satisfy strict scrutiny, and those based on viewpoint are prohibited." *Minn. Voters All. v. Mansky*, 585 U.S. 1, 11 (2018). Because the Conservancy's ongoing speech prohibition constitutes an impermissible viewpoint- and content-based restriction that fails strict scrutiny, it is unconstitutional.

> **1.    The Conservancy's prohibition on speech it deems "offensive" is an impermissible viewpoint-based restriction in a public forum.**

Because the Defendants censored Plaintiffs based on the Conservancy's "subjective judgment that the content of protected speech is offensive or inappropriate," they violated the First Amendment's bar on viewpoint discrimination. *Robinson v. Hunt County*, 921 F.3d 440, 447 (5th Cir. 2019). Put simply, "[g]iving offense is a viewpoint." *Matal v. Tam*, 582 U.S. 218, 243 (2017). The same is true for "inappropriate" speech. *Iancu v. Brunetti*, 588 U.S. 388, 395–96 (2019).

The Complaint's allegations show that Defendants were driven by their subjective view that Plaintiffs' speech is "offensive." The

Conservancy and the City's police officers repeatedly said as much, as shown in the Complaint's video footage taken during the events resulting in Mr. Dubash's arrest. For instance:

- The Conservancy manager states that Plaintiffs must leave because management "[doesn't] feel the content is appropriate," ROA.30 [¶ 114];

- Officer Douglas explains to Plaintiffs "if you are showing offensive material [the Conservancy management] does not like, you can't be here," ROA.31 [¶ 124];

- The Conservancy manager describes the issue as the "disturb[ing]" nature of Plaintiffs' videos, ROA.29 [¶ 98].

Courts, including this one, consistently uphold the core First Amendment right to speak on matters of public concern using controversial and provocative messages, actions, and images. In *Snyder v. Phelps*, for instance, the Supreme Court held the First Amendment protects the right to protest on "public land" outside the funeral of fallen soldiers with signs displaying slogans like "God Hates the USA" and "Thank God for Dead Soldiers." 562 U.S. at 448; *see also Texas v. Johnson,* 491 U.S. at 414 (upholding right to burn American flag in political protest). In *World Wide Street Preachers Fellowship v. Town of Columbia*, this Court held that pro-life protestors brought a viable First Amendment claim when police officers terminated their demonstration

on public land because their signs displayed images of aborted fetuses. 245 F. App'x 336, 339, 348–49 (5th Cir. 2007) (per curiam). Likewise, Mr. Dubash and Dr. Harsini have a constitutional right to express their view of the morality and risks of industrialized farming by showing a documentary about its practices.

Because Plaintiffs have stated a First Amendment claim based on viewpoint discrimination, the Court should reverse the district court's dismissal.

> ### 2. Defendants' self-described prohibition on videos depicting "violence towards animals" is a content-based restriction that fails strict scrutiny.

Defendants also violate the First Amendment by imposing a content-based restriction that "applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). Time and again, Park staff and city police told Plaintiffs "the problem" was "the content of the videos." ROA.30 [¶ 109]; *see also id.* [¶ 110] (another security guard agreeing "[t]he problem before was the content of the videos …. So that's the only problem that Discovery Green has."); *id.* [¶ 111] ("[W]e're not comfortable with the TVs … the content on those."). And in Defendants' briefing

below, they explicitly acknowledged their censorship as a restriction on certain content: "videos depicting cruelty and violence towards animals." ROA.485; *see also, e.g.*, ROA.641, 648 (describing their ban on "violent videos" depicting animal cruelty). [5] Notably, the Complaint alleges Discovery Green regularly hosts other protest activity, including NRA-related protests and LGBTQ+ pride events, which the Conservancy not only permits but actively facilitates. ROA.26 [¶¶ 74, 78].

a.   **Defendants' argument that other avenues of expression exist cannot save their unconstitutional speech prohibition.**

Defendants argue their prohibition on Plaintiffs' video footage is proper because they may use other means to communicate their message. *See, e.g.*, ROA.649, 652. This argument fails for two reasons.

First, whether alternative avenues of expression exist is a factor in regulating the time, place, and manner of speech, which presumes

---

[5] At no point during Defendants' interactions with Plaintiffs at Discovery Green did Conservancy staff or police officers identify a Park rule that Plaintiffs allegedly violated. It was only during litigation that Defendants framed their censorship of Plaintiffs' speech as violative of this purported restriction. That alone is reason to reject the argument, because "[g]overnment justifications for interfering with First Amendment rights must be genuine, not hypothesized or invented *post hoc* in response to litigation." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 543 n.8 (2022) (cleaned up) (quoting *United States v. Virginia*, 518 U.S. 515, 533 (1996)). What's more, as described in this section, this post hoc framework only reinforces the content-based nature of Defendants' censorship.

content-neutrality and thus has no application here. *See Knowles v. City of Waco*, 462 F.3d 430, 433–34 (5th Cir. 2006). Indeed, the Supreme Court "ha[s] consistently rejected the suggestion that a government may justify a content-based prohibition by showing that speakers have alternative means of expression." *Consol. Edison Co. of N.Y. v. Pub. Serv. Comm'n*, 447 U.S. 530, 541 n.10 (1980) (collecting cases). In *City of Ladue v. Gilleo*, for instance, the Supreme Court invalidated an ordinance prohibiting signs on residential property over government objections that the plaintiff "remain[ed] free to convey [her] desired messages by other means, such as … letters, handbills, flyers, telephone calls" and other means. 512 U.S. 43, 56 (1994). The Court recognized the medium was part of the message and that—despite these alternative forms of communication—plaintiff's specific communicative choice was "quite distinct from placing the same sign someplace else, or conveying the same text or picture by other means." *Id.* So too here, where Plaintiffs' documentary clips convey a distinct message that words and static pictures cannot.

Second, the existence of other avenues of expression does not entitle the government to censor the constitutionally protected communication

method chosen by a speaker. The Constitution protects communication through film, *Joseph Burstyn*, 343 U.S. at 502, including films that may depict animal cruelty, *United States v. Stevens*, 559 U.S. 460, 468 (2010). And "[t]he right to communicate inherently comprehends the right to communicate effectively," so that existence of alternatives "cannot by itself justify a restraint on some particular means that the speaker finds more effective." *Reeves v. McConn*, 631 F.2d 377, 382 (5th Cir. 1980) (citations omitted). Unsurprisingly, Mr. Dubash and Dr. Harsini believe displaying video footage of *actual industrialized farming practices* is the most effective way to educate the public about *actual industrialized farming practices*. ROA.19 [¶ 31], 21 [¶ 40]. By law, the existence of alternative means of communicating Plaintiffs' message does nothing to tip the scales in Defendants' favor.

