No. 24-20485

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

DARAIUS DUBASH; FARAZ HARSINI,
Plaintiffs-Appellants,

v.

CITY OF HOUSTON; HOUSTON DOWNTOWN PARK CORPORATION;
ROBERT DOUGLAS; VERN WHITWORTH; DISCOVERY GREEN
CONSERVANCY, FORMERLY KNOWN AS HOUSTON DOWNTOWN PARK
CONSERVANCY; BARRY MANDEL,
Defendants-Appellees.

On Appeal from the United States District Court for the Southern District of Texas,
Houston Division, Civil Action 4:23-cv-03556
Honorable Andrew S. Hanen Presiding

**BRIEF OF YOUNG AMERICA'S FOUNDATION, HAMILTON LINCOLN LAW INSTITUTE, AND ADVANCING AMERICAN FREEDOM AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS-APPELLANTS FOR REVERSAL**

/s/ Anna St. John
Anna St. John
Adam E. Schulman
Hamilton Lincoln Law Institute
1629 K Street NW, Suite 300
Washington, DC 20006
Telephone: (917) 327-2392
Email: anna.stjohn@hlli.org
*Counsel of record*

/s/ Madison Leigh Hahn
Madison Leigh Hahn
Young America's Foundation
11480 Commerce Park Dr, STE 600
Reston, VA 20191
(800) 872-1776
mhahn@yaf.org
*Counsel for Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1(a):

- Young America's Foundation states that it is an IRS § 501(c)(3) nonprofit corporation organized under the laws of Tennessee with its principal place of business in Virginia. It has no parent company, subsidiaries, or affiliates, and does not issue shares to the public.

- Hamilton Lincoln Law Institute states that it is an IRS § 501(c)(3) nonprofit corporation organized under the laws of Washington, D.C. with its principal place of business in Washington, D.C. It has no parent company, subsidiaries, or affiliates, and does not issue shares to the public.

- Advancing American Freedom states that it is an IRS § 501(c)(3) nonprofit corporation organized under the laws of Indiana with its principal place of business in Washington, D.C. It has no parent company, subsidiaries, or affiliates, and does not issue shares to the public.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................2

TABLE OF AUTHORITIES ..............................................................................4

INTEREST OF AMICUS CURIAE......................................................................6

SUMMARY OF ARGUMENT ............................................................................7

ARGUMENT ...................................................................................................8

   I.   The government cannot delegate its constitutional duty to protect
fundamental rights. ......................................................................................8

     A.   The government alone bears the duty to protect fundamental rights. .........8

     B.   Private delegation cannot, as a matter of law, absolve the government of
its duty to protect fundamental rights. ..........................................................9

     C.   The consequences of permitting suppression through private delegation
cannot be overstated. ...............................................................................11

     1.   Permitting a private delegatee to exclude whomever they want from a
public place is a carte-blanche heckler's veto. .............................................12

     2.   Some state universities have already attempted to evade First Amendment
obligations by outsourcing their constitutional duties. ...................................14

CONCLUSION .............................................................................................17

## TABLE OF AUTHORITIES

**Cases**

*DOT v. Ass'n of Am. R.R.*, 575 U.S. 43, 58 (2015) ..............................................7, 12

*Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 397 (1995) ...........................8

*Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, 107 F.4th 415, 423
(2024) ...................................................................................................8, 9

*NRA of Am. v. Vullo,* 602 U.S. 175, 201 (2024) ..................................................9, 10

*Terminiello v. City of Chicago*, 337 U.S. 1 (1949) ..................................................10

*University at Buffalo Young Americans for Freedom, et al. v. University at Buffalo
Student Association, et al.*, No. 1:23-cv-00480, W.D.N.Y. (complaint filed June
1, 2023) (notice of appeal filed Jan. 13, 2025) ....................................................14

*Young Americans for Freedom at the University of Florida v. The University of
Florida, et al.*, No. 1:18-cv-00250, N.D. Fla. (complaint filed Dec 21, 2018)....13

**Other Authorities**

*Hearing Before the United States House of Representatives Committee on the
Judiciary: Free Speech on College Campuses*, 118th Cong. 2 (2023) (testimony
of Connor Ogrydziak, former UB YAF chairman) ..............................................14

Nick Baker, *Transgender Activists Disrupt YAF Screening of Chloe Cole
Documentary at University of Utah; Police Shut Down Event*, New Guard, Nov.

