No. 24-20485

United States Court of Appeals
for the Fifth Circuit

Daraius Dubash and Faraz Harsini,
*Plaintiffs-Appellants,*

v.

City of Houston; Houston Downtown Park Corporation; Robert
Douglas; Vern Whitworth; Discovery Green Conservancy; Barry
Mandel,
*Defendants-Appellees*

On Appeal from The United States District Court for the Southern
District of Texas
Case No. 4:23-cv-3556 (Hon. Andrew S. Hanen).

**BRIEF OF *AMICUS CURIAE* LIBERTY JUSTICE CENTER IN
SUPPORT OF PLAINTIFF-APPELLANTS**

Reilly Stephens
   *Counsel of Record*
Bridget Conlan
LIBERTY JUSTICE CENTER
7500 Rialto Blvd.
Suite 1-250
Austin, TX 78735
(512) 481-4400
rstephens@ljc.org
*Attorneys for Amicus Curiae
Liberty Justice Center*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record for amicus curiae certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1, in addition to those listed in the Petitioner's Certificate of Interested Persons, have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

*Amicus Curiae:* The Liberty Justice Center is a not-for-profit corporation exempt from income tax under section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3). It does not have a parent corporation and no publicly held company has a 10% or greater ownership interest.

Date: February 28, 2025

Reilly Stephens
Liberty Justice Center
7500 Rialto Blvd.
Suite 1-250
Austin, TX 78735
(512)481-4400
rstephens@ljc.org
*Counsel for Amicus*

i

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ............................................. i

TABLE OF CONTENTS .................................................................. ii

INTEREST OF AMICUS CURIAE............................................................ 1

INTRODUCTION.......................................................................... 2

SUMMARY OF THE ARGUMENT ............................................................. 4

ARGUMENT .............................................................................. 5

    A.   The Conservancy is a state actor because its identity overlaps and is entwined with the City and the Park Corporation. ................................ 5

    B.   The Park Corporation and Conservancy, having been delegated the traditional exclusive public function of operating a public park and final rulemaking authority by Houston, qualify as state actors. ............. 10

    C.   The use of public funds and public property by a seemingly private organization qualifies their speech-suppressive activities as state action. ................................................................................15

CONCLUSION ........................................................................... 17

CERTIFICATE OF COMPLIANCE............................................................ 18

CERTIFICATE OF SERVICE........................................................................ 19

# TABLE OF AUTHORITIES

## Cases

*Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n,*
  531 U.S. 288 (2001) ...............................................................6, 7, 8, 9

*Burton v. Wilmington Parking Auth.,*
  365 U.S. 715 (1961) ...................................................................... 6, 15

*Dobyns v. E-Systems, Inc.,*
  667 F.2d 1219 (5th Cir. 1982) ................................10, 13, 14, 15, 16

*Evans v. Newton,*
  382 U.S. 296 (1966) .................................................................5, 8, 10, 11

*Hammond v. University of Tampa,*
  344 F.2d 951 (5th Cir. 1965) ............................................................. 16

*Janus v. AFSCME,*
  138 S. Ct. 2448 (2018) ..................................................................... 1

*Lebron v. National Railroad Passenger Corporation,*
  513 U.S. 374 (1995) ........................................................................ 8

*Manhattan Cmty. Access Corp. v. Halleck,*
  587 U.S. 802 (2019) ........................................................................ 10

*Marsh v. Alabama,*
  326 U.S. 501 (1946) .................................................................5, 10, 11, 12

*Nat'l Rifle Ass'n of Am. v. Vullo,*
  602 U.S. 175 (2024) ....................................................................... 4, 12

*Pennsylvania v. Board of Directors of City Trusts of Philadelphia,*
  353 U.S. 230 (1957)................................................................ 8

*Robinson v. Price,*
  553 F.2d 918 (5th Cir. 1977)...........................................10, 15, 16

*Smith v. YMCA of Montgomery, Inc.,*
  462 F.2d 634 (5th Cir. 1972)................................................ 15

*Terry v. Adams,*
  345 U.S. 461 (1953)........................................................... 10

*West v. Atkins*, 487 U.S. 42 (1988)................................................ 13

v

## INTEREST OF AMICUS CURIAE

The Liberty Justice Center is a nonprofit, nonpartisan public-interest litigation center that seeks to protect economic liberty, private property rights, free speech, and other fundamental rights. The Liberty Justice Center pursues its goals through strategic, precedent-setting litigation to revitalize constitutional restraints on government power and protections for individual rights. *See, e.g. Janus v. AFSCME*, 138 S. Ct. 2448 (2018).

