No. 24-20485

---

# In the United States Court of Appeals for the Fifth Circuit

---

DARAIUS DUBASH, et al.,

*Plaintiffs-Appellants,*

v.

CITY OF HOUSTON, et al.

*Defendants-Appellees.*

---

**On Appeal from the United States District Court for the Southern District of Texas**

---

**BRIEF OF AMICUS CURIAE
THE CENTER FOR AMERICAN LIBERTY IN SUPPORT OF APPELLANTS**

---

REEVES LAW LLC
John M. Reeves
  *Counsel of Record*
7733 Forsyth Blvd., Suite 1100–#1192
St. Louis, MO 63105
(314) 775-6985
reeves@appealsfirm.com
*Attorney for Amicus Curiae
  The Center for American Liberty*

## SUPPLEMENTAL STATEMENT OF INTERESTED PERSONS

Pursuant to Local Rule 29.2, the Center for American Liberty certifies that—in addition to the entities and persons identified in the certificates of interested persons contained in the brief Appellants and all amicus briefs submitted up to this point—the following persons have an interest in the outcome of this case. These disclosures are made to assist the judges of this Court in evaluating the possibility of disqualification or recusal.

The Center for American Liberty, amicus curiae.

All counsel for the Center for American Liberty listed on this brief.

The Center for American Liberty further declares that it is a non-profit corporation with no parent companies, subsidiaries, or affiliates.

Dated: February 28, 2025 _____*/s/ John M. Reeves*

## TABLE OF CONTENTS

Supplemental Statement of Interested Persons ........................................ 2

Table of Contents ................................................................................. 3

Table of Authorities ............................................................................. 4

Interest of Amicus Curiae ..................................................................... 6

Introduction and Summary of the Argument .......................................... 8

Argument ........................................................................................... 10

    I.   The maintenance of public parks is an inherent government function, and such parks have always, by their very nature, been public forums. ........................................................................ 10

    II. *Halleck* is distinguishable because the operation of public access television channels has not been traditionally performed by the government. ....................................................... 17

    III. Because this case was dismissed at the motion to dismiss stage, this Court must accept as true Appellants' allegation that the park is public in nature. ............................................... 19

Conclusion .......................................................................................... 20

Certificate of Service ........................................................................... 21

Certificate of Compliance ..................................................................... 21

# TABLE OF AUTHORITIES

## Cases

*Adickes v. S. H. Kress & Co.*,
  398 U.S. 144 (1970) ............................................................ 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................ 20

*Blum v. Yaretsky*,
  457 U.S. 991 (1982) ............................................................ 10

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*,
  531 U.S. 288 (2001) ............................................................ 10

*Dennis v. Sparks*,
  449 U.S. 24 (1980) ............................................................. 10

*Evans v. Newton*,
  382 U.S. 296 (1966) ...................................................... 14, 15, 17

*Gilmore v. City of Montgomery*,
  417 U.S. 556 (1974) ............................................................ 15

*Hague v. Committee for Industrial Organization*,
  307 U.S. 496 (1939) ...................................................... passim

*Jackson v. Metro. Edison Co.*,
  419 U.S. 345 (1974) ............................................................ 10

*Janny v. Gamez*,
  8 F.4th 883 (10th Cir. 2021) ................................................. 10

*Lee v. Katz*,
  276 F.3d 550 (9th Cir. 2002) ........................................... 15, 16, 17

*Manhattan Community Access Corporation v. Halleck*,
  587 U.S. 802 (2019) ....................................................... 17, 18

*Marsh v. Alabama.,*
   326 U.S. 501 (1946) ................................................................... passim

*McCullen v. Coakley,*
   573 U.S. 464, (2014) ......................................................................... 19

*Moody v. NetChoice, LLC,*
   603 U.S. 707 (2024) ............................................................................ 6

*Prager Univ. v. Google LLC,*
   951 F.3d 991 (9th Cir. 2020) .......................................................... 18

*Saia v. People of the State of New York,*
   334 U.S. 558 (1948) .................................................... 12, 13, 15, 17

*Villareal v. Alaniz,*
   145 S.Ct. 368 (2024) ......................................................................... 6

*Watchtower Bible and Tract Society of New York, Inc., v. Sagardia De Jesus,*
   634 F.3d 3 (1st Cir. 2011) .............................................................. 16

**Statutes**

42 U.S.C. § 1983 .................................................................................... 16

**Rules**

Fed. R. App. P. 29(a)(2) ........................................................................ 6

Fed. R. App. P. 29(a)(4)(E) ................................................................... 6

Fed. R. Civ. P. 12(b)(6) ....................................................................... 19

### INTEREST OF AMICUS CURIAE[1]

The Center for American Liberty (CAL) is a 501(c)(3) nonprofit law firm dedicated to protecting civil liberties and enforcing constitutional limitations on government power. CAL has represented litigants in courts across the country and has an interest in application of the correct legal standard in First Amendment cases. It has also filed multiple amicus briefs in the Circuit Courts and the Supreme Court of the United States on important First Amendment Issues. *See, e.g., Moody v. NetChoice, LLC*, 603 U.S. 707 (2024) (Brief of Amicus Curiae in Support of Petitioners); *Villareal v. Alaniz*, 145 S.Ct. 368 (2024) (Brief of Amicus Curiae in Support of Petitioner).

