No. 24-20485

---

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

DARAIUS DUBASH; FARAZ HARSINI,

*Plaintiffs-Appellants*,

v.

CITY OF HOUSTON; HOUSTON DOWNTOWN PARK
CORPORATION; ROBERT DOUGLAS; VERN WHITWORTH;
DISCOVERY GREEN CONSERVANCY, FORMERLY KNOWN AS
HOUSTON DOWNTOWN PARK CONSERVANCY; BARRY MANDEL,

*Defendants-Appellees.*

---

On Appeal from the United States District Court
For the Southern District of Texas

### AMICUS CURIAE BRIEF OF
### HINDU AMERICAN FOUNDATION
### IN SUPPORT OF PLAINTIFFS-APPELLANTS

---

Needhy Shah
Pennsylvania Bar No. 334522
HINDU AMERICAN FOUNDATION
100 S. Broad St., Suite 1318
Philadelphia, PA 19110
T: 202.223.8222
needhy@hafsite.org

Jennifer S. Freel
Texas Bar No. 24051327
West M. Bakke
Texas Bar No. 24115306
JACKSON WALKER LLP
100 Congress Ave., Suite 1100
Austin, TX 78701
T: 512.236.2319
jfreel@jw.com
wbakke@jw.com

Counsel for Amicus Curiae Hindu American Foundation

## CERTIFICATE OF INTERESTED PARTIES

The undersigned counsel certifies that the following persons indicated have an interest in the outcome of this case. This certification is made in order that the Judges of this Court may evaluate possible disqualification or recusal:

1.  Daraius Dubash, Plaintiff-Appellant

2.  Faraz Harsini, Plaintiff-Appellant

3.  John Greil
    Steven T. Collis
    Law and Religion Clinic
    University of Texas School of Law
    727 E. Dean Keaton St.
    Austin, Texas 78705
    Attorneys for Plaintiffs

4.  JT Morris
    Gabe Walters
    Zach Silver
    Foundation for Individual Rights and Expression
    700 Pennsylvania Ave. SE, Ste. 340
    Washington, D.C. 20003
    Attorneys for Plaintiffs

5.  Sara Berinhout
    Daniel Ortner
    Foundation for Individual Rights and Expression
    510 Walnut St., Ste. 900
    Philadelphia, Pennsylvania 19106
    Attorneys for Plaintiff

6.  City of Houston, Defendant-Appellee

7.  Houston Downtown Park Corporation, Defendant-Appellee

8.  Robert Douglas, Defendant-Appellee

9.  Vern Whitworth, Defendant-Appellee

10. Discovery Green Conservancy, formerly known as Houston Downtown Park Conservancy, Defendant-Appellee

11. Barry Mandel, Defendant-Appellee

12. Andrew S. Holland
    Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
    909 Fannin St., Ste. 3300
    Houston, Texas 77010
    Attorneys for Defendants City of Houston, Texas, Officer Robert Douglas, Officer Vern Whitworth, Discovery Green Conservancy, and Barry Mandel

13. Laura Flores Macom
    Michael H. Wallis
    Langley & Banack, Inc.
    745 E. Mulberry Ave, Ste. 700
    San Antonio, Texas 78212
    Attorneys for Defendant Houston Downtown Park Corporation

14. Hindu American Foundation

15. Jennifer Freel
    Jackson Walker, LLP
    100 Congress, Suite 1100
    Austin, Texas 78701

    West M. Bakke
    Jackson Walker LLP
    1900 Broadway, Suite 1200
    San Antonio, Texas 78215

    Needhy Shah
    Hindu American Foundation

100 S. Broad St., Suite 1318
Philadelphia, PA 19110
Attorneys for Amicus Curiae, Hindu American Foundation

/s/ Jennifer S. Freel
Jennifer S. Freel
COUNSEL FOR AMICUS CURIAE

## TABLE OF CONTENTS

**Page**

Certificate of Interested Parties .................................................................ii

Table of Contents ................................................................................ v