> **b.   Defendants' content-based prohibition on footage depicting violence towards animals cannot survive strict scrutiny.**

Defendants' content-based speech prohibition does not serve a "compelling governmental interest," as it must to survive strict scrutiny. *Boos v. Barry*, 485 U.S. 312, 317 (1988). For one thing, there is no compelling interest in censoring speech that might shock the public. *See,*

*e.g.*, *United States v. Marcavage*, 609 F.3d 264, 283, 290–91 (3d Cir. 2010) (finding no compelling interest in censoring "vivid depictions of mutilated fetuses" even if "jarring"). In a public forum, citizens may be "confronted with an uncomfortable message" they cannot avoid. *McCullen v. Coakley*, 573 U.S. 464, 476 (2014); *see also Boos*, 485 U.S. at 322 (affirming "citizens must tolerate insulting, and even outrageous, speech" in public forums). And "in such a forum," the "government may not 'selectively … shield the public from some kinds of speech on the ground that they are more offensive than others.'" *McCullen*, 573 U.S. at 477 (alteration in original) (quoting *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 209 (1975)).

That children may be among the viewers does not alter the analysis. *See* ROA.29 [¶ 98] (Conservancy management claiming Plaintiffs' speech might "disturb children"); ROA.791 [¶ 1] (claiming Plaintiffs cannot speak in public park "without regard to children playing nearby"). Protected speech "cannot be suppressed solely to protect the young from ideas or images that" the government "thinks unsuitable for them." *Erznoznik*, 422 U.S. at 213–14 (striking down ban on display of movies

depicting nudity on drive-in screens); *see also Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 73 (1983).

That is true even where, unlike here, there is evidence that minors viewing the images experienced strong negative reactions, including fainting or becoming physically sick. *See Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't*, 533 F.3d 780, 784, 790 (9th Cir. 2008) (finding First Amendment violation where pro-life protesters were barred from displaying graphic images of aborted fetuses outside schools). It would "be an unprecedented departure from bedrock First Amendment principles to allow the government to restrict speech based on listener reaction simply because the listeners are children." *Id.* at 790.

Nor is Defendants' ban on videos depicting violence against animals "narrowly tailored" to accomplish the government's interest. Rather, it is both overinclusive and underinclusive. *See Gilleo*, 512 U.S. at 51 (striking down ordinance on these grounds). It is overinclusive because it prohibits wide swaths of unintended speech, including most wildlife videos and Disney classics like *Bambi* or *The Lion King*. The ban is also "suspiciously under-inclusive" because it bars "only audio or video recordings, but say[s] nothing about photographs." *Animal Legal Def. Fund v. Wasden*,

878 F.3d 1184, 1204 (9th Cir. 2018) (quotation marks omitted) (citing *Gilleo*, 512 U.S. at 51).

As Plaintiffs have sufficiently pled their protected speech is subject to an unconstitutional content and viewpoint-based restriction, this Court should reverse the dismissal of their claims below.

## B. Dubash and Harsini Stated a Claim for an Unconstitutional Prior Restraint (Count 2).

Prior restraints like that at issue here, in which "public officials ha[ve] forbidden the plaintiffs the use of public places to say what they wanted to say," face a "heavy presumption against [their] constitutional validity." *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553, 558 (1975) (citations omitted); *accord Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971). That is because they are "the most serious and the least tolerable infringement on First Amendment rights." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976).

Following Mr. Dubash's unlawful arrest in Discovery Green, he and Dr. Harsini sent a letter through counsel to Defendants outlining the constitutional and statutory issues underlying this action. ROA.36 [¶¶ 155–58]; ROA.160–63, 165–67. The Conservancy replied that its "position has not changed" and that Plaintiffs are henceforth prohibited

from displaying muted video footage of industrialized farming practices or wearing Guy Fawkes masks in Discovery Green. ROA.37 [¶ 160]; ROA.170. In effect, the Conservancy, acting on the City's behalf, prohibited Plaintiffs from communicating their message going forward in the way they and other activists have found most effective. ROA.37 [¶ 160]; ROA.170.

This edict "forbidding certain communications"—issued "in advance of the time that such communications are to occur"—is a "classic prior restraint." *Cath. Leadership Coal. of Tex. v. Reisman*, 764 F.3d 409, 437 (5th Cir. 2014) (quoting *Alexander v. United States*, 509 U.S. 544, 550 (1993)). Some prior restrains involve bans on a specific piece of writing or film, while others prohibit categories of content. *See, e.g., Vance v. Universal Amusement Co.*, 445 U.S. 308, 309 (1980) (per curiam) (affirming injunction of ban on films without final judicial determination of obscenity as unconstitutional prior restraint); *N.Y. Times Co. v. United States*, 403 U.S. 713, 714 (1971) (per curiam) (striking down prior restraint against publication revealing U.S. policy during Vietnam war). Others operate by vesting unbridled discretion in the hands of a state

actor. *See, e.g.*, *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 757 (1988).

Defendants' speech prohibition in Discovery Green does both. First, it specifically bans two forms of protected expression in a public park: peacefully showing the documentary film *Dominion* and wearing Guy Fawkes masks, an international symbol of anonymous protest. ROA.37 [¶ 160]. Second, Defendants' recorded admissions confirm they are excluding Plaintiffs' protected expression based on the Conservancy's limitless discretion to determine on a "case by case" basis what "content" they find "appropriate" or "offensive." ROA.30–31 [¶¶ 107, 109, 112, 122, 124], 34 [¶ 141]. Final decisions are left to management without limitations or guidelines: "if [the Conservancy's manager] does not like [it], you can't be here." ROA.31 [¶ 124] (quoting Video 3, at 00:04:41).

Such "uncontrolled discretion" is anathema to the First Amendment. *Staub*, 355 U.S. at 325 (invalidating prior restraint on these grounds). The Founders abhorred the English Press Acts of the 17th century, which "did not adequately circumscribe the authority of … bureaucratic licensers" who "exercised their unfettered discretion with an insensitivity to political and literary values." William T. Mayton,

*Toward A Theory of First Amendment Process: Injunctions of Speech, Subsequent Punishment, and the Costs of the Prior Restraint Doctrine*, 67 Cornell L. Rev. 245, 248 (1982). As this Court has long recognized, government restrictions making "speech contingent on the will of an official … are unconstitutional burdens on speech classified as prior restraints." *Chiu v. Plano Indep. Sch. Dist.*, 339 F.3d 273, 280 (5th Cir. 2003) (citing *Staub*, 355 U.S. at 322). To be constitutional, prior restraints must impose "guidelines … narrowly drawn to prevent discretionary decision-making." *Beckerman v. City of Tupelo*, 664 F.2d 502, 509 (5th Cir. 1981) (citations omitted).