2, 2023, https://yaf.org/news/transgender-activists-disrupt-yaf-screening-of-chloe-cole-documentary-at-university-of-utah-police-shut-down-event/............11

Randy E. Barnett, *Our Republican Constitution: Securing the Liberty and Sovereignty of We the People* (2016) ....................................................................7

## INTEREST OF AMICUS CURIAE[1]

Young America's Foundation (YAF) is a national, conservative nonprofit dedicated to championing traditional values and free speech on college campuses. Students associate with YAF by becoming members and forming YAF chapters. This association enables students to exercise their civil rights in unique ways on campus by conducting activism such as the "Detransitioners Day of Visibility," a YAF project that warns of the dangers of transgenderism and the phycological consequences of "transitioning." All of this association and expression is protected by the First Amendment, and all of it draws the ire of the campus left. YAF has a vested interest in securing students' rights against restrictions by school administrators, and by so-called "independent" student governments, to which schools often delegate control over student activities.

Hamilton Lincoln Law Institute ("HLLI") is a public interest organization dedicated to protecting free markets, free speech, limited government, and separation of powers against regulatory abuse and rent-seeking. See, e.g., *Stock v. Gray*, 663 F. Supp. 3d 1044 (W.D. Mo. 2023) (preliminarily enjoining enforcement of law that restricts pharmacist speech based on viewpoint); *Greenberg v. Haggerty*,

---

[1] Pursuant to Fed. R. App. P. 29(E), amicus certifies that no counsel for any party authored this brief in whole or in part, no party or party's counsel made a monetary contribution to fund its preparation or submission, and no person other than amicus or its counsel made such a monetary contribution. Amicus files this brief upon the consent of all parties.

491 F. Supp. 3d 12 (E.D. Pa. 2020) (same; attorney speech). HLLI finds troubling the notion that state actors can avoid constitutional accountability by doing indirectly what they could not do directly. No viewpoint-based policy against "offensive" speech in this country's traditional public forum (a public park), much less a standardless unwritten one, would ever withstand First Amendment review. A city should not be able to evade accountability by cloaking administration and enforcement of the park in a corporate form.

Advancing American Freedom (AAF) is a nonprofit organization that promotes and defends policies that elevate traditional American values, including equal treatment before the law. AAF "will continue to serve as a beacon for conservative ideas, a reminder to all branches of government of their responsibilities to the nation," Edwin J. Feulner, Jr., *Conservatives Stalk the House: The Story of the Republican Study Committee*, 212 (Green Hill Publishers, Inc. 1983), and believes that government officials must be constrained by the Constitution for the sake of the liberty of the people. AAF joins this brief on behalf of its 7,967 members in Texas and its 10,483 members in the Fifth Circuit.

## SUMMARY OF ARGUMENT

Having deeded the administration of its public park, Discovery Green, to a private corporation, Houston now seeks to avoid its constitutional obligations to safeguard First Amendment rights in traditional public fora. If not *sui generis*, this

arrangement is certainly unusual enough to set off alarm bells. Plaintiffs brief at length why the district court erred in concluding that the Conservancy did not act under color of state law for purposes of Section 1983. Appellants Br. 18-23. Amici fully endorse those points but write separately to observe the interplay of the state action issue with two other constitutional doctrines: the private non-delegation doctrine and the First Amendment's heckler's veto doctrine. The former works to ensure that government entities cannot avoid accountability by ceding their powers to private actors. The latter works to ensure that government entities cannot rely on offended private citizens as a rationale for suppressing free expression. Each doctrine bears a resemblance to Houston's management of Discovery Green.

## ARGUMENT

## I.     The government cannot delegate its constitutional duty to protect fundamental rights.

## A.     The government alone bears the duty to protect fundamental rights.

The Constitution reflects a unique relationship between the government and the people. That unique relationship prohibits private delegation of the protection of constitutional rights in principle and in law.