This case interests amicus because constant vigilance is necessary to protect individual liberties from the abuses of government. The district court's decision blurs the line between state and private actors, creating dangerous opportunities for the government to contract away its constitutional obligations by masquerading as a private corporation.

The Liberty Justice Center files this brief pursuant to Rule 29(a) of the Federal Rules of Appellate Procedure, and all parties to the appeal have consented to the filing of this brief. No counsel for any party authored any part of this brief, and no person or entity other than amicus funded its preparation or submission.

1

# INTRODUCTION

*Is it a private company, or three City officials in a trench coat?*

The City of Houston creates various local government corporations to carry out its governmental functions; one such corporation is the Houston Downtown Park Corporation ("Park Corporation") created for the purpose of operating and developing a public park, which exists today as Discovery Green Park ("the Park"). The City of Houston provided most of the $125 million in funding to create the park and in December of 2004, the City conveyed 11 acres of public land to Discovery Green Conservancy ("the Conservancy") requiring that the property be developed as park land and open space. That same day, the Conservancy deeded those same 11 acres to the Park Corporation.

The Conservancy operates Discovery Green Park ("the Park") pursuant to an Operating Agreement with the Park Corporation and has been delegated final rulemaking authority by the City and the Park Corporation. Signs posted in the Park announce that the Park is owned by the Park Corporation and the City of Houston. Notably, the Park is the sole public park in

2

downtown Houston. Many of the security guards employed to patrol the Park, including the two involved in this case, are Houston Police officers.

With the knowledge that parks are one of the most basic traditional public forums, one could be forgiven for thinking that citizens would be free to exercise their First Amendment rights in this Park, just as they would be free to do so in any other public park. But according to the District Court in this case, that would be wrong.

Despite the astounding intensity of the commingling between seemingly private and state actors in the creation and operation of the Park, the District Court has not treated the Park like any other public park. Plaintiffs-Appellants were apprehended and physically removed for exercising their First Amendment rights in the Park, even after showing the off-duty police officers who accosted them evidence that the Park is public property.

The District Court's decision blurs the line between state and private actors, and authorizes the government to delegate rulemaking and enforcement authority to a private entity without ensuring that constitutional rights are upheld.

3

The Conservancy is performing a public function and wielding government power delegated to it by the City, and therefore its actions must be treated as state actions and held to the same constitutional standards as the City of Houston would be. The government "cannot do indirectly what [it] is barred from doing directly." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 190 (2024).

*This is not a private company, the Conservancy is, essentially, three City officials in a trench coat, masquerading as a private company.*

## SUMMARY OF THE ARGUMENT

Houston cannot be permitted to abuse an idiosyncratic corporate structure as a means of relieving itself of its constitutional obligations as a municipality. The Conservancy exercises state power and therefore is a state actor; its identity overlaps with the municipality and the local government, and their functions are hopelessly entwined. The Conservancy is performing a traditional state function, wielding governmental power delegated by Houston, using municipal funds and municipal property, and policed by off-duty officers of the Houston Police Department. As with the company town in

*Marsh v. Alabama*, 326 U.S. 501 (1946), it is the government of this jurisdiction for all substantive and practical purposes, and is therefore a state actor.

If this is not state action, it is a blueprint for any municipality to create a shell corporation to do its bidding without constitutional restraints. If the state-action doctrine means anything at all, Houston's quirks and creative corporate form cannot be used to contract out of its constitutional obligations.

## ARGUMENT

### A. The Conservancy is a state actor because its identity overlaps and is entwined with the City and the Park Corporation.