Given this background, CAL has an interest in the outcome of this case, where Appellants were denied their First Amendment right to speak at a public park. Incredibly, the district court dismissed Appellants' claim against the Conservancy and its president on the

---

[1] In accordance with Fed. R. App. P. 29(a)(2), all parties have consented to the filing of this brief. Pursuant to Fed. R. App. P. 29(a)(4)(E), no party's counsel authored this brief in whole or in part, and no party, party's counsel, or other person—besides amicus curiae and its counsel—contributed money that was intended to fund preparing or submitting this brief.

ground that they were not engaged in state action in operating a government-owned park. This was error.

CAL submits this brief to give this Court a brief historical overview of how the Supreme Court has always viewed the maintenance of public parks as being a fundamental, essential governmental function. Moreover, such public parks have long inherently served as public forums for the expression of speech. The district court's discarding of these principles cannot be reconciled with Supreme Court precedent. Accordingly, the Court should reverse.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Private entities like the Conservancy and its president cannot escape liability for violating a party's First Amendment rights to free speech and assembly simply because they are not, of themsleves, formally part of a local government. If the facts demonstrate that the private entity is acting as a state actor, then it is just as liable as any other local government entity for violating a party's constitutional rights. A private entity is a state actor when it undertakes a function traditionally reserved exclusively for the govenment.

One of these exclusive governmental functions is the operation of government-owned public parks. Public parks have long played an essential role as public forums in which different individuals and groups can express differing opinions about a wide variety of matters without fear of government reprisal. Nor is that all—their very nature as "public" parks means that, regardless of who may actually operate or manage the land in question, they are held in trust for the public in general. This is an essential and traditionally exclusive governmental function.

Here, Appellants alleged that the park in question was government-owned property reserved for use by the public. Despite these allegations, the district court granted Appellees' motion to dismiss for failure to state a claim on the ground that the operation of a public park is not an essential and traditinally exclusive governmental function. This was error. As explained further below, the Supreme Court has considered the operation and management of public parks to be an essential, exclusive governmental function for over 85 years. The district court erred in concluding otherwise, and this Court should reverse.

ARGUMENT

## I.  The maintenance of public parks is an inherent government function, and such parks have always, by their very nature, been public forums.

The Supreme Court recognizes various "tests" to help determine whether a private individual or entity is a state actor. *See, e.g., Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (significant encouragement); *Dennis v. Sparks*, 449 U.S. 24, 27 (1980) (joint action); *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974) (nexus); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 171 (1970) (compulsion); *Marsh v. Alabama.*, 326 U.S. 501, 507 (1946) (public function). But "each test really gets at the same issue," *Janny v. Gamez*, 8 F.4th 883, 919 (10th Cir. 2021)—namely, whether the offending action is "fairly attributable" to the government, *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Failure to satisfy a "test" does not preclude finding state action so long as the "fairly attributable" standard is met. *Id.* (noting "[w]hat is fairly attributable is a matter of normative judgment, and the criteria lack rigid simplicity").

The operation of a government-owned park that is open to the general public plainly satisfies the public function test.[2] Time and again, the Supreme Court has recognized that public parks, by their very nature, constitute one of the most fundamental types of public forum in our nation for the exchange of differing opinions. In addition, the Supreme Court has repeatedly acknowledged that the operation of such parks is an essential governmental function.

The earliest Supreme Court case to discuss these principles is *Hague v. Committee for Industrial Organization*. In *Hague*, the plaintiffs challenged a municipal law that prohibited the distribution of any type of printed literature in public parks without a permit. 307 U.S. 496, 501–06 (1939). Under the law, permits had been granted to other entities besides the plaintiffs, who were representatives of a labor union. *Id.* In other words, like Appellants here, the plaintiffs were alleging that the municipality was engaged in viewpoint discrimination. The municipality, for its part, insisted that its "ownership of streets and parks is as absolute as one's ownership of [an individual] home, with

---

[2] Appellees' actions here may also satisfy other state action "tests," including but not limited to the joint action and nexus tests. CAL focuses only on the public function test because it is so clearly satisfied.

consequent power altogether to exclude citizens from use thereof . . . [because] the absolute denial of their use to the [plaintiffs] is a valid exercise of the police power." *Id.* at 514.