Table of Authorities............................................................................. vi

Interest of Amicus Curiae ..................................................................... 1

Preliminary Statement .......................................................................... 2

Argument............................................................................................. 3

    I.    Showing truthful depictions of factory farming practices that harm animals is a religious act consistent with the Hindu faith............................................. 3

        A.    Dubash's declaration accurately describes his beliefs rooted in the Hindu concept of *ahimsa*. ............. 3

        B.    Dietary choices reflect religious commitment to *ahimsa* for many Hindus. .............................................. 5

    II.    This Court should reverse the dismissal of Dubash's Free Exercise claim (Count 5)............................................. 10

        A.    The actions taken against Dubash—including his arrest and detention—substantially burden the exercise of his Hindu faith. .......................................... 11

        B.    Discovery Green's rules lack general applicability.............................................................. 13

        C.    Discovery Green's rules fail to satisfy strict scrutiny....................................................................... 16

Conclusion ......................................................................................... 18

Certificate of Compliance.................................................................... 19

Certificate of Service ........................................................................... 20

## TABLE OF AUTHORITIES

Page(s)

Cases

*Boos v. Barry,*
 485 U.S. 312 (1988) ............................................................. 16

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,*
 508 U.S. 520 (1993) ............................................................. 15

*Consol. Edison Co. of N.Y. v. Pub. Serv. Comm'n,*
 447 U.S. 530 (1980) ............................................................. 16

*Emp. Div., Dep't of Hum. Res. of Oregon v. Smith,*
 494 U.S. 872 (1990) ............................................................. 13

*F.C.C. v. Pacifica Found.,*
 438 U.S. 726 (1978) ............................................................. 17

*Fulton v. City of Philadelphia,*
 593 U.S. 522 (2021) ................................................... 12, 13, 15

*Kennedy v. Bremerton Sch. Dist.,*
 597 U.S. 507 (2022) ................................................... 11, 14, 15

*McCullen v. Coakley,*
 573 U.S. 464 (2014) ............................................................. 16

*Moussazadeh v. Texas Dep't of Crim. Just.,*
 703 F.3d 781 (5th Cir. 2012) ....................................... 11, 12

*United States v. Marcavage,*
 609 F.3d 264 (3d Cir. 2010) ............................................. 16

*United States v. Stevens,*
 559 U.S. 460 (2010) ............................................................. 16

*Wisconsin v. Yoder,*
 406 U.S. 205 (1972) ..................................................... 11, 15

*World Wide Street Preachers Fellowship v. Town of Columbia*,
245 F. App'x 336 (5th Cir. 2007).........................................16

**Statutes**

42 U.S.C. § 1983 ...........................................................10

**Other Authorities**

Brinda Raval, *Dairy Is Traditionally Sattvic Food, But the
Way We Treat Cows Today Can Be Tamasic*, HINDU AM.
FOUND. (May 24, 2017), https://www.hinduamerican.org
/blog/dairy-is-a-traditionally-sattvic-food-but-the-way-we-
treat-cows-today-can-be-tamasic/ [https://perma.cc/5JBE-
QB7L] .......................................................................6, 7

David James Olsen, *Who's the Most Influential Vegan in
India?* (Apr. 2, 2024), https://www.peta.org/blog/peta-
india-most-influential-vegan-video/ (last visited Feb. 27,
2025)........................................................................8

HINDU AM. FOUND., HAF POLICY BRIEF: HINDUISM AND THE
ETHICAL TREATMENT OF ANIMALS, https://www.
hinduamerican.org/issues/hinduism-and-the-ethical-
treatment-of-animals/ [https://perma.cc/W2MY-PCJH] .................6, 9

Mat McDermott, *4 Things About Hinduism and Vegetarianism*,
HINDU AM. FOUND. (Sept. 29, 2017),
https://www.hinduamerican.org/blog/4-things-about-
hinduism-and-vegetarianism/ [https://perma.cc/UC7K-
QRQL] .......................................................................7