The Supreme Court in *Niemotko v. Maryland* invalidated a similar prior restraint in a public park, explaining:

> No standards appear anywhere; no narrowly drawn limitations; no circumscribing of this absolute power; no substantial interest of the community to be served. It is clear that all that has been said about the invalidity of such limitless discretion must be equally applicable here.

340 U.S. 268, 272 (1951). So too here.

The Complaint shows Mr. Dubash and Dr. Harsini are subject to an indefinite speech prohibition in a public park under penalty of arrest pursuant to the Conservancy's unrestrained discretion. The government

faces a heavy burden to justify a prior restraint, and yet as this lawsuit demonstrates, the government and its agent have forced on speakers the burden of contesting an ongoing speech restriction in a public park. *See, e.g., Se. Promotions*, 420 U.S. at 560 (affirming that a prior restraint "runs afoul of the First Amendment if it lacks [these] safeguards"). This Court should put the burden back on Defendants and hold they have failed to meet it by reversing the district court's erroneous dismissal of Plaintiffs' prior restraint claim.

### C.  Dubash Stated a Claim for a Violation of his Free Exercise Rights (Count 5).

On four separate occasions, the Conservancy prevented Mr. Dubash from proselytizing in accordance with his Vedantic Hindu faith in a public forum. On the final occasion, the Conservancy had him arrested and incarcerated overnight. The Conservancy did so under authority bestowed by the City of Houston, in the capacity of a state actor operating the City's premier public park. *See supra* Section I. These actions violate Mr. Dubash's constitutional right to freely exercise his religion.

Because this state action "burdened [Mr. Dubash's] sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable,'" it "trigger[s] strict scrutiny," under which the government

must "demonstrat[e] its course was justified by a compelling state interest and was narrowly tailored in pursuit of that interest." *Kennedy*, 597 U.S. at 525–26 (citations omitted). It cannot do so here.

As an initial matter, Mr. Dubash advocates for nonviolence against animals according to his religious belief in *ahimsa*. ROA.16–17 [¶¶ 22–25], 48–49 [¶ 240]. Because Defendants' actions penalize Mr. Dubash for acting "in accordance with [his] religious beliefs," it "clearly imposes a substantial burden on those beliefs." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 726 (2014).

Nor is the Conservancy's speech prohibition "neutral" or "generally applicable" for several reasons. First, the Complaint contains ample well-pleaded allegations that Discovery Green regularly hosts other protest activity (far more disruptive than Cubes of Truth) that many may find offensive, including NRA-related protests and LGBTQ+ pride events. ROA.26 [¶¶ 74, 78]. Where Defendants "treat *any* comparable secular activity"—here, a multitude of political protests—"more favorably than religious exercise," doing so is not "generally applicable." *Tandon v. Newsom*, 593 U.S. 61, 62 (2021) (per curiam) (citation omitted). This is true regardless of whether Defendants were aware of Mr. Dubash's

religious motivations at the time of his expulsions or arrest. "Comparability is concerned with the risks various activities pose, not the reasons why people gather." *Id.* (citation omitted). Here, the only risk Defendants have ever identified is alleged offense caused to onlookers.

Second, and as the Conservancy's management conceded on multiple occasions in the video footage before this Court, prohibitions like that applied to Mr. Dubash are determined on a "case by case" basis depending on management's assessment of what is "appropriate." ROA.30 [¶¶ 107, 112]. Where such determinations are "based on the circumstances," the rule is not "generally applicable" and must face strict scrutiny. *Fulton v. City of Philadelphia*, 593 U.S. 522, 534 (2021).

And Defendants' prohibition on Mr. Dubash's right to peacefully proselytize in a public park fails strict scrutiny for the same reasons it fails as a speech regulation as described *supra* in Sections II.A–B: There is no compelling interest in restricting religious exercise because someone deems it offensive, *McCullen*, 573 U.S. at 476, and the prohibition is both under and overinclusive in pursuing that goal, *Gilleo*, 512 U.S. at 51. This Court should accordingly reverse the dismissal of Mr. Dubash's free exercise claim.

**D.  Dubash and Harsini Stated a First Amendment Damages Claim for Direct and Retaliatory Violations (Count 4).**

The Complaint's factual allegations show Officers Douglas and Whitworth, as well as then-President of the Conservancy, Mr. Mandel, directly violated Plaintiffs' First Amendment rights by excluding them from Discovery Green—and, in Mr. Dubash's case, arresting him—based on the content of their protected speech. ROA.46–48 [¶¶ 218–38]. To begin, the district court failed to address Dr. Harsini's direct and retaliation damages claim, considering only arguments underlying Mr. Dubash's claims. ROA.1198–1200; ROA.46–48 [¶¶ 218–38] (both Plaintiffs suing for damages under the First Amendment). This alone is cause for reversal as to Dr. Harsini's claim.

The district court also erred in dismissing Mr. Dubash's First Amendment damages claim by holding Officers Douglas and Whitworth "had probable cause" to arrest Mr. Dubash for criminal trespass. ROA.1200. By basing their probable cause determination exclusively on Mr. Dubash's protected speech, the officers directly violated his First Amendment rights, regardless of motive. *See Mink v. Knox*, 613 F.3d 995, 1003–04 (10th Cir. 2010) ("It goes without saying that a government

official may not base her probable cause determination on an 'unjustifiable standard,' such as speech protected by the First Amendment.") (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985)).

This Court's decision in *Davidson v. City of Stafford* confirms as much. There, this Court held it is objectively unreasonable for officers to arrest advocates "exercising [their] First Amendment rights by protesting" on a public sidewalk and greenspace. 848 F.3d 384, 398 (5th Cir. 2017) (reversing summary judgment dismissal of pro-life protester's First Amendment claims). The same goes for Mr. Dubash's arrest. The district court's error on this point, as explained more fully *infra*, Section II.E, contradicts not only the Constitution but also Texas law, which forecloses probable cause for trespass when "used for the primary purpose of suppressing speech." *Reed v. State*, 762 S.W.2d 640, 644 (Tex. Ct. App. 1988) (collecting cases).