Under the Constitution, the people have "contracted with" their elected government to enforce their constitutional rights. The government is the power bound and restricted by this agreement; no private entity could ever harbor the same

accountability toward civil rights as does the government. In the Supreme Court's words: "Those who exercise the power of Government are set apart from ordinary citizens. Because they exercise greater power, they are subject to special restraints. There should never be a question whether someone is an officer of the United States because, to be an officer, the person should have sworn an oath and possess a commission." *DOT v. Ass'n of Am. R.R.*, 575 U.S. 43, 58 (2015).

To find the government could decline its obligations here would violate the fundamental agreement between the government and "We the People." *See generally* Randy E. Barnett, *Our Republican Constitution: Securing the Liberty and Sovereignty of We the People* (2016).

**B.     Private delegation cannot, as a matter of law, absolve the government of its duty to protect fundamental rights.**

The government may not delegate the authority to decide which rights a private entity will protect. In *DOT* the Supreme Court considered the "line-drawing" that must be done between legislative and executive policymaking. 575 U.S. at 61. The Court noted the "inherent difficulty" in that determining when one branch of government had impermissibly delegated its duties to another.

The Court found the issue of private delegation must more straightforward. "When it comes to private entities…there is not even a fig leaf of constitutional justification [for delegation of policymaking]. Private entities are not vested with

"legislative Powers." Art. I, §1. Nor are they vested with the "executive Power," Art. II, §1, cl. 1, which belongs to the President." *Id.* at 62.

The Court firmly stated: "By any measure, handing off regulatory power to a private entity is 'legislative delegation in its most obnoxious form.'" *Id.* (quoting *Carter v. Carter Coal Co.*, 298 U. S. 238, 311 (1936)). "The President, after all, must have the general administrative control of those executing the laws, and this principle applies with special force to those who can exercis[e] significant authority without direct supervision." *Id.* at 64 (cleaned up).

Thus, an arrangement whereby an executive branch of government "hands off" "the general administrative control of those executing the laws" is unconstitutional. Private entities cannot be delegated government power unless they act as a subordinate "aid" to a government entity that retains "authority and surveillance" over the private entity. *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, 107 F.4th 415, 423 (2024) (*Horsemen's II*).

Federal government non-delegation cases, of course, implicate different separation of powers concerns than when a state municipality delegates its regulatory power to a private entity, but the fundamental principle— accountability— still applies. "It surely cannot be that government, state or federal, is able to evade the most solemn obligations imposed by the Constitution by simply resorting to the corporate form." *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S.

374, 397 (1995). Governments may not "evade constitutional restrictions by mere labeling." *Horsemen's II*, 107 F.4th at 437. "[D]eeming an entity 'private' does not settle whether it is legally part of the…government." *Id.* Neither federal nor state government "can[] do indirectly what [they are] barred from doing directly," *NRA of Am. v. Vullo*, 602 U.S. 175, 201 (2024) (New York state official).

That is what Houston is attempting to do here: evade its constitutional obligations by resort to the corporate form, mere labeling, and doing indirectly what it could not do directly.

**C.    The consequences of permitting suppression through private delegation cannot be overstated.**

In *Horsemen's II*, this Court posed a hypothetical that is instructive here:

> Suppose a city structures its speeding laws to let a group of private car enthusiasts monitor speeds with their own radar guns, pull speeders over, and ticket them. Fines are reviewed by the police department and, ultimately, the mayor. Who *enforces* the speeding laws? Anyone would say the private group. After all, consider how many cases we decide concerning whether the police have wrongly stopped someone or used excessive force during the stop. *See, e.g., Terrell v. Town of Woodworth*, No. 23-30510, 2024 U.S. App. LEXIS 3803, 2024 WL 667690 (5th Cir. Feb. 19, 2024) (per curiam). All would agree that the police were "enforcing" the law when they stopped the person. The same goes for the private entity in the hypothetical.

*Horsemen's II*, 107 F.4th 415, 431.

So too here. The Conservancy, while private in form, functions as the enforcer of municipal law. "It is no answer to say that [Houston] can come in at the tail-end

of this adversarial process and review the sanction." *Horsemen's II*, 107 F.4th at 430. Here, the city has not just outsourced enforcement of civil rights laws within the park; it has washed its hands of any power to undo or even review an enforcement decision. *See* Appellants Br. 56-59 (explaining the city's failure to exercise supervisory authority after the enforcement actions).