Formally, the Conservancy is a private entity, but its function is so entwined with the City of Houston in carrying out the governmental function of operating the public park at issue that it can be properly characterized as a state actor. "Conduct that is formally 'private' may become so entwined with governmental policies or so impregnated with a governmental character as to become subject to the constitutional limitations placed upon state action." *Evans v. Newton*, 382 U.S. 296, 299 (1966).

5

Otherwise private action can be fairly characterized as state action based on an assessment of the specific facts. *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 722 (1961) ("Only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance."). The Supreme Court has "identified a host of facts that can bear on the fairness of such an attribution," and has "held that a challenged activity may be state action when it results from the State's exercise of 'coercive power,' when the State provides 'significant encouragement, either overt or covert,' or when a private actor operates as a 'willful participant in joint activity with the State or its agents.'" *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 296 (2001). (internal citations omitted). It has also "treated a nominally private entity as a state actor when it is controlled by an 'agency of the State,' when it has been delegated a public function by the State, when it is 'entwined with governmental policies' or when government is 'entwined in [its] management or control.'" *Id.* (internal citations omitted).

But a Plaintiff need not show facts illustrating that all of these identified potential indications of state action are present for a finding of state action.

6

In analyzing whether the Secondary School Athletic Association was a state actor in *Brentwood*, the Court explained that a lack of coercion or encouragement does not preclude a finding of state action. Instead, "'Coercion' and 'encouragement' are like 'entwinement' in referring to kinds of facts that can justify characterizing an ostensibly private action as public instead. Facts that address any of these criteria are significant, but no one criterion must necessarily be applied." *Id.* at 303. Therefore, when "the relevant facts show pervasive entwinement to the point of largely overlapping identity, the implication of state action is not affected by pointing out that the facts might not loom large under a different test." *Id.* The District Court misapplies this test. Despite Houston's corporate structure and operating arrangements which present the equivalent of the "largely overlapping identity" of the Secondary School Athletic Association in *Brentwood*, the District Court believed that the park policy of removing protesters and the decision to remove these protesters had to be directly encouraged, coerced, or endorsed by the government to qualify as state action. Not so—while coercion, encouragement and endorsement are one way to demonstrate state action, they are not necessary to demonstrate it.

7

Further, the technical designation of the Conservancy as a private corporation is of little importance here. The Supreme Court's cases "are unequivocal in showing that the character of a legal entity is determined neither by its expressly private characterization in statutory law, nor by the failure of the law to acknowledge the entity's inseparability from recognized government officials or agencies." *Brentwood*, 531 U.S. at 296-7; *see Lebron v. National Railroad Passenger Corporation*, 513 U.S. 374 (1995) (holding that Amtrak was a state actor for constitutional purposes, regardless of its designation as private, because it was organized under federal law to attain governmental objectives and was directed and controlled by federal appointees); *Pennsylvania v. Board of Directors of City Trusts of Philadelphia*, 353 U.S. 230 (1957) (per curiam) (holding a privately endowed college to be a state actor because the college's board of directors was a state agency established by state law); *Evans v. Newton*, 382 U.S. at 301 (holding that private trustees to whom a city had transferred a park were state actors, since the park served the public purpose of providing community recreation, and "the municipality remained entwined in [its] management [and] control.").

8

Here, the Park Corporation's Board of Directors is appointed by the Mayor, subject to confirmation by City Council, and these appointed members "must, at the time of their initial appointment to the Board, be members in good standing" of the Conservancy's Board of Directors as well. Compl. ¶¶ 15, 60. This necessarily creates a "largely overlapping identity" between the corporate entities, and their personnel are chosen by the government. This structure is equivalent to the structure that gave rise to state action in *Brentwood*, in which State Board members were assigned ex officio to serve as members of the Association's board of control and legislative council. *Brentwood*, 531 U.S. at 300.

As with the Association in *Brentwood*, the Conservancy's "nominally private character" "is overborne by the pervasive entwinement of public institutions and public officials in its composition and workings, and there is no substantial reason to claim unfairness in applying constitutional standards to it." *Brentwood,* 531 U.S. at 298.