The Court decisively rejected this argument. It stated, "[w]herever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for . . . communicating thoughts between citizens, and discussing public questions." *Id.* at 515. Such usage, the Court continued, "has, from ancient times, been a part of the privileges, immunities, rights, and liberties of citizens." *Id.* A licensing requirement in such a context could "be made the instrument of arbitrary suppression of free expression of views on national affairs." *Id.* Such "uncontrolled official suppression of [free speech] cannot be made a substitute for the duty to maintain order in connection with the exercise of the right." *Id.* at 516.

The Court's recognition in *Hague* that public parks play an essential role as public forums, and that their regulation is inherently a governmental function, would only become stronger with time. In *Saia v. People of the State of New York*, the Court invalidated an ordinance imposing a licensing requirement upon a prospective speaker who

wished to use a sound amplification system in a public park. 334 U.S.
558, 559 (1948). The licensing system imposed no standards for
granting or denying the license but instead left all discretion in the
matter with the police chief. *Id*. at 560. Nor was the licensing scheme
"narrowly drawn to regulate the hours or places of use of loud-speakers,
or the volume of sound (the decibels) to which they must be adjusted."
*Id*. The licensing ordinance thus had all the "vices" of the one the Court
struck down in *Hague*. *Id*. Several years after *Saia*, the Court
reaffirmed these conclusions. *See Niemotko v. State of Maryland*, 340
U.S. 268 (1951); *Kunz v. People of the State of New York*, 340 U.S. 290
(1951).

The Court's observation in *Hague* that streets and public parks are
inherently "held in trust for the use of the public," regardless of where
"the title of streets and parks may rest," 307 U.S. at 515, foreshadowed
the Court's subsequent explanation of the state action doctrine in
*Marsh v. State of Alabama*. In *Marsh*, the Court held that the First
Amendment applied to streets in a privately-run town just as much as
it did to a traditional government-run municipality. "Whether a
corporation or a municipality owns or possesses the town the public in

either case has an identical interest in the functioning of the community in such manner that the channels of communication remain free." 326 U.S. at 507. Critical to the Court's conclusion was the fact that the privately-run town was, for all practical purposes, indistinguishable from a more traditional form of town. It had public roads, a business center, a sewage system, and a residential area, among other things. *Id.* at 502–03. "In short the town and its shopping district are accessible to and freely used by the public in general and there is nothing to distinguish them from any other town and shopping center except the fact that the title to the property belongs to a private corporation." *Id.* at 503. Having thus assumed essential governmental functions, the private corporation could not "curtail the liberty of [speech]" on property open to the public. *Id.* at 508.

Twenty years after *Marsh*, the Court had occasion to apply the state action doctrine to privately-run public parks in *Evans v. Newton*. There, a municipality resigned from its position as a trustee for a public park, and in its place three private individuals were appointed. 382 U.S. 296, 297–98 (1966). The new trustees wanted to restrict the public park's access to whites only. *See id.* at 297–98. Despite the fact the new

trustees were private actors, the Court held the operation of the park was state action. It was undisputed that the park had been public in nature and that the only change to its operations following the appointment of the new trustees was the desire to exclude non-whites from its facilities. *See id.* at 301. As the Supreme Court held, "when private individuals or groups are endowed by the state with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations." *Id.* at 299. Morevoer, "[a] park . . . is . . . like a fire department or police department that traditionally serves the community. Mass recreation through the use of parks is plainly in the public domain." *Id.* at 302. This made the park's public nature no different from the public nature of the property in *Hague, Saia*, and *Marsh*. As such, the trustees could not discriminate against non-whites. *Id. See also Gilmore v. City of Montgomery*, 417 U.S. 556, 567 (1974) (holding private entity managing city pool engaged in state action).

More recently, the Ninth Circuit faithfully implemented these precedents in the analogous case of *Lee v. Katz*. There, the court held that a private company that operated a government-owned outdoor

commons area was a state actor and thus subject to the First Amendment. 276 F.3d 550, 551, 556–57 (9th Cir. 2002). "The particular public function that the plaintiffs allege the [company] performed was the regulation of free speech within the [c]ommons, a public forum." *Id.* at 555. This "functionally exclusive regulation within the [c]ommons" as a public forum made it a state actor. *Id.* at 556. *See also Watchtower Bible and Tract Society of New York, Inc., v. Sagardia De Jesus*, 634 F.3d 3, 10 (1st Cir. 2011) ("Regulating access to and controlling behavior on public streets and property is a classic government function.").