NEHA SAHGAL ET AL., PEW RESEARCH CENTER, RELIGION IN INDIA:
TOLERANCE AND SEGREGATION (June 29, 2021),
https://www.pewresearch.org/religion/2021/06/29/religion-
and-food/ [https://perma.cc/T765-C93S] ...............................7

PRASHANTADVAIT FOUNDATION, *Acharaya Prashant: To Demolish
All That Is False*, https://acharyaprashant.org/en/biography
[https://perma.cc/U77H-943V] ............................................8

vii

Shukavak N. Dasa, SANSKRIT RELIGIONS INST., *A Hindu Primer*, available at https://web.archive.org/web/20110408135457/ http://www.sanskrit.org/www/Hindu%20Primer/nonharming_a himsa.html ............................................................................... 3

## Rules

Fifth Circuit Rule 25.2.1 ............................................................ 20

Fifth Circuit Rule 25.2.13 .......................................................... 20

Fed. R. App. P. 29(b)(5) ............................................................. 19

Fed. R. App. P. 32 ...................................................................... 19

Fed. R. App. P. 32(f) .................................................................. 19

## Constitutional Provisions

U.S. CONST. amend I ....................................................... *passim*

**INTEREST OF AMICUS CURIAE**

The Hindu American Foundation ("HAF") was founded in 2003 to advance the understanding of Hinduism and Hindu Dharma traditions. It seeks to secure the rights and dignity of Hindu Americans now and in the future by providing accurate and engaging educational resources, impactful advocacy to protect and promote religious liberty, and programming that empowers Hindu Americans to sustain their culture and identity. HAF is a 501(c)(3) non-partisan, non-profit and tax-exempt public charity. HAF is a wholly independent, American organization. It has no affiliation with organizations or political parties in the U.S. or abroad.

HAF has an interest in the case because on four separate occasions, the Discovery Green Conservancy prevented Appellant Daraius Dubash from the free exercise of his Hindu faith by prohibiting his free speech in a public forum. The Conservancy ultimately had Dubash arrested for exercising his rights and speech in accordance with his faith. The undersigned counsel prepared the entirety of this brief and does so pro bono. No person or entity has paid for (or will pay for) the preparation of this brief.

## PRELIMINARY STATEMENT

Appellant Daraius Dubash has a religious conviction in *ahimsa* (nonviolence) that prevents him from consuming animal products and compels him to advocate against factory farming practices. (ROA.377–78 ¶ 7; ROA.379 ¶ 15.) When Dubash stood side by side with Appellant Dr. Faraz Harsini showing factory farming practices for passers-by in Discovery Green, for Dubash the advocacy was an expression of his Hindu faith. His spiritual conviction and corresponding speech was unwelcome at the park, and officers arrested him on claims that the speech was "offensive." (ROA.31 ¶¶ 123–24.) Dubash spent sixteen hours in a detention center and is prohibited from future advocacy unless his speech is seen as non-offensive by management of the Discovery Green Conservancy. (ROA.37; ROA.170; ROA.387 ¶¶ 47, 49.)

What is truly "offensive" is the behavior of the Appellees and their complete disregard for Dubash's First Amendment rights. The Hindu American Foundation ("HAF") submits this brief to assist the Court with (1) understanding how Dubash's speech reflects his practice of the Hindu faith and (2) analyzing whether the lower court erred by dismissing Dubash's Free Exercise claim (Count 5).

## ARGUMENT

## I.   Showing truthful depictions of factory farming practices that harm animals is a religious act consistent with the Hindu faith.

### A.   Dubash's declaration accurately describes his beliefs rooted in the Hindu concept of *ahimsa*.

Dubash explained his faith to the trial court in a sworn declaration that expounds on his practice of *ahimsa* (nonviolence), a widespread Hindu belief.[1] In it, he explained that he is a follower of the *Advaita Vedanta* tenet of Hinduism. (ROA.377 ¶ 6.) He explained that a key teaching of *Vedanta* scripture is the concept of *ahimsa*. (ROA.377–78 at ¶ 7.) *Ahimsa* extends nonviolence to all living things, including animals. (ROA.378 ¶ 8.) Dubash explained that his studies and practices in this faith tradition gave him "a deeper religious and spiritual understanding of not eating animal products." (ROA.377 ¶ 6.)