The allegations also show the officers and Mr. Mandel retaliated against Mr. Dubash and Dr. Harsini for their protected speech: Plaintiffs were "engaged in constitutionally protected activity"; Defendants' actions "would chill a person of ordinary firmness from continuing to engage in that activity"; and Defendants' actions "were substantially motivated" by

Plaintiffs' "constitutionally protected conduct." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) (citations omitted) (stating elements of retaliation). First, for reasons discussed at length *supra*, Section II, the exercise of Plaintiffs' rights under both the First Amendment's free speech and (in Mr. Dubash's case) free exercise clauses was "constitutionally protected activity." *Id.* The right to peacefully advocate in traditional public forums on matters of public concern, such as the morality and risks of industrialized farming, goes to the *heart* of the First Amendment. *See, e.g.*, *Perry Educ. Ass'n*, 460 U.S. at 45; *Snyder*, 562 U.S. at 451–52. That protection encompasses expression through film, *Joseph Burstyn*, 343 U.S. at 502, including graphic footage, *World Wide St. Preachers*, 245 F. App'x at 339, 348–49, even if minors are among the viewers, *Erznoznik*, 422 U.S. at 213–14.

Second, there is "little doubt that being arrested for exercising the right to free speech would chill a person of ordinary firmness from exercising that right in the future." *Thurairajah v. City of Fort Smith*, 925 F.3d 979, 985 (8th Cir. 2019) (citation omitted). So too where Defendants "threatened to arrest Plaintiffs if they did not leave." *World Wide St. Preachers*, 245 F. App'x at 342. Indeed, preventing Plaintiffs and

others from engaging in the same constitutionally protected activity in the future was Defendants' entire purpose. ROA.30–34 [¶¶ 109–14, 117–18, 124–29, 132–41]; *see also, e.g.*, ROA.644–45 (City's Motion to Dismiss). And they achieved it: Plaintiffs "fear returning to Discovery Green" to engage in protected expression and have not done so since Mr. Dubash's arrest. ROA.47 [¶ 229].

Third, Defendants' own statements confirm their actions were not just "substantially motivated" by Mr. Dubash and Dr. Harsini's "constitutionally protected conduct"—they were *exclusively* so. *Keenan*, 290 F.3d at 258 (citations omitted). In the video footage before this Court, Conservancy management and Officers Douglas and Whitworth repeatedly identify Plaintiffs' expressive activity as the sole basis for their actions. ROA.30–32 [¶¶ 109–11, 114, 117, 124, 126, 129] 34, [¶ 141]. No one suggested Plaintiffs were breaking any park rule or city ordinance, ROA.28 [¶ 94], 32 [¶ 128], nor could they.

Finally, even if probable cause could be established for the arrest—and it cannot—this still would not bar Mr. Dubash's retaliatory arrest claim. The Complaint shows the officers singled out Mr. Dubash for arrest apart from others whose protests and advocacy involve

controversial topics at Discovery Green, such that the district court could not properly rely on probable cause to dismiss his retaliation claim. *See Gonzalez*, 602 U.S. at 657–58; *Nieves*, 587 U.S. at 405.

Because the district court erred in dismissing Plaintiffs' First Amendment damages claim and in failing to consider Dr. Harsini's claim at all this Court should reverse.

### E.     Dubash Stated a Damages Claim for False Arrest and Unconstitutional Seizure in Violation of his Fourth Amendment Rights (Count 7).

The district court's dismissal of Mr. Dubash's Fourth Amendment claim featured reversible error at each step of its analysis. First, in holding Officers Douglas and Whitworth were not the "arresting officers," the district court failed to properly evaluate when the "arrest" actually occurred, which requires identifying when a person in Mr. Dubash's position would reasonably believe they were under arrest. ROA.1198. Second, in concluding the officers had probable cause to arrest Mr. Dubash for criminal trespass, the district court wrongly fixated on the officers' subjective beliefs, rather than evaluating whether probable cause objectively existed under the circumstances.

1.   **The district court erred by failing to consider whether a reasonable person in Dubash's position would believe he was under arrest.**

The district court erred by holding Officers Douglas and Whitworth "only detained" Mr. Dubash while another officer ultimately "effectuated his arrest." ROA.1198; ROA.767–74. The court's conclusion was based entirely on the police report. *Id.* Yet the report, which confirms Officer Douglas "place[d] the defendant in handcuffs and detained him" before "transfer[ing] custody" to another officer, appears only to support Mr. Dubash's argument. ROA.1198; ROA.767–74. More importantly, the court's focus on the police report ignores the requisite legal analysis: "Police detention constitutes an 'arrest,' such that it must be accompanied by probable cause, if a reasonable person in the suspect's position would understand the situation to be a restraint on freedom of the kind that the law typically associates with a formal arrest." *Freeman v. Gore*, 483 F.3d 404, 413 (5th Cir. 2007) (citations omitted); *accord Michigan v. Chesternut*, 486 U.S. 567, 573–74 (1988).

Here, there is no question that anyone in Mr. Dubash's position would have reasonably believed Officers Douglas and Whitworth had arrested them. Officer Douglas, with Officer Whitworth standing guard,

told Mr. Dubash he was not "free to go," cuffed his hands behind his back, and informed him—twice—that he was "being arrested." This photo, submitted with the Complaint, removes all doubt:



ROA.33–34 [¶¶ 138–40]; Video 3, at 00:13:00–15:00; *see also* ROA.773. The officers then escorted Mr. Dubash, handcuffed, to a secured park office and detained him for several hours awaiting transportation to a detention center. ROA.34–35 [¶¶ 142–45]; *see also* Video 3, at 00:15:08.

That another officer ultimately took custody of Mr. Dubash as reflected in the arrest report does not change the legal analysis. *See, e.g.*, *Freeman*, 483 F.3d at 413. Officer Douglas undoubtedly conducted an arrest, and it is equally chargeable to Officer Whitworth. *See Whitley v. Hanna*, 726 F.3d 631, 646 n.11 (5th Cir. 2013) (affirming officers have an "affirmative duty to intervene to protect the constitutional rights of

citizens from infringement by other law enforcement officers in their presence" even if not participating directly).

### 2.    Well-settled Fourth Amendment principles foreclose a probable cause finding in this case.

Dismissal of the Fourth Amendment claim also violated the clearly established rule that officers may not base their probable cause determination on an individual's protected expression. *See Davidson*, 848 F.3d at 393; *see also Mink*, 613 F.3d at 1003–04 ("It goes without saying that a government official may not base her probable cause determination on … speech protected by the First Amendment.") (citations omitted). This is true under Texas law as well, which precludes a finding of probable cause for trespass where the purpose of removal is "suppressing speech." *Reed v. State*, 762 S.W.2d at 644.