A municipality can no more outsource enforcement in its public parks than on its roadways. An executive branch of government may not delegate its core functions, any more than Congress can. Enforcement of fundamental liberties like freedom of speech is about as "core" as the government's duties can get.

## 1.    Permitting a private delegatee to exclude whomever they want from a public place is a carte-blanche heckler's veto.

A heckler's veto occurs when the government fails to protect free speech because third parties react poorly to the speech, such as by complaining that the speech is offensive. *Terminiello v. City of Chicago*, 337 U.S. 1 (1949). When the private entity decides to suppress "offensive" speech, it is itself the heckler. Consider *Vullo*, 602 U.S. 175, 201. There, a gun control group tipped off the government to compliance issues with the insurance carriers. *Id. 182*. The government then investigated the insurers. The investigation was not the government's original idea; rather it came from a third-party source who wanted the insurers investigated

because of dislike for the NRA. The Court found this collaboration to be unconstitutionally viewpoint based.

Conservative students encounter the heckler's veto often—so often that YAF trains them on the doctrine so they can recognize it. Consider a case at the University of Utah in 2024. Nick Baker, *Transgender Activists Disrupt YAF Screening of Chloe Cole Documentary at University of Utah; Police Shut Down Event*, New Guard, Nov. 2, 2023, https://yaf.org/news/transgender-activists-disrupt-yaf-screening-of-chloe-cole-documentary-at-university-of-utah-police-shut-down-event/. YAF members hosted a screening of "Damaged," a documentary on the dangers of "gender transitioning" —or at least they tried to.

On the day of the would-be event, protestors filled the room, holding large signs so viewers could not see the screen and making noise so viewers could not hear the film.

Also in the room were about fifteen school security officers. Unfortunately, the officers refused to do anything to stop the hecklers from this total disruption of the screening. Instead, they pressured YAF to go home. The government decided in that moment that they would rather divest YAF of their First Amendment rights than deal with the hecklers. Perhaps the messages themselves made no difference to these officers; maybe they simply wanted to avoid any kind of "ruckus."

And perhaps that is what is happening here; maybe the Conservancy simply wants to avoid any ruckus. Here, the city has permitted the Conservancy to exclude people from the park based on their speech—i.e., for any reason the private corporation deems proper. That would be fine on actual private property, but not in a public park—the archetype of a traditional public forum—where the First Amendment is at its zenith.

**2.     Some state universities have already attempted to evade First Amendment obligations by outsourcing their constitutional duties.**

If government actors could divest themselves of their constitutional duties through a little corporate restructuring, apathetic or authoritarian officials would use this option to suppress free speech rights.

The Supreme Court has addressed this concern directly, noting that "[o]ne way the Government can regulate without accountability is by passing off a Government operation as an independent private concern. Given this incentive to regulate without saying so, everyone should pay close attention when [the government] sponsors corporations that it specifically designates *not* to be agencies or establishments of the United States Government." *DOT*, 575 U.S. 43, 57 (cleaned up).

This concern is already rampantly alive and (un)well on college campuses, where schools have created "independent" nonprofit corporations that hold the power to respect or suppress student expression.

Consider the University of Florida (UF). UF delegates club funding decisions to the student government. Funding is an important part of the life of a campus club; it enables chapters to host events and express their ideas effectively.

In 2018, UF's student government denied the YAF chapter funding but granted funding to groups on the opposite side of the ideological aisle. This was made possible because UF policy granted the student government unbridled discretion in allocating mandatory student fees to student-led clubs. *Young Americans for Freedom at the University of Florida v. The University of Florida, et al.*, No. 1:18-cv-00250, N.D. Fla. (complaint filed Dec 21, 2018). YAF won a legal battle resolving that issue, at least in policy. Jacob Ogles, *UF settles with Young Americans for Freedom over free speech dispute*, Florida Politics, Aug. 1, 2019, https://floridapolitics.com/archives/302327-uf-settles-with-young-americans-for-freedom-over-free-speech-dispute/. YAF is able to utilize Florida's public records law to monitor the student government's compliance with the settlement.