9

**B. The Park Corporation and Conservancy, having been delegated
the traditional exclusive public function of operating a public
park and final rulemaking authority by Houston, qualify as state
actors.**

"[A] private entity may qualify as a state actor when it exercises 'powers
traditionally exclusively reserved to the State.'" *Manhattan Cmty. Access
Corp. v. Halleck*, 587 U.S. 802, 809 (2019). This may occur by delegation or
assumption of governmental powers by private parties. *See Dobyns v. E-
Systems, Inc.*, 667 F.2d 1219, 1223 (5th Cir. 1982). "The range of
governmental activities" falling in this category "is broad and varied." *Evans
v. Newton*, 382 U.S. 296, 300 (1966). Examples of government functions that
qualify as state action include overseeing the governance of a company town,
running elections, fulfilling a peacekeeping role, law enforcement activity
such as searches of lockers and luggage, and administering antipoverty or
welfare programs. *See, e.g., Marsh v. Alabama*, 326 U.S. 501 (1946); *Terry v.
Adams*, 345 U.S.  461 (1953); *Dobyns v. E-Systems, Inc.*, 667 F.2d at 1226;
*Robinson v. Price*, 553 F.2d 918 (5th Cir. 1977).

The operation of a public park is a traditional public function. *See Evans v.
Newton*, 382 U.S. 296, 302 (1966) ("A park, on the other hand, is more like a

10

fire department or police department that traditionally serves the community. Mass recreation through the use of parks is plainly in the public domain"). "Like the streets of the company town in *Marsh v. Alabama,* the elective process of *Terry v. Adams,* and the transit system of *Public Utilities Comm'n v. Pollak,* the predominant character and purpose of this park are municipal. Under the circumstances of this case, we cannot but conclude that the public character of this park requires that it be treated as a public institution" subjected to constitutional requirements. *Evans v. Newton*, 382 U.S. 296, 302 (1966) (cleaned up).

Further, Discovery Green is the only public park in downtown Houston—it is the 'only game in town.' In analyzing the company town in *Marsh*, the Supreme Court noted that "whether a corporation or a municipality owns or possesses the town the public in either case has an identical interest in the functioning of the community in such manner that the channels of communication remain free" and that even a private owner's property rights in the company town cannot "justify the State's permitting a corporation to govern a community of citizens so as to restrict their fundamental liberties." *Marsh v. Alabama*, 326 U.S. at 509. The Court concluded that failing to

11

enforce constitutional guarantees in company towns would deprive the people living in those towns "of the liberties guaranteed by the First and Fourteenth Amendments" because, like our Plaintiffs-Appellants, they would have no alternative public forum available. *Id*. If a privately owned company town, like the one in *Marsh,* is required to respect the First Amendment rights of the public, so too is the Conservancy in its operation of the city's only public park.

And here the operation of the park is not truly private, not only because of the entwinement and overlapping identities, but also because the City of Houston has delegated its final rulemaking authority to the private entity through the operating agreement. Under the District Court's reasoning, the government can contract away First Amendment obligations by delegating authority to a technically private entity to act as a puppet who could then carry out the government's speech-suppressive policies free of and constitutional protection. But, the government "cannot do indirectly what [it] is barred from doing directly." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 190 (2024). Obviously such a loophole would be untenable and this court should not fall for such evasions.

In *West v. Atkins*, the Supreme Court held that contracting out prison medical care to a private entity by delegation did not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, nor did it deprive the State's prisoners of the means to vindicate their Eighth Amendment rights. *West v. Atkins*, 487 U.S. 42, 56 (1988).

The Fifth Circuit considered a similar situation in *Dobyns v. E-Systems*, *Inc.*, 667 F.2d 1219 (5th Cir. 1982), where E-Systems, a private corporation, contracted with the federal government to provide support services for a surveillance system in the Sinai Peninsula. The Court determined that E-Systems was a state actor under two theories: 1) symbiosis, or interdependence, due to the close relationship and overlapping identities between the government and E-Systems; and 2) E-Systems performing a traditional exclusive public function in the role of "peacekeeper," a "broad governmental role" which was delegated to the company by the United States. *Id*. at 1226. The finding of state action was based upon the nature of the duties performed and the interdependent relationship between the contractor and the government, and while the mere existence of a contract between them is insufficient to create state action, when the contract

13

delegates a public function to the private actor then state action is present. *See id*. at 1227 ("Private fulfillment of such a governmental role constitutes state action.") "We cannot close our eyes to the overriding fact that pragmatically E-Systems was the United States Government's operating presence in the Sinai. To find E-Systems to be merely a government contractor would forsake reality." *Id*. at 1228. Another example of state action by a private entity who has been delegated a governmental role is the search of airline "travelers' luggage by private airline employees." *Id*. at 1226. Because the search is carried out "under the authorization of the 1974 Air Transportation Security Act. . . the searches involve state action." *Id*. (citations omitted).