In short, the operation of a government-owned public park is indisputably a traditional public function—and therefore constitutes state action under 42 U.S.C. § 1983—even when accomplished by a private entity. The district court here erred in concluding otherwise.

II.   **_Halleck_ is distinguishable because the operation of public access television channels has not been traditionally performed by the government.**

The district court concluded that *Manhattan Community Access Corporation v. Halleck*—and not *Hague*, *Saia*, *Evans*, *Marsh*, and *Lee*—applied. This was error.

In *Halleck*, the Supreme Court held that a private entity licensed to conduct TV broadcasting does not become a state actor when, as a condition of its broadcasting license, it opens up its airwaves to the public. 587 U.S. 802, 809 (2019). The Court based this conclusion on the fact that the operation of TV broadcasting airwaves—even those open to the public—has not "traditionally" been an exclusive public function, but rather one that has traditionally been accomplished by private entities. *Id.* at 810–11. And in this unique setting, "when a private entity provides a forum for speech, the private entity is not ordinarily constrained by the First Amendment because the private entity is not a state actor." *Id.* at 812.

*Halleck* is easily distinguishable. Its conclusion flowed from the fact that—by tradition—the operation of public broadcasting channels has never been an exclusive governmental function. Rather, since "public

access channels became a regular feature on cable systems" in the 1970s, they have been operated by "a variety of private and public actors." *Id.* at 810. Because the operation of public access channels "is not an activity that only governmental entities have traditionally performed," the operation of these channels does not constitute state action even though it "creates a forum for speech." *Id.* at 812; *see also Prager Univ. v. Google LLC*, 951 F.3d 991, 999 (9th Cir. 2020) (holding YouTube not a state actor because "hosting speech on a private platform" is not a traditional public function).

Here, by contrast, the operation of government-owned property as a city park has traditionally been a public function. Accordingly, the operation of a city park—unlike the operation of public access channels or a social media website—constitutes state action, even if performed by a private entity. Indeed, far from overruling the bedrock public function cases cited above, *Halleck* cited them with approval. *Id.* at 809–12 (citing *Evans*, 382 U.S. at 300, *Marsh*, 326 U.S. at 505–09, and *Hague*, 307 U.S. at 515–16)).

Moreover, extending *Halleck* to apply to government-owned, public parks and similar government property would seriously undermine the

values the First Amendment seeks to protect. Unlike public access television channels—or even more modern social media outlets— government-owned public parks are a unique place for the free "exchange of ideas." *McCullen v. Coakley*, 573 U.S. 464, 476 (2014). "Even today, they remain one of the few places where a speaker can be confident that he is not simply preaching to the choir." *Id.* "With respect to other means of communication, an individual confronted with an uncomfortable message can always turn the page, change the channel, or leave the Web site." *Id.* "In light of the First Amendment's purpose to preserve an uninhibited marketplace of ideas," *id.* (cleaned up), the Court should not interpret the state action doctrine to allow the government to avoid its constitutional obligations by the simple expedient of delegating the obligation of managing public parks to private actors.

### III. Because this case was dismissed at the motion to dismiss stage, this Court must accept as true Appellants' allegation that the park is public in nature.

This appeal is from a district court's order granting a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Under the applicable legal

standard, the court is required to accept as true all factual allegations in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Here, Appellants' complaint sets forth in detail how the park is not a private operation reserved to a select group of people, but rather a government-owned park, open to all members of the public, that is indistinguishable from other municipal parks. Compl. ¶¶ 2, 15–16, 45–57. As in *Evans*, the fact the park is operated by a private entity is of no moment. Rather, that private entity is performing a traditional public function and, thus, is a state actor.

In short, Appellants have adequately alleged that the park in question is a traditional public forum such that its operation is an exclusive governmental function. For this reason, the district court erred in dismissing Appellants claims under § 1983 against the Conservancy and its president.

## CONCLUSION

This Court should reverse.

Respectfully submitted,

*/s/ John M. Reeves*
John M. Reeves

20

*Counsel of Record*
REEVES LAW LLC
7733 Forsyth Blvd., Suite 1100–#1192
St. Louis, MO 63105
(314) 775-6985
reeves@appealsfirm.com
*Attorney for amicus curiae The Center*
*for American Liberty*

## CERTIFICATE OF SERVICE

I hereby certify that on **February 28, 2025** I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ John M. Reeves*

## CERTIFICATE OF COMPLIANCE

I certify that this brief contains **2,722** words, excluding those parts exempted by Fed. R. App. P. 32(f).

I further that certify this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) as it is written in

proportionally-spaced, 14-point Century font using Microsoft Office Word 2016.

*/s/ John M. Reeves*