In his declaration, Dubash further explained that Hindu scriptures "have long advocated for a vegetarian diet (no animal flesh, fish, or eggs)" based on *ahimsa*. (ROA.378 ¶ 10.) He believes that practicing *ahimsa*

---

[1] "The word *ahimsa* is derived from the Sanskrit root *hims*, meaning to strike. *Himsa* is injury or harm. *A-himsa* is the opposite of this, non harming or nonviolence." Shukavak N. Dasa, SANSKRIT RELIGIONS INST., *A Hindu Primer*, available at https://web.archive.org/web/20110408135457/http://www.sanskrit.org/www/Hindu%20Primer/nonharming_ahimsa.html.

now requires veganism. (*Id.*) When these scriptures were formed "thousands of years ago, there was no cruel industrialized system of milk production like there is today." (*Id.*) He went on, "So in today's world, veganism is the culmination of the vegetarianism of yesteryears." (*Id.*) Dubash said that with so many milk substitutes on the market, *ahimsa* requires him to avoid milk because factory farming uses "cruel practices such as forced ejaculation of a bull, artificial impregnation of a cow, slaughter of baby male calves, and the eventual slaughter of the cow." (*Id.*)

Dubash said that the *Vedanta* teaches that "each person is compelled to spread the truth to others." (ROA.379 ¶ 15.) "[T]o be silent, or to not make a choice, is itself a choice." (*Id.*) And to *not* share a belief in nonviolence "can itself be violence." (*Id.*) Dubash pointed to the *Srimad Bhagavad Gita*, a sacred Hindu scripture which expounds on the meaning of life and provides a practical spiritual guide on how to live your life righteously, akin to the Bible in Christianity. (ROA.377 ¶ 6; ROA.379 ¶ 15.) There, "Lord Krishna is using all his persuasive powers to exhort a reluctant Arjuna to fight the just war against Arjuna's own

family, because to NOT do so would be sinful and in service of evil." (ROA.379 ¶ 15 (emphasis in original)).

Dubash was inspired by the *Srimad Bhagavad Gita* to speak up against factory farming. (*Id.*) His participation in Anonymous for the Voiceless, the larger organization responsible for the video display in Discovery Green, is a way for him to practice his faith "by promulgating the message of *ahimsa* or not harming animals unnecessarily." (ROA.379–80 ¶ 16.) His activity is the "most effective way" he practices his faith, because it allows him to have personal interactions with people and discuss with them the principles of nonviolence towards animals. (ROA.380 ¶ 17.)

## B.    Dietary choices reflect religious commitment to *ahimsa* for many Hindus.

The vast majority of Hinduism's leading *sampradaya* (religious traditions) regard the ethical treatment of non-human animals as a fundamental application of the Hindu understanding that the Divine exists in all living beings.[2] The *Bhagavata Purana* says, "Deer, camel, donkey, monkey, rats, creeping animals, birds and flies – one should

---

[2] HINDU AM. FOUND., HAF POLICY BRIEF: HINDUISM AND THE ETHICAL TREATMENT OF ANIMALS, https://www.hinduamerican.org/issues/hinduism-and-the-ethical-treatment-of-animals/ [https://perma.cc/W2MY-PCJH].

consider them like one's own children, and not differentiate between one's children and these creatures."[3] Causing unnecessary suffering or pain to another life form has "serious karmic repercussions."[4]

For many Hindus, what they consume is a direct reflection of these religious beliefs. "Our interactions with the environment, living and nonliving, determine our next birth, according to the doctrine of *karma*."[5] And a diet that excludes animal products helps cultivate "*sattva*, a subtle mental impression of goodness, because it minimizes harm to animals and the environment."[6] Hindu scripture supports the spiritual benefits of a vegetarian or vegan diet, as seen in the three passages below:

> "The sins generated by violence curtail the life of the perpetrator. Therefore, even those who are anxious for their own welfare should abstain from meat-eating." — *Mahabharata, Anushasana Parva* 115.33.