The district court nonetheless held Officers Douglas and Whitworth had probable cause to arrest Mr. Dubash for criminal trespass based on their subjective "impression that the Park was privately owned" and "belie[f] [it] was privately managed." ROA.1195–1200. But probable cause "cannot be established simply by showing that the police subjectively believed [it] existed." *United States v. Ho*, 94 F.3d 932, 935 (5th Cir. 1996) (citations omitted). Rather, it is "determined by an

objective test" that considers "the totality of facts and circumstances" at "the moment of the arrest." *Id.* at 935–36 (citations omitted).

A person with Officer Douglas and Whitworth's "observations, knowledge, and training" would not have an objectively reasonable basis for believing Discovery Green was anything but a public park subject to First Amendment protections. *Id.* at 936 (citation omitted). A "prominent sign" at the Park's entrance announces the Park is public. ROA.23 [¶ 53]. And Mr. Dubash presented the officers public documents establishing Discovery Green is public, including the Park's property records and information on its official website.[6] ROA.31 [¶ 121].

Officers Douglas and Whitworth were not permitted to "disregard facts tending to dissipate probable cause"—but that is what they did. *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988); *see also King v. Massarweh*, 782 F.2d 825, 826, 828 (9th Cir. 1986) (rejecting probable cause for trespass where officers ignored "indicia of residency" and "offers to produce rent receipts"). This alone negates probable cause because "[m]inimal further investigation … would have reduced any suspicion" a

---

[6] The lower court makes no mention of these undisputed public records, including the Park's property records and official website, which Plaintiffs presented to the officers at the time of Mr. Dubash's arrest. ROA.1195–1200; ROA.31 [¶ 121].

crime had occurred. *Bigford*, 834 F.2d at 1219; *see also BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986) (assessing whether probable cause exists "[r]easonable avenues of investigation must be pursued").

Drawing each inference in Mr. Dubash's favor, as required at this stage, there was no probable cause to arrest him for peacefully advocating for animal rights in a public park. That lack of probable cause establishes a Fourth Amendment claim, and the Court should reverse its dismissal.

## III.   Each Defendant Is Liable for Violations of Plaintiffs' Constitutional Rights.

### A.   The Complaint sufficiently alleges the City and its Park Corporation are liable under *Monell* for violating Plaintiffs' First and Fourth Amendment rights (Count 3).

Plaintiffs plausibly allege the City and its Park Corporation are liable under *Monell v. Dep't of Soc. Servs. of the City of N.Y.* for at least two independent reasons: (1) They failed to adequately train Conservancy staff and local law enforcement about the First Amendment's applicability in Discovery Green; and (2) they enacted and ratified multiple policies and practices that were "the moving force" behind the violations of Plaintiffs' constitutional rights. 436 U.S. 658 (1978). As Plaintiffs at this stage of litigation need only "plead facts that plausibly support each element of § 1983 municipal liability under either

theory," the district court erred in dismissing their *Monell* claim.[7] *Peña v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

> **1.    Dubash and Harsini sufficiently allege the City failed to train state actors regarding the First Amendment's applicability to Discovery Green.**

Even the most rudimentary training would have informed the Conservancy's management and local law enforcement that Discovery Green was a public park where First Amendment rights are protected. Yet the City offered no training whatsoever. ROA.24 [¶ 64]. And it made no attempt to remedy this oversight despite being made aware of ongoing constitutional violations in its Park. ROA.37 [¶ 160].

The district court dismissed Plaintiffs' failure-to-train claim in part because it believed Plaintiffs "do not provide information about the training th[e] City did or did not provide." ROA.1216. This is an odd conclusion to draw. Several pages earlier, the court described how "Plaintiffs' Complaint alleges multiple occasions where the City failed to train the Conservancy's staff," including direct quotations from the

---

[7] The Park Corporation is no more than the City's agent and shares in its liability. But even if the Park Corporation must independently satisfy *Monell*, it does so for the reasons described in this section.

Complaint alleging the failure to provide *any* training, which caused the violations of Plaintiffs' constitutional rights. ROA.1213–14.

The Complaint thus sufficiently pleads *Monell* liability by alleging that (1) the City's "training policy procedures were inadequate"; (2) it "was deliberately indifferent in adopting its training policy"; and (3) "the inadequate training policy caused" Plaintiffs' constitutional injury. *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010); ROA.24 [¶ 64], 45 [¶¶ 211–15]. As to the second prong, a plaintiff may show deliberate indifference in two ways: (1) a risk of constitutional violations was an "obvious" or "highly predictable consequence" of the failure to train, or (2) a pattern of violations existed. *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 624–25 (5th Cir. 2018) (citations omitted). Mr. Dubash and Dr. Harsini have shown both.

First, the constitutional violations here were "highly predictable consequences" of a government decision to delegate rulemaking authority to the Conservancy without training its staff or local law enforcement about applicable law. *Id.* This is not a matter of failing to provide training about highly "specific scenario[s]" or particularly "nuance[d]" issues of law. *Connick v. Thompson*, 563 U.S. 51, 67 (2011). Instead, according to

50

the Conservancy and arresting officers, the City did not so much as inform them that Discovery Green is a public park—let alone train them about the most *basic* constitutional rights that follow from that. ROA.27–34 [¶¶ 85–86, 88, 91, 96–98, 105–14, 119–24, 127, 133–37, 141]. This failure to train "concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face" is a classic example of constitutional violations being "highly predictable." *Littell*, 894 F.3d at 624–25 (quoting *City of Canton v. Harris*, 489 U.S. 378, 396 (1989)); *accord Hutcheson v. Dallas County*, 994 F.3d 477, 482–83 (5th Cir. 2021).

Second, the Complaint details a pattern of four separate instances over the course of one year in which the Conservancy and City police prevented Plaintiffs from engaging in constitutionally protected activity in a public park, culminating in Mr. Dubash's arrest. ROA.27–36 [¶¶ 83–154]. The district court nonetheless discounted these allegations, holding "Plaintiffs cannot establish a pattern … by relying only on facts that give rise to the Complaint here." ROA.1214. The court cites no authority to support this proposition, instead relying only on decisions involving a *single* adverse act, which (of course) cannot establish a "pattern" of

conduct. ROA.1214–15. Indeed, courts routinely consider multiple incidents of a defendant's alleged violations to determine whether such a pattern exists. *See, e.g.*, *McNeal v. LeBlanc*, 90 F.4th 425, 432 (5th Cir. 2024) (per curiam); *Duvall v. Dallas County*, 631 F.3d 203, 207–08 (5th Cir. 2011) (per curiam); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 456–57 (5th Cir. 1994) (en banc). This makes sense. If courts consider a pattern of conduct in assessing the viability of a plaintiff's claim, why would they be required to disregard that same pattern in assessing the government's liability for it?