The University at Buffalo (UB) takes their delegation a step further. UB not only delegates significant power to their student government, but it also places that organization in a black box where it is beyond all accountability: The school steadfastly refuses to produce records pursuant to the New York Freedom of Information Law.

UB has given the student government vast powers, including the power to approve events. In 2022, almost immediately after the chapter hosted a well-known conservative speaker (despite heavy protests of the event), the student government used its power to ban the YAF chapter from campus. The student government publicly stated it was taking this action because the members disliked the chapter's conservative speech and events. *University at Buffalo Young Americans for Freedom, et al. v. University at Buffalo Student Association, et al.*, No. 1:23-cv-00480, W.D.N.Y. (complaint filed June 1, 2023) (notice of appeal filed Jan. 13, 2025) This episode shows that flagrant abuse from private delegatees is no mere parade of hypothetical horribles; it is happening.

In the case of UB, it is possible that university officials watched this passively, but it is also possible that they blessed the ban. Powerful government actors from UB professors to New York Governor Kathy Hochul issued statements condemning YAF's speech in the days preceding the ban. *Hearing Before the United States House of Representatives Committee on the Judiciary: Free Speech on College Campuses*, 118th Cong. 2 (2023) (testimony of Connor Ogrydziak, former UB YAF chairman). It may be more troubling if the government instigates the suppression, but the end suppression is the same unconstitutional suppression in either case. *Bible Believers v. Wayne County*, 805 F.3d 228, 248-255 (6th Cir. 2015) (*en banc*) (surveying the history of heckler's veto doctrine).

Permitting unlawful private delegation would provide a roadmap for schools, as well as municipalities, to crush First Amendment rights and avoid constitutional accountability for it. Students and citizens must be able to identify the source of the enforcement against them so they can hold that government body/official accountable.

## CONCLUSION

The government cannot delegate away its constitutional duty to protect free speech in public places. Complicated cases may require complicated reasoning, but this case is not complicated. This is a public park. This Court need not study complex technology or wade through thick legislative language to find that a municipality cannot surrender its citizens' most basic rights in the most basic of public places to the sensibilities of private officials. Whatever the private non-delegation and heckler's veto doctrines mean, they mean that.

Respectfully submitted,


/s/ Anna St. John
Anna St. John
Adam E. Schulman
Hamilton Lincoln Law Institute
1629 K Street NW, Suite 300
Washington, DC 20006
Telephone: (917) 327-2392
Email:  anna.stjohn@hlli.org
*Counsel of record*

/s/ Madison Leigh Hahn
Madison Leigh Hahn
Young America's Foundation
11480 Commerce Park Dr, STE 600
Reston, VA 20191
(800) 872-1776
mhahn@yaf.org
*Counsel for Amicus Curiae*

Certificate of Compliance With Type-Volume Limit,
Typeface Requirements, and Type-Style Requirements

1.    This document complies with the word limit of Fed. R. App. P. 29(a)(5) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

☑    this document contains 2,643 words, **or**

☐    this brief uses a monospaced typeface and contains [*state the number of*] lines of text.

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

☑    this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman **or**

☐    this document has been prepared in a monospaced typeface using [*state name and version of word-processing program*] with [*state number of characters per inch and name of type style*].

(s) /s/ Anna St. John

Attorney for Amicus Curiae Young America's Foundation, Hamilton Lincoln Law Institute, and Advancing American Freedom

Dated: February 28, 2025

# CERTIFICATE OF SERVICE

---

I hereby certify that I electronically filed this *BRIEF OF YOUNG AMERICA'S FOUNDATION, HAMILTON LINCOLN LAW INSTITUTE, AND ADVANCING AMERICAN FREEDOM AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS-APPELLANTS FOR REVERSAL* with the Clerk of the Court for the U.S. Court of Appeals for the Fifth Circuit for filing and transmittal of a Notice of Electronic Filing to the participants in this appeal who are registered CM/ECF users.

DATED: February 28, 2025

/s/ Anna St. John
Anna St. John
Adam E. Schulman
Hamilton Lincoln Law Institute
1629 K Street NW, Suite 300
Washington, DC 20006
Telephone: (917) 327-2392
Email: anna.stjohn@hlli.org
*Counsel of record*