As in those cases, here the City of Houston has delegated its governmental rulemaking authority in the public park to the Conservancy and Park Corporation, making these corporations "pragmatically" the City of Houston's "operating presence" in the public park. In fulfilling this role, the Park Corporation and Conservancy are not simply mere government contractors, but should be recognized as state actors bound to comply with constitutional requirements.

14

**C. The use of public funds and public property by a seemingly private organization qualifies their speech-suppressive activities as state action.**

This Court has repeatedly held that the use of public lands and public funds by a private organization indicates state action through a symbiotic or interdependent relationship. *See Dobyns v. E-Systems, Inc.*, 667 F.3d at 1222 (citing *Burton v. Wilmington Parking Authority*, 365 U.S. 715 (1961) (pointing to public ownership of the land and building, their dedication to public uses, the physical and financial relationship between the Parking Authority and the restaurant, in finding an interdependent relationship between the private and state actor, making the state actor a joint participant in discrimination).

In *Robinson v. Price*, 553 F.2d 918 (5th Cir. 1977), state action was found "through a private organization carrying out a public function" where "the agency spent public funds and had public officials on its board." *Dobyns v. E-Systems, Inc.*, 667 F.2d at 1223. Another informative illustration can be found in *Smith v. YMCA of Montgomery, Inc.*, 462 F.2d 634 (5th Cir. 1972), holding that state action was present in the activities of a non-profit civic recreational organization which utilized city property, derived funds from the city, and

15

conducted city recreational programs. *See Dobyns v. E-Systems, Inc.*, 667 F.2d at 1223.

In *Hammond v. University of Tampa*, 344 F.2d 951 (5th Cir. 1965), "[t]his Court explained that although the University of Tampa is not a state or city university, its establishment was largely made possible by the use of a surplus of city buildings and the use of other city land leased for university purposes. As a result, [the Court] held that the City's involvement in the establishment and maintenance of the university was of such a nature as to require a holding that "state action" was involved in the denial of the plaintiff's rights." *Robinson v. Price*, 553 F.2d at 920.

Likewise, the establishment of the Park at issue in this case "was largely made possible by the use of" nearly $125 million in public funds and over 11 acres of public property provided by the City of Houston. See Compl. ¶¶ 51, 54. Even setting aside the overlapping identity of the Board members and retained government control, the extensive reliance upon and use of public land and public funds indicate a symbiotic and interdependent relationship sufficient to find state action by the Park Corporation and the Conservancy.

16

## CONCLUSION

For the foregoing reasons, this Court should reverse the District Court's dismissal of the case and grant the preliminary injunction.

Dated: February 28, 2025

/s/Reilly Stephens
Reilly Stephens
    *Counsel of Record*
Bridget Conlan
Liberty Justice Center
7500 Rialto Blvd.
Suite 1-250
Austin, TX 78735
(512) 481-4400
rstephens@ljc.org

*Attorneys for Amicus Curiae Liberty Justice Center*

17

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7) because the brief contains 3,082 words, excluding the parts of the brief exempt by Federal Rule of Appellate Procedure 32(f).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word Version 16.62 in 14-point Century Schoolbook font.

s/ Reilly Stephens

*Attorney for amicus curiae Liberty Justice Center*

Date: February 28, 2025

18

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system on February 28, 2024.

All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Dated: February 28, 2025

/s/ Reilly Stephens
Reilly Stephens
LIBERTY JUSTICE CENTER
7500 Rialto Blvd.
Suite 1-250
Austin, TX 78735
rstephens@ljc.org

*Attorney for amicus Liberty Justice Center*

19