> "How can he practice true compassion, who eats the flesh of an animal to fatten his own flesh?" — *Tirukural* 251.

---

[3] *Id.* (quoting *Bhagavata Purana* 7.14.9).

[4] *Id.*

[5] Brinda Raval, *Dairy Is Traditionally Sattvic Food, But the Way We Treat Cows Today Can Be Tamasic*, HINDU AM. FOUND. (May 24, 2017) (italics supplied), https://www.hinduamerican.org/blog/dairy-is-a-traditionally-sattvic-food-but-the-way-we-treat-cows-today-can-be-tamasic/ [https://perma.cc/5JBE-QB7L].

[6] *Id.* (italics supplied).

"Those noble souls who practice meditation and other yogic ways, who are ever careful about all beings, who protect all animals, are the ones who are actually serious about spiritual practices." — *Atharva Veda* 19.48.5.[7]

But Hinduism is also known for its spectrum of religious practices, and this extends to dietary choices. Vegetarianism is not an absolute dictate for all people, and the majority of Hindus are not vegetarians.[8] But many Hindus choose a vegetarian lifestyle as an expression of *ahimsa*.[9] And some Hindus believe veganism is now necessary because the unethical treatment of animals that is endemic to modern day factory farming "violates *ahimsa*."[10]

Hindus are encouraged to grapple with these concepts of *ahimsa* through spiritual learning. That requires direct study with spiritual teachers, self-reflection, discussion with peers, and maturation over

---

[7] *See* Mat McDermott, *4 Things About Hinduism and Vegetarianism*, HINDU AM. FOUND. (Sept. 29, 2017), https://www.hinduamerican.org/blog/4-things-about-hinduism-and-vegetarianism/ [https://perma.cc/UC7K-QRQL].

[8] *See id.*; *accord* NEHA SAHGAL ET AL., PEW RESEARCH CENTER, RELIGION IN INDIA: TOLERANCE AND SEGREGATION 185–87 (June 29, 2021), https://www.pewresearch.org/religion/2021/06/29/religion-and-food/ [https://perma.cc/T765-C93S].

[9] Raval, *supra* note 5.

[10] *Id.* (italics supplied).

time.[11] In his declaration, Dubash explained that he found a spiritual teacher in Acharya Prashant. (ROA.377 ¶ 6.) Acharya Prashant is well-known for his veganism and has produced "160 books on philosophy, spirituality, and all aspects of life."[12] PETA India named him "Most Influential Vegan" in 2022 and spotlighted his work "to spare the lives" of farm animals "exploited by the meat, egg, and dairy industries."[13]

Dubash's link to Acharya Prashant, as his spiritual teacher and guide, is something to be celebrated. Hindu scripture provides: "Know that by long prostration, by question, and service, the wise who have realised the Truth will instruct you in (that) Knowledge."[14] And Acharya Prashant's views on the immorality of factory farming are echoed by other Hindus, including Dubash.

---

[11] "One gains ¼ of the knowledge from the Acharya (the teacher), ¼ from his own self-study and intellect, ¼ from his classmates and the remaining ¼ is gained as a person becomes matured as time passes." Subhashitam – 3.

[12] PRASHANTADVAIT FOUNDATION, *Acharaya Prashant: To Demolish All That Is False*, https://acharyaprashant.org/en/biography [https://perma.cc/U77H-943V].

[13] David James Olsen, *Who's the Most Influential Vegan in India?* (Apr. 2, 2024), https://www.peta.org/blog/peta-india-most-influential-vegan-video/ (last visited Feb. 27, 2025).