The government's indifference to its constitutional duty makes it liable under *Monell*, and the Court should reverse the contrary holding below.

> **2.    The Complaint pleads official City policy of delegating rulemaking authority to the Conservancy without ensuring the protection of constitutional rights.**

*Monell* liability also applies because the government's "official policy" of granting unfettered discretion to the Conservancy without providing any legal or regulatory guidance "was the moving force behind the violation" of Plaintiffs' constitutional rights. *Groden v. City of Dallas*, 826 F.3d 280, 283 (5th Cir. 2016) (citation omitted). Under *Monell*, an

"official policy" can be one "promulgated by" a final policymaker. *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.) (per curiam), *aff'd*, 739 F.2d 993 (5th Cir. 1984) (en banc). As the Complaint describes, Discovery Green's Park Rules, its official website, the Park Corporation's Articles of Incorporation, and the Operating Agreement between the Park Corporation and the Conservancy, all establish that the City—directly and indirectly through its Park Corporation—delegated rulemaking authority in a traditional public forum to the Conservancy without any effort to ensure the constitutionality of the rules it imposed.[8] ROA.13–24; ROA.810.

Further, the Conservancy's board of directors is appointed by the Mayor and subject to confirmation by the City Council. ROA.15 [¶ 15]; ROA.60–61 [art. VI]. And any rule change by the Conservancy "shall be subject to" approval by the Mayor, a final policymaker for the City. ROA.811 [§ 4.3].

---

[8] This absence of constitutional guidance is particularly conspicuous given the length and detail of the Operating Agreement and addenda, which together run over 60 pages. *See, e.g.*, ROA.746 (dictating where the Conservancy should place portable toilets during events).

Together, these facts are more than sufficient to support an "official policy" for *Monell* liability at this stage of litigation. *See, e.g.*, *St. Maron Props., L.L.C. v. City of Houston*, 78 F.4th 754, 761–62 (5th Cir. 2023) (reversing dismissal where plaintiff "plausibly alleged" *Monell* violation); *Groden*, 826 F.3d at 283, 286 (reversing dismissal on allegations that allowed "a reasonable pleading inference" of a *Monell* violation).

### 3. The Complaint sufficiently alleges the City is liable for delegating final policymaking authority to the Conservancy.

The City is also independently liable for the Conservancy's speech prohibition that has precluded Mr. Dubash and Dr. Harsini from exercising their constitutional rights for over three years. Under *Monell*, an "official policy" can be one enacted "by an official to whom the lawmakers have delegated policy-making authority." *Webster*, 735 F.2d 838 at 841. Here, the Conservancy's speech prohibition is "attributable to the governing body or officials" that delegated authority to effectuate it— i.e., the City and the Park Corporation. *Id.* (affirming that where an entity "takes the place of the governing body in a designated area of city administration," its rules are attributable to the government). And any

rule change by the Conservancy is subject to approval by the Mayor, a final policymaker. ROA.811 [§ 4.3].

Yet the district court held that, because the Park Rules and Operating Agreement state "the rules and regulations of the Park must comply with applicable state laws, federal laws, and Houston ordinances," the City cannot be held accountable for any policy that violates those laws. [9] ROA.1210. This was error. Such generalized commands are "mere restatement[s] of well-settled constitutional restrictions" that do not offer any guidance to the Conservancy regarding what speech prohibitions are permissible—or even *what legal obligations*, including, for instance, adherence to the First Amendment, apply in the first place.[10] *CISPES (Comm. in Solidarity with the People of El Sal.) v. FBI*, 770 F.2d 468, 474 (5th Cir. 1985). Enforcing such language would require Conservancy staff to "meticulously determine the

---

[9] The Park Rules, Section 1.1.5, state that the rules "are in addition to, and not in lieu of, any Federal or State laws, rules or regulations, or any City of Houston Ordinances." ROA.675. And the Operating Agreement states that park rules and regulations "will comply with all Applicable Laws." ROA.811 [§ 4.2]. These documents do not contain any information about what laws or regulations apply, or any other legal or regulatory guidance.

[10] This oversight is particularly problematic considering the Conservancy now claims to have been under the extraordinary impression it was operating a *private* park where the First Amendment has no application.

state of law themselves," which is impermissible when constitutional rights are at stake. *Prime Healthcare Paradise Valley, LLC*, 368 NLRB No. 10 (2019) (cleaned up); *cf. Connick*, 563 U.S. at 64 (finding no *Monell* violation for failure to train prosecutors regarding *Brady* obligations because they possess "legal training" that "differentiates attorneys from average public employees") (cleaned up).

The district court thus erred in dismissing Plaintiffs' *Monell* claim for failure to cite a "formal policy statement" reflecting the Conservancy's underlying speech prohibition. ROA.1210. The law says this requirement does not exist—and this Court has reversed dismissal of *Monell* claims where plaintiffs "pled sufficient facts to show" that the policy existed. *Groden,* 826 F.3d at 286. The Court should do so here for the same reason.

### 4.  Plaintiffs also sufficiently allege the government ratified the Conservancy's speech prohibition post-enforcement.

Not only did the government expressly authorize the Conservancy to promulgate policies like its speech prohibition here, it also separately ratified the prohibition after its police and Conservancy staff enforced it against Mr. Dubash and Dr. Harsini. *See, e.g.*, *City of St. Louis v.*

*Praprotnik*, 485 U.S. 112, 127 (1988) (ratification occurs when a policymaker "approve[s] a subordinate's decision and the basis for it").

Plaintiffs' allegations establish that after Mr. Dubash's arrest at Discovery Green, he and Dr. Harsini sent a letter through counsel to the City, its Park Corporation, and the Conservancy outlining the constitutional and statutory injuries underlying this action. The letter outlined the four separate incidents of censorship at Discovery Green, culminating in Mr. Dubash's unlawful arrest, and described in detail the violations to Plaintiffs' free speech and free exercise rights. ROA.36 [¶¶ 155–57]; ROA.160–63, 165–67. The City and its Park Corporation confirmed receipt of the letter. ROA.36 [¶ 159]. The Conservancy replied that its "position has not changed," and Plaintiffs would be permitted to return to Discovery Green only if they used an "alternative method" of speech. ROA.37 [¶ 160]; ROA.170.