[14] *Tad Viddhi Pranipatena* 4.34.

Indeed, in a policy brief, HAF delves into Hinduism and the ethical treatment of animals, identifying factory farming as a "practical and egregious" example of the mistreatment of animals.[15] "It is not only the man who kills the cow at a slaughterhouse who reaps some degree of *karma*, but also those involved in every step of the process, including the final consumers of the meat."[16] It concludes that treating animals "as industrial commodities rather than fellow Divinely imbued living beings, is a deep violation of the principle of *ahimsa*."[17] Consequently, abstention from meat consumption is in line with Hindu teachings of *karma*, *samsara*, and *ahimsa*.[18]

Dubash's actions in Discovery Green align with and reflect his commitment to the Hindu faith. HAF urges the Court to acknowledge that his sincerely held religious beliefs warrant protection under the First Amendment.

---

[15] HAF POLICY BRIEF, *supra* note 2.

[16] *Id.*

[17] *Id.*

[18] *Id.*

II.    **This Court should reverse the dismissal of Dubash's Free Exercise claim (Count 5).**

Officers arrested Dubash and held him in jail for sixteen hours because they deemed it "offensive" that he exercised his religious convictions in Discovery Green by showing videos that truthfully depict factory farming. But the lower court never considered the merits of his Free Exercise claim. The Magistrate Judge's Memorandum and Recommendation—adopted by the district court in its entirety (ROA.1307–08)—recommended dismissal of the Free Exercise claim (Count 5) based on its conclusions concerning (1) whether Dubash's allegations sufficiently alleged that the Conservancy was acting under color of state law (ROA.1226 at n.13), and (2) whether Dubash's policy allegations plausibly supported liability under 42 U.S.C. § 1983 for the City of Houston and the Houston Downtown Park Corporation (ROA.1217–18; ROA.1240). Through the lower court's dismissal on those grounds, it evaded review of Dubash's meritorious Free Exercise claim.

HAF writes to elucidate the reasons why Dubash's Complaint alleges a plausible constitutional violation of his Free Exercise rights.

A. **The actions taken against Dubash—including his arrest and detention—substantially burden the exercise of his Hindu faith.**

The actions taken by the Appellees have imposed a substantial burden on Dubash's religious exercise, in violation of his rights under the Free Exercise Clause of the First Amendment. U.S. CONST. amend I. The repeated removal of Dubash from Discovery Green, his arrest, detention, and the ongoing prohibition on his method of proselytizing constitute significant infringements on his religious practice.

A substantial burden on religious exercise occurs when an individual is forced to choose between following the dictates of his faith and complying with government mandates. *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 525–27 (2022) (holding that suspension of a coach for praying at midfield after football games violated the Free Exercise Clause); *Moussazadeh v. Texas Dep't of Crim. Just.*, 703 F.3d 781, 793 (5th Cir. 2012) (holding First Amendment prevented prison from feeding Jewish inmate non-kosher meals), *as corrected* (Feb. 20, 2013). As established in *Wisconsin v. Yoder*, even minor penalties, such as a five-dollar fine, can constitute a substantial burden if they compel an individual to act contrary to their religious beliefs. 406 U.S. 205, 207–08

(1972) (holding First Amendment prevented government from fining Amish parents who did not send minor children to high school).

As detailed above, Dubash is a follower of the Vedantic stream of Hinduism, which espouses the principle of *ahimsa*, or nonviolence towards all living beings. (ROA.16–17 ¶¶ 22–26.) His religious beliefs compel him to spread this message of nonviolence, which he does through participation in Anonymous for the Voiceless and leading Cubes of Truth demonstrations. (*Id.*) These demonstrations involve displaying videos of animal mistreatment in factory farming and engaging with passers-by who approach them to discuss the content. (ROA.19–21 ¶¶ 32–44.)