This demonstrates the government had actual knowledge of the ongoing violation of Plaintiffs' rights along with the Conservancy's purported grounds for violating them—but declined to exercise its power to intervene. *See* ROA.811 [§ 4.3] (affirming any rule change by the Conservancy "shall be subject to the Mayor's Approval."); *see also*

*Covington v. City of Madisonville*, 812 F. App'x 219, 228 (5th Cir. 2020) (per curiam) (finding ratification where police chief "fail[ed] to intervene to stop" the "unconstitutional conduct"); *Culbertson v. Lykos*, 790 F.3d 608, 622 (5th Cir. 2015) (ratification occurs where the government tacitly approves a "decision and the basis for it"). By standing behind the Conservancy's censorship, the Mayor, a final policy maker, has "officially adopted and promulgated" the Conservancy's viewpoint- and content-based speech prohibition. *Webster*, 735 F.2d at 841.

The district court erred in declining to even consider a ratification theory of *Monell* liability because it was not detailed in Plaintiffs' Complaint but raised "for the first time in their response [to Defendants' Motion to Dismiss]." ROA.1201 n.7. "The federal rules … mak[e] it clear that it is unnecessary to set out a legal theory for the plaintiff's claim for relief." *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam) (citation omitted). "When a complaint contains sufficient 'factual allegations,' a court should not grant a motion to dismiss 'for imperfect statement of the legal theory supporting the claim asserted.'" *Groden*, 826 F.3d at 284 (emphasis omitted) (quoting *Johnson*, 574 U.S. at 11).

As the district court itself explained, "*Monell* is not a claim," but "a municipal liability test" under which "the complaint need only allege facts … which establish that the challenged policy was promulgated or ratified by the city's policymaker." ROA.1190 n.4, 1206 (citations omitted). *How* the policy became "official" (*i.e.*, through promulgation or ratification) is a legal theory that informs the court's analysis. *Cf. Koger v. Dart*, 950 F.3d 971, 974–75 (7th Cir. 2020) (holding plaintiff was not required to amend Complaint that "initially relied only on the First Amendment" but later "invoked the Due Process Clause too"). It is *not* an independent claim that Plaintiffs had to expressly allege in the Complaint. *Johnson*, 574 U.S. at 12.

Plaintiffs' ratification theory is thus sufficiently alleged and properly before this Court. By refusing to intervene to prevent known ongoing constitutional violations in its public park—committed *by* the organization it tasked with Park oversight and *pursuant* to that government-granted authority—the City and its Park Corporation are liable under *Monell*. This Court should accordingly reverse the dismissal of Plaintiffs' claims against them.

**B.    The Complaint alleges the Conservancy and its former president are liable for violating Plaintiffs' constitutional rights (Counts 1, 2, 4, and 5).**

The well-pleaded facts and ample documentary exhibits show the Conservancy and its former president, Mr. Mandel, directly targeted Plaintiffs based on disapproval of the "content" of their constitutionally protected speech. And straightforward application of Supreme Court precedent establishes the Conservancy and Mr. Mandel are state actors liable for these constitutional violations. *See supra*, Section I.

The Conservancy has censored Plaintiffs for over three years through an impermissible viewpoint- and content-based speech restriction that now stifles Plaintiffs' protected expression as a prior restraint. *See supra*, Sections II–III.B; ROA.36 [¶¶ 155–58, 160]; ROA.170. When Plaintiffs and their attorneys confronted the Conservancy with the implications of its censorship, the Conservancy not only responded that its position had not changed, but brushed aside its ongoing violation of Mr. Dubash's religious and expressive freedoms. ROA.37 [¶ 160]; ROA.170.

Mr. Mandel is also personally liable under Plaintiffs' claims for direct and retaliatory First Amendment violations. ROA.46–48 [¶¶ 218–

38]. He issued the order to City police officers to shut down Plaintiffs' protected advocacy because it was "offensive." ROA.32 [¶ 127] (quoting Video 3, at 00:10:25). As the video footage before this Court reflects, his order directly led to Mr. Dubash's arrest. ROA.33–34 (quoting Video 3, at 00:11:57). And because Mr. Mandel did not raise a qualified immunity defense in the district court, he has waived it. *See* ROA.664–68; *Sindhi*, 905 F.3d at 333.

### C.   Plaintiffs sufficiently allege Officers Douglas and Whitworth are liable for violating Plaintiffs' rights and not entitled to qualified immunity (Counts 4 and 7).

The facts pled in the Complaint preclude granting Officers Douglas and Whitworth qualified immunity for violating Plaintiffs' fundamental constitutional rights. The allegations show the officers violated Mr. Dubash and Dr. Harsini's constitutional rights that were "clearly established" at the time. *Kinney v. Weaver*, 367 F.3d 337, 350, 372 (5th Cir. 2004) (en banc). Consequently, a reasonable official "can fairly be said to have been on notice of the impropriety of their actions." *Id.*

The district court focused on the first prong, erroneously holding Officers Douglas and Whitworth did not violate the constitution for a single reason: The officers "believed the Park was privately owned,"

meaning "they had probable cause to believe Plaintiffs were committing criminal trespass." ROA.1200. There are, as noted *supra*, Section II.E, two problems with this conclusion. The first is that, once again, the court misrelied on the officers' *subjective* beliefs rather than determining whether they were *objectively* reasonable under the circumstances. ROA.1195–1200. Accepting Plaintiffs' factual allegations as true, no police officer could have reasonably believed Discovery Green is a private park where First Amendment rights do not apply. To determine otherwise, this Court would have to find that not only was it reasonable for police officers to believe a public park, where political protests are routinely held, was privately owned and operated—but also that it was reasonable for them to disregard undisputed public records establishing it is public, and to arrest Mr. Dubash without further investigating that point. Had the officers done any "[m]inimal further investigation," as the law required, they'd have had no reason to believe probable cause existed to arrest Mr. Dubash. *Bigford*, 834 F.2d at 1219.

The second error is that in improperly focusing on the officers' subjective beliefs, the district court improperly relied on disputed hearsay contained within the police report rather than Plaintiffs' well-

pleaded allegations. ROA.1196. The police report was not referenced in the Complaint, is not "central" to Plaintiffs' claims, and is instead "much more central to the [Defendants'] defenses." *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 537 (5th Cir. 2003) (reversing lower court's decision for improperly relying on investigation report on these grounds). Yet even if the police report could properly inform the Court's analysis, "the district court failed to construe" it in the "light most favorable to the plaintiffs." *Id.* The district court's errors on the first prong of the qualified immunity analysis warrant reversal.