By removing Dubash from Discovery Green on multiple occasions, arresting him, and banning his method of promoting *ahimsa*, Appellees have placed a substantial burden on his religious exercise. *See Moussazadeh*, 703 F.3d at 793. Dubash is forced to choose between risking arrest and incarceration or ceasing his religiously motivated advocacy. This choice imposes a significant burden on his ability to practice his faith, as it directly interferes with his religious obligation to promote *ahimsa*. (ROA.48–49 ¶ 240.)

**B.    Discovery Green's rules lack general applicability.**

Governmental restrictions burdening religious exercise are subject to strict scrutiny when they are not generally applicable to activities secular and non-secular alike. *Fulton v. City of Philadelphia*, 593 U.S. 522, 534–35, 537, 540 (2021) (holding non-discrimination requirement in city's foster care contract was not generally applicable where it allowed Commissioner or a designee to make an exception "in his/her sole discretion"). A rule is "not generally applicable if it 'invite[s]' the government to consider the particular reasons for a person's conduct by providing 'a mechanism for individualized exemptions.'" *Id.* at 533 (alteration in original) (quoting *Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 884 (1990)). Nor is a rule generally applicable when it "permit[s] the government to grant exemptions based on the circumstances underlying each application." *Id.* at 534. Put another way, a "generally" applicable rule does not allow for any "individualized" discretion.

Here, the policies and actions of Appellees are the opposite of "generally applicable"; they are based on the freewheeling discretion of Conservancy management on a "case by case" basis. (ROA.30 ¶ 107.) In

Discovery Green, deciding who can speak and who cannot speak is a completely discretionary act.

As detailed in the Complaint, Conservancy staff and Houston police officers repeatedly stated that the decision to remove Dubash from the park was based on the content of his speech and park management's subjective determination of what was deemed "appropriate" as opposed to "offensive" material. (ROA.29 ¶ 98; ROA.30 ¶ 114; ROA.31 ¶ 124.) For instance, the arresting officer explicitly stated that whether Dubash could remain in the park was "up to the management" and whether management "like[d]" the material. (ROA.31 ¶ 124; ROA.33 ¶ 133; ROA.34 ¶ 141.) More tellingly, park management and officers could not identify any complaints they actually received about the videos. (ROA.28 ¶¶ 89–90; ROA.29 ¶ 100; ROA.32 ¶ 129.) This discretionary enforcement of park rules is not generally applicable and, therefore, triggers strict scrutiny.

Appellees' policies also fail the general applicability test because they permit similar secular conduct while disfavoring Dubash's religious practice. The Complaint alleges that the Conservancy has allowed and even endorsed other demonstrations at Discovery Green even when the

14

content of those demonstrations are deemed offensive by some. (ROA.25–26 ¶¶ 68–81); *see also* Opening Br. at 7 (explaining the park has hosted protests and events involving the NRA, the LGBTQ community, and the Black Lives Matter movement). When secular activities are allowed and religious activities are prohibited, a rule is no longer generally applicable and must be reviewed under the strict scrutiny standard. *Kennedy*, 597 U.S. at 526–27; *see also id.* at 526 ("Failing either the neutrality or general applicability test is sufficient to trigger strict scrutiny." (citing *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993))).

This conclusion is not changed by the fact that the rule is not directly targeting a religious practice. "A regulation neutral on its face may, in its application, nonetheless offend the constitutional requirement for governmental neutrality if it unduly burdens the free exercise of religion." *Yoder*, 406 U.S. at 220. In *Yoder*, compulsory school attendance was not directly targeting Amish practices; the law was based on the goal of educating children until the age of 16. *Id.* at 207. The Supreme Court looked beyond this benign intent and held that fining Amish families

under the law amounted to a violation of the Free Exercise Clause. *Id.* at 220–21, 234.