Plaintiffs' allegations also meet the "clearly established" prong of qualified immunity. Any reasonable officer would have had fair warning that expelling or arresting Plaintiffs would violate core First Amendment rights because it is clearly established that protected speech cannot provide probable cause for an arrest, both federally, *Mink*, 613 F.3d at 1003–04, and under Texas law, *Reed v. State*, 762 S.W.2d at 644. Such "general constitutional rule[s] already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held

unlawful." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (cleaned up) (citation omitted).

By arresting Mr. Dubash because the "content" of his speech in a public park was "offensive," the officers also defied long-standing First Amendment principles proscribing viewpoint- and content-based discrimination. *See supra* Section II.A.[11] Time after time, the Supreme Court has struck down public officials' attempts to censor speech in public places based on its content or perceived "offensiveness." As this Court recently held, "decades of Supreme Court precedent" has "clearly established [a] First Amendment right to engage in speech even when some listeners consider the speech offensive, upsetting, immature, in poor taste, or even dangerous." *Bailey v. Iles*, 87 F.4th 275, 289–90 (5th Cir. 2023) (finding arresting officers not entitled to qualified immunity for arresting plaintiff for offensive speech) (citing *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 54 (1988) and *Herceg v. Hustler Mag., Inc.*, 814 F.2d 1017, 1021–24 (5th Cir. 1987)).

---

[11] As a reasonable officer encountering Plaintiffs' peaceful advocacy would have had "time to make calculated choices" in light of these well-settled principles, Officers Douglas and Whitworth should not "receive the same protection as a police officer who makes a split-second decision to use force in a dangerous setting." *Hoggard v. Rhodes*, 141 S. Ct. 2421, 2422 (2021) (statement of Thomas, J., respecting the denial of certiorari).

In holding Officers Douglas and Whitworth are entitled to qualified immunity, the district court not only failed to accept Plaintiffs' allegations as true, as required at this stage of litigation, but overlooked altogether several of Plaintiffs' most critical allegations. *See, e.g.*, ROA.1195–1200 (making no mention of the public documents the officers were presented with at the time of arrest). The Court should reverse the district court's qualified immunity holding.

## IV.    Only Immediate Injunctive Relief Can Resolve the Ongoing Violations of Dubash and Harsini's First and Fourth Amendment Rights.

For over three years now, Defendants have precluded Mr. Dubash and Dr. Harsini from exercising their constitutional rights in downtown Houston's premier public park for viewpoint- and content-based reasons. To prevent the ongoing violation of their constitutional rights by the Defendants, Plaintiffs respectfully request this Court reverse the district court's decision and remand with instructions for it to enter a preliminary injunction. *See Byrum*, 566 F.3d at 445 (reversing and remanding for entry of preliminary injunction to protect First Amendment rights).

The preliminary injunction motion record mirrors and supports with evidence Plaintiffs' allegations that Defendants are censoring their

protected expression on the basis of its viewpoint and content. *See, e.g.*, ROA.511 [¶ 12] (Declaration of Kathryn Lott, stating: "Discovery Green will not allow public broadcasting of videos displaying violence or death," including "killing or torturing animals," because they are "inherently disturbing" and are not "family-appropriate."); ROA.522 [¶ 8] (Declaration of Floyd Willis, stating: "[I]f I was on duty, I would ask [Plaintiffs] to either stop playing the violent videos, or leave. … The concern was only with the public display of violent imagery of animals being slaughtered …."); ROA.948–55 (Supplemental Declaration of Daraius Dubash introducing and authenticating video footage and photographs of Cube of Truth on June 18, 2022, at Discovery Green). As shown above, these circumstances satisfy the first requirement for injunctive relief: "substantial likelihood of success on the merits." *Speaks v. Kruse*, 445 F.3d 396, 399–400 (5th Cir. 2006).

The second requirement, "a substantial threat of irreparable injury if the injunction is not issued," *id.*, is always satisfied where violations of constitutional rights are involved. As this Court has emphasized, "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Opulent Life Church v.*

*City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). The third and fourth requirements for injunctive relief are also satisfied: Defendants' unconstitutional content- and viewpoint-based speech restriction in a public park serves no legitimate purpose, *supra* Section II.B, and harms the "public interest" by undermining the critical role served by our traditional public forums, *Speaks*, 445 F.3d at 400.

## CONCLUSION

Mr. Dubash and Dr. Harsini respectfully request this Court reverse the dismissal of their claims and remand with instructions to grant them preliminary injunctive relief. Because dismissal of Plaintiffs' federal claims was in error, Plaintiffs also ask this Court to reverse the lower court's dismissal of Plaintiffs' state law claims and remand with instructions to exercise supplemental jurisdiction over them.

February 21, 2025                    Respectfully submitted,

Sara Berinhout                       */s/ John Greil*
FOUNDATION FOR INDIVIDUAL            John Greil
RIGHTS & EXPRESSION (FIRE)           Steven T. Collis
510 Walnut St., Ste. 900             Law and Religion Clinic
Philadelphia, PA 19106               University of Texas School of Law
(215) 717-3473                       727 East Dean Keeton St.
sara.berinhout@thefire.org           Austin, Texas 78705
                                     (512) 471-5151

JT Morris
FOUNDATION FOR INDIVIDUAL
RIGHTS & EXPRESSION (FIRE)
700 Pennsylvania Ave. SE, Ste. 340
Washington, DC 20003
(215) 717-3473
jt.morris@thefire.org

john.greil@law.utexas.edu
Steve.collis@law.utexas.edu

*Counsel for Plaintiffs-Appellants*

# CERTIFICATE OF SERVICE

I certify that on February 21, 2025, the foregoing Brief of Appellants was electronically filed with the United States Court of Appeals for the Fifth Circuit using the CM/ECF system, and that all parties required to be served have been served. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of a commercial virus scanning program and is free of viruses.

*/s/ John Greil*
John Greil
*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

This Brief of Appellants complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7) because it contains 12,952 words, excluding parts exempted by Rule 32(f); and (2) the typeface and type style requirements of Rule 32(a)(5), (6), because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word (the program used for the word count).

Dated: February 21, 2025

> */s/ John Greil*
> John Greil
> *Counsel for Plaintiffs*