## C. Discovery Green's rules fail to satisfy strict scrutiny.

To satisfy strict scrutiny, a rule must "advance[] 'interests of the highest order'" and be "narrowly tailored to achieve those interests." *Fulton*, 593 U.S. at 541 (quoting *Lukumi*, 508 U.S. at 546). Preventing speech that is of an "offensive character" is not a legitimate government interest, much less a compelling one. *See Consol. Edison Co. of N.Y. v. Pub. Serv. Comm'n*, 447 U.S. 530, 548 (1980) (Stevens, J., concurring); *see also, e.g., United States v. Stevens*, 559 U.S. 460, 468 (2010) (overturning a law forbidding the visual or auditory depiction of animal cruelty); *World Wide Street Preachers Fellowship v. Town of Columbia*, 245 F. App'x 336, 339, 348–49 (5th Cir. 2007) (recognizing that offensive nature of images did not justify suppression of speech of abortion protestors); *United States v. Marcavage*, 609 F.3d 264, 283, 290–91 (3d Cir. 2010) (finding no compelling interest in censoring "vivid depictions of mutilated fetuses" even if "jarring").

The Supreme Court has recognized that in a public forum, citizens may be "confronted with an uncomfortable message." *McCullen v.*

16

*Coakley*, 573 U.S. 464, 476 (2014); *see id.* at 469, 496–97 (overturning statute that banned standing on a public road or sidewalk within 35 feet of any place where abortions were performed). And that part of life in a free country includes tolerating "insulting, and even outrageous, speech" in public forums. *Boos v. Barry*, 485 U.S. 312, 322 (1988); *see id.* at 315, 334 (overturning statute that banned the display of signs within 500 feet of a foreign embassy if signs were critical of the foreign government). "[T]he fact that society may find speech offensive is not a sufficient reason for suppressing it." *F.C.C. v. Pacifica Found.,* 438 U.S. 726, 745 (1978). "Indeed, if it is the speaker's opinion that gives offense, that consequence is a reason for according it constitutional protection." *Id.* "[I]t is a central tenet of the First Amendment that the government must remain neutral in the marketplace of ideas." *Id.* at 745–46.

Appellees' actions, based on "the content of the videos" Dubash displayed, and their perceived "offensive[ness]" or lack of "appropriate[ness]," do not serve a compelling governmental interest. ROA.30 ¶¶ 109–10, 114; ROA.31 ¶ 124. Even if the Defendants could articulate a compelling interest, their actions are not narrowly tailored

to achieve that interest. A complete ban on Dubash's method of advocacy is overly broad and fails to address the specific harms asserted.

## CONCLUSION

The Court should accordingly reverse the dismissal of Dubash's Free Exercise claim.

Respectfully submitted,

*/s/ Jennifer S. Freel*
Jennifer S. Freel
Texas Bar No. 24051327
West M. Bakke
Texas Bar No. 24115306
JACKSON WALKER LLP
100 Congress Ave., Suite 1100
Austin, Texas 78701
[Tel.] (512) 236-2319
[Fax] (512) 236-2002
jfreel@jw.com
wbakke@jw.com

Needhy Shah
Pennsylvania Bar No. 334522
HINDU AMERICAN FOUNDATION
100 S. Broad St., Suite 1318
Philadelphia, PA 19110
T: (202) 223-8222
F: (202) 223-8004
needhy@hafsite.org

COUNSEL FOR AMICUS CURIAE
HINDU AMERICAN FOUNDATION

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32 and 29(b)(5), I hereby certify that this amicus brief contains 3255 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f). This is a computer-generated document created in Word 365, using 14-point typeface for all text, except for footnotes which are in 12-point typeface. In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document.

Dated: February 28, 2025

*/s/ Jennifer S. Freel*
Jennifer S. Freel

## CERTIFICATE OF SERVICE

I certify that on February 28, 2025, a true and correct copy of the foregoing Brief of Amicus Curiae was electronically filed with the United States Court of Appeals for the Fifth Circuit using the CM/ECF system, and that all parties required to be served have been served. Counsel further certifies that (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13 and (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1.

Dated: February 28, 2025

*/s/ Jennifer S. Freel*
Jennifer S. Freel
COUNSEL FOR AMICUS CURIAE