No. 24-20485

---

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

DARAIUS DUBASH; FARAZ HARSINI,

*Plaintiffs-Appellants,*

v.

CITY OF HOUSTON; HOUSTON DOWNTOWN PARK
CORPORATION; ROBERT DOUGLAS; VERN WHITWORTH;
DISCOVERY GREEN CONSERVANCY, FORMERLY KNOWN AS
HOUSTON DOWNTOWN PARK CONSERVANCY; BARRY MANDEL,

*Defendants-Appellees.*

---

On Appeal from the United States District Court
For the Southern District of Texas

---

## BRIEF OF APPELLEES CITY OF HOUSTON; ROBERT
## DOUGLAS; VERN WHITWORTH; DISCOVERY GREEN
## CONSERVANCY; and BARRY MANDEL

---

Andrew S. Holland
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP
909 Fannin Street, Suite 3300
Houston, Texas 77010
Tel: (713) 353-2000
andrew.holland@wilsonelser.com

*Counsel for Defendants-Appellees*
*City of Houston, Robert Douglas,*
*Vern Whitworth, Discovery Green*
*Conservancy, and Barry Mandel*

## **FRAP 26.1 DISCLOSURE STATEMENT**

The Discovery Green Conservancy is a nonprofit corporation with no parent corporation, and no publicly held corporation owns 10% or more of its stock.

## <u>CERTIFICATE OF INTERESTED PARTIES</u>

The undersigned certifies that, to his knowledge, there are no interested parties with an interest in the outcome of this case other than those identified in the Appellants' Certificate of Interested Persons, and those identified in any Certificates of Interested Persons filed on behalf of any *Amici Curiae.*

<u>s/ Andrew S. Holland</u>
Andrew S. Holland

## <u>STATEMENT REQUESTING ORAL ARGUMENT</u>

Pursuant to Fifth Circuit Rule 28.2.3, Defendants-Appellees City of Houston, Robert Douglas, Vern Whitworth, Discovery Green Conservancy, and Barry Mandel, respectfully request that the Court grant oral argument. Plaintiffs and Defendants raise starkly different arguments concerning Plaintiffs' conduct in a public park, and the recognized authority to place reasonable restrictions on such conduct that pass constitutional muster. Because some of these are complex issues, oral argument could assist the Court in considering the parties' arguments.

## <u>TABLE OF CONTENTS</u>

FRAP 26.1 DISCLOSURE STATEMENT ................................................... i

CERTIFICATE OF INTERESTED PARTIES ........................................... ii

STATEMENT REQUESTING ORAL ARGUMENT .............................. iii

TABLE OF CONTENTS ......................................................................... iv

TABLE OF AUTHORITIES .................................................................. vii

STATEMENT OF ISSUES PRESENTED FOR REVIEW ...................... 1

CONCISE STATEMENT OF THE CASE ................................................ 3

SUMMARY OF THE ARGUMENT .......................................................... 6

<u>ARGUMENT</u>
<u>POINT ONE</u>
THE DISTRICT COURT CORRECTLY FOUND THAT THE
CONSERVANCY AND BARRY MANDEL WERE NOT ACTING
UNDER COLOR OF STATE LAW .......................................................... 9

<u>POINT TWO</u>
PLAINTIFFS' COMPLAINT FAILED TO ARTICULATE A
PLAUSIBLE VIEWPOINT- OR CONTENT-BASED
VIOLATION OF THE FIRST AMENDMENT ...................................... 14

A.    <u>Consistent With All Other Circuits That Have Reached
the Issue, This Court Should Hold That Plaintiffs' Damages
Claims Against The Conservancy Fail Because They Do
Not Satisfy</u> <u>*Monell*</u> ......................................................................... 15

B.    <u>Plaintiffs Were Engaged In Unprotected Non-Expressive
Conduct</u> ......................................................................................... 17

C.      Even If the Conduct Was Expressive, The Conservancy
        Imposed Reasonable Time, Place, and Manner Restrictions
        (Responding to Plaintiffs' Point II.A) ............................... 21

D.      Plaintiffs Are Not Subject to an Unconstitutional Prior
        Restraint ............................................................................. 33

E.      Plaintiff Dubash Has Not Stated a Free Exercise
        Violation (Responding to Plaintiffs' Point II.C) ............................ 35

F.      Plaintiffs Failed To Articulate Claims For Damages For
        Direct or Retaliatory First Amendment Violations
        (Responding to Plaintiffs' Point II.D) ............................... 37

G.      The District Court Properly Found That Plaintiff Dubash
        Failed To State a Damages Claim Under the Fourth
        Amendment (Responding to Plaintiffs' Point II.E) ........................ 43

Plaintiffs' Argument As To Belief of Being Under Arrest is
Meritless    ......................................................................... 43

The Officers Had Probable Cause To Arrest Dubash ........................... 45

POINT THREE
THE DISTRICT COURT PROPERLY REJECTED PLAINTIFFS'
CLAIMS AGAINST THE CITY OF HOUSTON .................................... 47

A.      Plaintiffs Did Not Articulate a Failure-To-Train Theory
        Of Liability ........................................................................ 47

B.      Plaintiffs' "Moving Force" Theory Is Meritless
        (Responding to Point III.A.2) ............................................... 51

C.      Plaintiffs' Policymaking Delegation Theory is Meritless
        (Responding to Point III.A.3) ............................................... 52

D.      Plaintiffs' "Ratification" Theory is Meritless
        Responding to Point III.A.4) ............................................... 54

POINT FOUR
THE DISTRICT COURT CORRECTLY HELD THAT
OFFICERS WHITWORTH AND DOUGLAS WERE ENTITLED
TO QUALIFIED IMMUNITY ................................................................... 56

POINT FIVE
IF THE CASE IS REMANDED, PLAINTIFFS ARE NOT
ENTITLED TO PRELIMINARY INJUNCTIVE RELIEF ..................... 64

CONCLUSION .......................................................................................... 70

CERTIFICATE OF SERVICE ................................................................. 71

CERTIFICATE OF COMPLIANCE ....................................................... 72

# TABLE OF AUTHORITIES

## CASES

*Adderly v. Florida,*
    385 U.S. 39 (1966)................................................................. 32

*Adickes v. S.H. Kress & Co.,*
    398 U.S. 144 (1970)............................................................... 11

*Alexander v. United States,*
    509 U.S. 544 (1993)............................................................... 33

*Anderson v. Jackson,*
    556 F.3d 351 (5th Cir. 2009).................................................. 65

*Arbaugh v. Y & H Corp.,*
    546 U.S. 500 (2006)............................................................... 10

*Ashcroft v. al-Kidd,*
    563 U.S. 731 (2011)............................................................... 57

*Bail Project, Inc. v. Comm'r, Ind. Dept. of Ins.,*
    76 F.4th 569 (7th Cir. 2023) ............................................ 17, 67

*Babb v. Dorman,*
    33 F.3d 472 (5th Cir. 1994)................................................... 58

*Bass v. Denney (In re Bass),*
    171 F.3d 1016 (5th Cir. 1999)............................................... 10

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)............................................................... 61

*Bennett v. City of Grand Prairie,*
    883 F.2d 400 (5th Cir. 1989)................................................. 45

*Bennett v. City of Slidell,*
    728 F.2d 762 (5th Cir. 1984)............................................................. 53

*Benson, M.D. v. St. Joseph Regional Health Center,*
    2007 U.S. Dist. LEXIS 99254 (S.D. Tex. Aug. 22, 2007) .................. 25

*Blair v. Bethel Sch. Dist.,*
    608 F.3d 540 (9th Cir. 2010)............................................................. 37

*Bodzin v. Dallas,*
    768 F.2d 722 (5th Cir. 1985)................................................. 46, 59, 60

*Brentwood Acad. V. Tenn. Secondary Sch. Ath. Ass'n,*
    531 U.S. 288 (2001)........................................................................... 11

*Calvi v. Knox County,*
    470 F.3d 422 (1st Cir. 2006) ....................................................... 38, 44

*Church of Lukumi Babalu Aye v. City of Hialeah,*
    508 U.S. 520 (1993)........................................................................... 35

*City of Austin v. Reagan Nat'l Adver. of Austin, LLC,*
    596 U.S. 61 (2022)............................................................................. 24

*City of Canton v. Harris,*
    489 U.S. 378 (1989)........................................................................... 48

*Clark v. Cmty. for Creative Non-Violence,*
    468 U.S. 288 (1984)........................................................................... 22

*Clarkston v. White,*
    943 F.3d 988 (5th Cir. 2019)............................................................. 57

*Connelly v. Comptroller of the Currency,*
    876 F.2d 1209 (5th Cir. 1989)........................................................... 57

*Cunningham v. Castloo,*
    983 F.3d 185 (5th Cir. 2023)............................................................. 56

*Daniel v. Ferguson,*
  839 F.2d 1124 (5th Cir. 1988) ........................................................ 12

*Defreitas v. Montgomery County Corr. Facility,*
  525 Fed.Appx. 170 (3d Cir. 2013) (unpub. op.) ................................ 15

*Deleon v. Nueces County,*
  2023 U.S. App. LEXIS 17523 (5th Cir. Jul. 11, 2023) (unpub. op.) .. 51

*Dennis v. Sparks,*
  449 U.S. 24 (1980) ......................................................................... 11

*DeVargas v. Mason & Hanger-Silas Mason Co.,*
  844 F.2d 714 (10th Cir. 1988) ........................................................ 15

*Doe v. Tyler Indep. Sch. Dist.,*
  15 F.3d 443 (5th Cir. 1994) ............................................................ 50

*Duvall v. Dallas County Tex.,*
  631 F.3d 203 (5th Cir. 2011) .......................................................... 50

*Elliott v. Perez,*
  751 F.2d 1472 (5th Cir. 1985) ........................................................ 52

*Employment Div. v. Smith,*
  494 U.S. 872 (2022) ....................................................................... 35

*Erznoznik v. Jacksonville,*
  422 U.S. 205 (1975) ....................................................................... 31

*Estate of Davis v. City of N. Richland Hills,*
  406 F.3d 375 (5th Cir. 2005) .......................................................... 49

*Evans v. City of Talladega,*
  136 F.Supp.3d 1354 (N.D. Ala. 2015) .............................................. 13

*Flagg Bros., Inc. v. Brooks,*
    436 U.S. 149 (1978)...................................................................13

*Foti v. City of Menlo Park,*
    146 F.3d 629 (9th Cir. 1988)..................................................29

*Fraire v. Arlington,*
    957 F.2d 1268 (5th Cir. 1992)................................................52

*Frye v. Kansas City Missouri Police Dep't,*
    375 F.3d 785 (8th Cir. 2004)....................................28, 29, 30

*Galena v. Leone,*
    638 F.3d 186 (3d Cir. 2011) ...................................................31

*Giannakos v. M/V Bravo Trader,*
    762 F.2d 1297 (5th Cir. 1985)................................................10

*Gilbert v. Donahoe,*
    751 F.3d 303 (5th Cir. 2014) .................................................14

*Hammervold v. Blank,*
    3 F.4th 803 (5th Cir. 2021) ...................................................14

*Harvey v. Harvey,*
    949 F.2d 1127 (11th Cir. 1992)..............................................15

*Heffron v. Int'l Soc'y for Krishna Consciousness,*
    452 U.S. 640 (1981)..........................................................24, 36

*Henderson v. Harris County,*
    51 F.4th 125 (5th Cir. 2022) .................................................48

*Hill v. Colorado,*
    530 U.S. 703 (2000)................................................30, 31, 32

*Hunter v. Bryant,*
    502 U.S. 224 (1991)...............................................................62

*Iskander v. Vil. of Forest Park,*
  690 F.2d 126 (7th Cir. 1982)............................................................ 15

*Jason v. Tanner,*
  938 F.3d 191 (5th Cir. 2019)............................................................ 50

*Jordan v. Brumfield,*
  687 Fed.Appx. 408 (5th Cir. 2017) ................................................. 45

*Keenan v. Tejeda,*
  290 F.3d 252 (5th Cir. 2002)............................................................ 38

*Kennedy v. Bremerton Sch. Dist.,*
  597 U.S. 507 (2022)........................................................................... 35

*Kuba v. Sea World,*
  2009 U.S. Dist. LEXIS 145016 (S.D. Cal. Jun. 5, 2009) .................. 13

*Lichtenstein v. Hargett,*
  83 F.4th 575 (6th Cir. 2023) ............................................................ 28

*Lloyd Corp. v. Tanner,*
  407 U.S. 551 (1972)........................................................................... 61

*Longoria v. San Benito Indep. Consol. Sch. Dist.,*
  942 F.3d 258 (5th Cir. 2019).......................................................56, 57

*Lugar v. Edmonson Oil Co.,*
  457 U.S. 922 (1982)........................................................................... 11

*Lux v. Hansen,*
  886 F.2d 1064 (8th Cir. 1989).......................................................... 15

*Lyons v. National Car Rental Sys.,*
  30 F.3d 240 (1st Cir. 1994) .............................................................. 15

*Mangieri v. Clifton,*
  29 F.3d 1012 (5th Cir. 1994)............................................................ 57

*Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rights Comm'n*,
  584 U.S. 617 (2018)................................................................ 36

*Mastrovincenzo v. City of New York*,
  435 F.3d 78 (2d Cir. 2006) .................................................. 31

*McClendon v. City of Columbia*,
  305 F.3d 314 (5th Cir. 2002).............................................. 58

*McLin v. Twenty-First Jud. Dist.*,
  79 F.4th 411 (5th Cir. 2023) .............................................. 56

*McNeal v. LeBlanc*,
  90 F.4th 425 (5th Cir. 2024) (per curiam)........................ 50

*Mendoza v. Round Rock Indep. Sch. Dist.*,
  854 Fed.Appx. 612 (5th Cir. 2021) (unpub. order)........... 53

*Milestone v. City of Monroe*,
  665 F.3 774 (7th Cir. 2011)........................................... 26, 27

*Mitchell v. Clinkscales*,
  253 Fed.Appx. 339 (5th Cir. 2007) ...................................... 9

*Mitchell v. Forsyth*,
  472 U.S. 511 (1985)............................................................. 62

*Monell v. Department of Soc. Servs.*,
  436 U.S. 658 (1978)............................................................... 8

*Moore v. LaSalle Mgmt. Co.*,
  41 F.4th 493 (5th Cir. 2022) .............................................. 16

*Murphy v. Kellar*,
  950 F.2d 290 (5th Cir. 1992).............................................. 41

*Nat'l Press Photographers Ass'n v. McCraw,*
   84 F.4th 632 (5th Cir. 2023) ........................................................ 21

*Navarette v. California,*
   572 U.S. 393 (2014).................................................................... 44

*Nawara v. Cook County,*
   2025 U.S. App. LEXIS 7523 (7th Cir. Apr. 1, 2025) ....................... 25

*Nieves v. Bartlett,*
   587 U.S. 391 (2019).................................................................... 40

*Nouri v. County of Oakland,*
   615 Fed.Appx. 291 (6th Cir. 2015) (unpub. order) ..................... 50, 51

*Olivas v. Corr. Corp. of Am.,*
   215 Fed.Appx. 332 (5th Cir. 2007) (per curiam) ............................. 16

*Olmer v. City of Lincoln,*
   192 F.3d 1176 (8th Cir. 1999)....................................................... 29

*Pena v. City of Rio Grande City,*
   879 F.3d 613 (5th Cir. 2018)......................................................... 48

*Perry v. Mendoza,*
   83 F.4th 313 (5th Cir. 2023) ......................................................... 59

*Peterson v. City of Fort Worth,*
   588 F.3d 838 (5th Cir. 2009)......................................................... 51

*Polk County v. Dodson,*
   454 U.S. 312 (1981)..................................................................... 48

*Powell v. Shopco Laurel Co.,*
   678 F.2d 504 (4th Cir. 1982)......................................................... 15

*Reed v. Town of Gilbert,*
   576 U.S. 155 (2015)..................................................................... 23

*Reitz v. Woods,*
    85 F.4th 780 (5th Cir. 2023) ............................................................ 57

*Rizzo v. Goode,*
    423 U.S. 362 (1976)............................................................ 38, 41, 44

*Rojas v. Alexander's Dept. Store, Inc.,*
    924 F.2d 406 (2d Cir. 1990) ............................................................ 15

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.,*
    547 U.S. 47 (2006)............................................................ 17, 18, 20

*Saldana v. Garza,*
    684 F.2d 1159 (5th Cir. 1982) ............................................................ 60

*Saucer v. Katz,*
    533 U.S. 194, 200 (2001) ............................................................ 59

*Sentry Ins. v. Morgan,*
    101 F.4th 396 (5th Cir. 2024) ............................................................ 10

*Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.,*
    851 F.3d 530 (5th Cir. 2017)............................................................ 11

*Shadley v. Grimes,*
    405 Fed.Appx. 813 (5th Cir. 2010) (per curiam) ............................... 45

*Smith v. Brookshire Bros., Inc.,*
    519 F.2d 93 (5th Cir. 1975)............................................................ 16

*Sorrell v. IMS Health Inc.,*
    564 U.S. 552 (2011)............................................................ 18

*Street v. Corrections Corp. of America,*
    102 F.3d 810 (6th Cir. 1996)............................................................ 15

*Test Masters Educ. Servs. v. Singh*,
    428 F.3d 559 (5th Cir. 2005)............................................................33

*Texas v. Johnson*,
    491 U.S. 397 (1989)............................................................18

*Thomas v. City of Chattanooga*,
    398 F.3d 426 (6th Cir. 2005)............................................................50, 51

*Thomson v. Mercer*,
    762 F.3d 433 (5th Cir. 2014)............................................................57

*Thompson v. Steele*,
    709 F.2d 381 (5th Cir. 1983)............................................................37, 44

*Tsao v. Desert Palace, Inc.*,
    698 F.3d 1128 (9th Cir. 2012)............................................................15

*Turner Broad. Sys. v. FCC*,
    512 U.S. 622 (1994)............................................................22

*UAW, Local 5285 v. Gaston Festivals*,
    43 F.3d 902 (4th Cir. 1995)............................................................13

*U.S. v. Antone*,
    753 F.2d 1301 (5th Cir. 1985)............................................................58

*U.S. v. Castillo*,
    804 F.3d 361 (5th Cir. 2015)............................................................44

*U.S. v. Garcia*,
    179 F.3d 265 (5th Cir. 1999)............................................................58

*U.S. v. Garza*,
    727 F.3d 436 (5th Cir. 2013)............................................................43

*U.S. v. Grace*,
    416 U.S. 171 (1983)............................................................32

*U.S. v. Marcavage,*
    609 F.3d 264 (3d Cir. 2010) ................................................................ 28

*U.S. v. O'Brien,*
    391 U.S. 367 (1968) ............................................................. 17, 21, 22

*U.S. v. Sanders,*
    994 F.2d 200 (5th Cir. 1993) ........................................................... 44

*Villarreal v. City of Laredo,*
    2024 U.S. App. LEXIS 1533 (5th Cir. Jan. 23, 2024) (en banc) ........ 46

*Vincenti v. Bloomberg,*
    476 F.3d 74 (2d Cir. 2007) ............................................................... 31

*Von Drake v. St. Paul Travelers Ins. Co.,*
    353 Fed.Appx. 901 (5th Cir. 2009) (per curiam) ................................. 9

*Voting for Am., Inc. v. Steen,*
    732 F.3d 382 (5th Cir. 2013) ....................................................... 18, 20

*Ward v. Rock Against Racism,*
    491 U.S. 781 (1989) ........................................................... 22, 31, 33

*Webster v. City of Houston,*
    735 F.2d 838 (5th Cir. 1984) ........................................................... 52

*Williams v. Jaglowski,*
    269 F.3d 778 (7th Cir. 2001) ........................................................... 62

*Zalewska v. County of Sullivan,*
    316 F.3d 314 (2d Cir. 2003) ............................................................ 18

*Zarnow v. City of Wichita Falls Tex.,*
    614 F.3d 161 (5th Cir. 2010) ........................................................... 53

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    Whether Plaintiffs failed to allege that Discovery Green Conservancy was acting under color of state law where it was a private entity managing a public greenspace, and where Plaintiffs failed to plead facts supporting any theory of liability under 42 U.S.C. § 1983.

2.    Whether the Conservancy and Barry Mandel were entitled to prohibit Plaintiffs from publicly displaying silent videos portraying killing of or violence against animals in Discovery Green as a legitimate time, place, and manner restriction when Plaintiffs were otherwise free to speak and express their views without limitation.

3.    Whether Plaintiffs failed to adequately allege that the police officers they sued violated their First or Fourth Amendment rights where those officers were called because Plaintiffs were trespassing.

4.    Whether Plaintiffs' Complaint failed to overcome the police officers' qualified immunity where the officers were entitled to rely on Conservancy employees' belief that Discovery Green was private, and where Plaintiffs' conduct was unprotected under the First Amendment or, at best, involved a complex interpretation of constitutional law.

5.     Whether Plaintiffs' motion for a preliminary injunction was properly denied where the record on the motion demonstrated that Defendants exercised reasonable time, place, and manner restrictions on Plaintiffs' conduct.

## CONCISE STATEMENT OF THE CASE

Discovery Green is a public green space in downtown Houston owned by the Houston Downtown Park Corporation (hereinafter "HDPC"), and managed by The Discovery Green Conservancy (hereinafter "the Conservancy"). (ROA.15, ¶¶ 15, 16). As detailed in the Complaint, Plaintiffs are protestors who sought to display videos in Discovery Green silently depicting mistreatment of animals, including killing chicks and keeping pigs in cramped conditions. (ROA.21, ¶ 39). These videos had no inherent message, and Plaintiffs instead relied upon curiosity of passersby to "inquire what is being depicted. (ROA.21, ¶ 39). The Conservancy ultimately directed them to stop showing those videos because of their violent nature. Multiple exchanges took place during which Plaintiffs were repeatedly told that they could speak their message, but could not use the videos.

According to the video exhibits to the Complaint, Plaintiffs were told the following by Discovery Green and security personnel: "I'm okay with you guys being inside the park. I'm okay with it. As long as you don't have the TVs. If you're not showing anything, I'm okay with it. And if

you're talking about it, that's a different story." (ROA.171-72 [0:16])[1]. They were told they could show the videos outside the perimeter of Discovery Green: "But, if you were standing on the outside of the perimeter, I would be okay with it." (ROA.171-72 [0:41]). When Dubash noted that others were allowed to demonstrate, the security guard explained that those demonstrators had permission to engage in their demonstrations. (ROA.171-72 [2:04]).

Further statements included: "my supervisor said they can stay in the park, and record or talk, but no amplified stuff [and the first guard interjected, "and no TVs"]." (ROA.171-72 [2:09]), "the thing is, it's what it shows, . . . that's the only problem that Discovery Green has." (ROA.171-72, [7:35]), and the contents of the videos, which were "not appropriate for everyone." (ROA.171-72 [7:48]). Plaintiffs were told "we're good . . . if you want to talk with people, but we're not comfortable with the TVs." (ROA.173-74 [0:04]), and later, "listen, if you want to talk with people, we're good with that. We're just not comfortable with the video contents." (ROA.173-74 [3:35]).

---

[1] The references to the Record on Appeal corresponding to the videos refer to the placeholders Plaintiffs placed in the record, which relate to the actual videos submitted with their Complaint.

The day of the arrest, Dubash was once again told, in keeping with the Park Rules and Regulations, "you can stand here, you can talk all day long. But this video, you can't have this." (ROA.175-76 [1:43]). After they refused to leave, the police were called on the basis that Plaintiffs were trespassing. (ROA.175-76 [10:24, 12:33]).

Subsequently, Dubash was arrested for trespass by a police officer who has not been sued, after a prosecutor had confirmed the propriety of the arrest. (ROA.771).

## SUMMARY OF THE ARGUMENT

Plaintiffs' appeal rests upon the same incorrect view of the underlying facts that they advanced in every argument raised before the District Court: that they have been censored, and their speech subjected to viewpoint- and content-based discrimination. This case is not about censored speech. Rather, the Complaint, and the videos attached to it, reveal this not to be true. Furthermore, the evidence the Conservancy submitted in response to Plaintiffs' motion for a preliminary injunction revealed that the Conservancy *encouraged* Plaintiffs to continue to speak their message at Discovery Green, inviting them to participate in an organized Discovery Green event affording them a dedicated place to speak.

In actuality, this case is about Plaintiffs' desire to compel the Conservancy to allow them to show silent videos depicting killing, torture, or other violence against animals in the animal farming industry anywhere they wish within Discovery Green. Plaintiffs are not entitled to use any method they wish just because they consider it to be the most effective way to convey their message.

Plaintiffs' arguments fail for multiple reasons. As for the Conservancy and Barry Mandel ("Mr. Mandel"), Plaintiffs failed to allege a First Amendment violation. First, as the District Court correctly held, Plaintiffs failed to plead that the Conservancy and Mr. Mandel, its then-president, were state actors, having failed to plead joint action with the City, or that they were engaged in an exclusive governmental function. Second, even if those defendants were acting under color of state law, Plaintiffs were engaged in non-expressive conduct, which is afforded no constitutional protection, because the act of showing a silent video of animal cruelty did not inherently contain speech or support Plaintiffs' message.

Third, even if such conduct were expressive, the Conservancy's restrictions were a legitimate time, place, and manner restriction because the video exhibits Plaintiffs attached to their Complaint showed that they were free to either speak without the videos or show their videos elsewhere, and because the Conservancy was protecting children from the graphic videos. Dubash's Free Exercise claim fails for similar reasons. He was not being precluded from proselytizing, but was instead subject to a reasonable restriction on the use of the silent videos.

As for the City, Plaintiffs failed to articulate a theory of recovery consistent with *Monell v. Department of Soc. Servs.*, 436 U.S. 658 (1978), because they failed to show the existence of a custom or policy that was the driving force behind a perceived violation, or that the City had delegated unchecked policymaking authority to the Conservancy such that the City could be liable for the Conservancy's alleged constitutional violations.

The First and Fourth Amendment claims against Officers Douglas and Whitworth were properly dismissed, not only because a different officer effectuated the arrest, but also because Dubash was arrested for criminal trespass, not because the Officers sought to suppress speech. The District Court properly held that the Officers were entitled to qualified immunity. Further, they appropriately relied upon a Conservancy employee's statements that Discovery Green was private, and that, at the very least, the constitutional questions concerning Plaintiffs' conduct are complex. Police officers are not expected to make a decision requiring legal scholarship on a close constitutional issue when effectuating an arrest.

# ARGUMENT

## POINT ONE

### THE DISTRICT COURT CORRECTLY FOUND THAT THE CONSERVANCY AND BARRY MANDEL WERE NOT ACTING UNDER COLOR OF STATE LAW.

Plaintiffs argue that the District Court should not have, *sua sponte*, reached the issue of whether the Conservancy and Mr. Mandel acted under color of state law. Plaintiffs argue both that the court should not have reached the issue without it having been briefed, and that it should have found that the parties acted under color of state law. Plaintiffs' arguments are meritless.

First, the District Court was within its authority to reach the issue despite it not having been briefed by the parties. Where a private party is not a state actor, 42 U.S.C. § 1983 is inapplicable, depriving a federal court of subject matter jurisdiction. *Von Drake v. St. Paul Travelers Ins. Co.*, 353 Fed.Appx. 901, 905 (5th Cir. 2009) (per curiam); *see also Mitchell v. Clinkscales*, 253 Fed.Appx. 339, 340 (5th Cir. 2007). The court therefore not only had the authority to consider the question *sua sponte*, but federal courts bear "the *responsibility* to consider the question of subject matter jurisdiction *sua sponte* and to dismiss any action if such

9

jurisdiction is lacking." *Giannakos v. M/V Bravo Trader*, 762 F.2d 1295, 1297 (5th Cir. 1985) (emphasis added). *See also Bass v. Denney (In re Bass)*, 171 F.3d 1016, 1021 (5th Cir. 1999) ("Federal courts must be assured of their subject matter jurisdiction at all times and may question it sua sponte at any stage of judicial proceedings.").

Plaintiffs next contend that Defendants cannot be heard on this issue now because it was not briefed below. This, too, lacks merit, and ignores the Court's responsibility to ensure it has subject matter jurisdiction. Apart from the fact that Defendants did address the issue below in responding to Plaintiffs' Objections to the Magistrate's Recommendations (ROA.1283-87**)**, Defendants could raise the issue for the first time in this Court. "The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). Thus, "'[a] lack of subject matter jurisdiction . . . may be examined for the first time on appeal.'" *Sentry Ins. v. Morgan*, 101 F.4th 396, 399 (5th Cir. 2024) (quoting *Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*, 851

F.3d 530, 534 [5th Cir. 2017]). Plaintiffs' arguments on this point are meritless.

On the merits, the Court properly found that the Conservancy and Mr. Mandel were not state actors. Plaintiffs' contention that the Conservancy acted "jointly" with the City is meritless. First, Plaintiffs have asserted no facts establishing joint action. To do so, they must assert that the "private actor operates as a 'willful participant in joint activity with the State or its agents.'" *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 296 (2001) (quoting *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 981 [1982]).

Plaintiffs claim that because the Conservancy operates pursuant to an Operating Agreement, and because both the Conservancy and the HDPC participate in adopting rules of conduct, they have alleged a sufficient nexus between the Conservancy's actions and the City. (App. Br. 19). However, the joint conduct prong contemplates private persons being "jointly engaged with state officials in the *challenged action.*" *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 [1970]) (emphasis added). Plaintiffs do not factually allege that the Conservancy or Mr. Mandel have jointly engaged

with the City or the HDPC to do anything whatsoever relevant to this action as it pertains to the claims here.

Plaintiffs also contend that the Conservancy and Mr. Mandel "acted under color of state law when they adopted and enforced—with the aid of city law enforcement—a content- and viewpoint-based speech prohibition in that public park." (App. Br. 21). Yet, as is discussed, *infra*, the named police officers were responding to a trespassing call from the Conservancy, not a request to engage in "speech prohibition." "Police reliance in making an arrest on information given by a private party does not make the private party a state actor." *Daniel v. Ferguson*, 839 F.2d 1124, 1130 (5th Cir. 1988).

Plaintiffs argue next that the Conservancy and Mr. Mandel were carrying out an exclusive public function. However, as the lower court rightly noted, "[v]ery few functions" fall under the category of public functions that the government has "*traditionally and exclusively performed.*" (ROA.1221 (emphasis in original)). Plaintiffs failed to demonstrate that operating Discovery Green fell within the scope of those functions "traditionally and exclusively" performed by the state.

Discovery Green is not just a public park, as is illustrated by the fact that the Complaint reflects multiple events it holds, and that there is a robust Operating Agreement governing its use. As various district courts have observed, providing programming and operational services for a park is not traditionally performed by the government. *See*, *e.g.*, *Evans v. City of Talladega*, 136 F.Supp.3d 1354, 1361-62 (N.D. Ala. 2015) (private entity contracted to operate a city-owned theater was not performing a "function traditionally within the exclusive prerogative of the state."); *Kuba v. Sea World*, 2009 U.S. Dist. LEXIS 145016, *11 (S.D. Cal. Jun. 5, 2009) (Sea World not a state actor because "operation of amusement parks has not in this nation's history been exclusively within the province of the government").

In fact, the Fourth Circuit has observed that "the Supreme Court has expressed doubts that, as a general matter, 'the operation of a park for recreational purposes is an exclusively public function.'" *UAW, Local 5285 v. Gaston Festivals*, 43 F.3d 902, 908 (4th Cir. 1995) (quoting *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 159 n.8 [1978]). Here, the court correctly concluded that Plaintiffs failed to demonstrate that the

Conservancy was engaged in a function traditionally and exclusively performed by the government.

## POINT TWO

### PLAINTIFFS' COMPLAINT FAILED TO ARTICULATE A PLAUSIBLE VIEWPOINT- OR CONTENT-BASED VIOLATION OF THE FIRST AMENDMENT.

Even if the Court finds that the Conservancy and Mr. Mandel were state actors, it should nevertheless affirm dismissal because Plaintiffs' First Amendment claims fail on their merits. This Court "may affirm on any ground supported by the record, including one not reached by the district court." *Hammervold v. Blank*, 3 F.4th 803, 813 (5th Cir. 2021) (quoting *Gilbert v. Donahoe*, 751 F.3d 303, 311 [5th Cir. 2014]). Defendants advanced multiple reasons below why Plaintiffs' constitutional rights were not violated, each of which independently merits dismissal.

**A.** **Consistent With All Other Circuits That Have Reached the Issue, This Court Should Hold That Plaintiffs' Damages Claims Against The Conservancy Fail Because They Do Not Satisfy *Monell*.**

Plaintiffs seek damages from the Conservancy. Yet, they fail to show that the Conservancy was acting pursuant a custom or policy of discrimination. All Circuits that have reached the issue have held that where a plaintiff makes allegations against a private entity under a theory that it was acting under color of state law, the plaintiff must plead and prove the existence of a custom or policy consistent with *Monell*. *See Lyons v. National Car Rental Sys.*, 30 F.3d 240, 246 (1st Cir. 1994); *Rojas v. Alexander's Dept. Store, Inc.*, 924 F.2d 406, 408-09 (2d Cir. 1990); *Defreitas v. Montgomery County Corr. Facility*, 525 Fed.Appx. 170, 176 (3d Cir. 2013) (unpub. op.); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *Street v. Corrections Corp. of America*, 102 F.3d 810, 818 (6th Cir. 1996); *Iskander v. Vil. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982); *Lux v. Hansen*, 886 F.2d 1064, 1067 (8th Cir. 1989); *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012); *DeVargas v. Mason & Hanger-Silas Mason Co.*, 844 F.2d 714, 723 (10th Cir. 1988); *Harvey v. Harvey*, 949 F.2d 1127, 1129-30 (11th Cir. 1992).

As observed in *Moore v. LaSalle Mgmt. Co.*, 41 F.4th 493 (5th Cir. 2022), this Court has "never squarely decided whether plaintiffs can hold *private* defendants vicariously liable under § 1983," and it declined to do so there because the issue was unpreserved. *Moore*, 41 F.4th at 509 (emphasis in original). Here, the issue of Plaintiffs' failure to plead a *Monell* claim against the Conservancy was raised below and is therefore ripe for consideration. (ROA.659-60, 1069).

This very Court has indirectly held consistently with the other Circuits, albeit not via a direct holding. *See Olivas v. Corr. Corp. of Am.*, 215 Fed.Appx. 332, 333 (5th Cir. 2007) (per curiam) (private prison operator sued under section 1983 "may not be held liable on a theory of respondeat superior"); *see also Smith v. Brookshire Bros., Inc.*, 519 F.2d 93, 94 (5th Cir. 1975) (finding that where store manager was accused of fostering detention without probable cause, plaintiffs had to show that the store and police "had a customary plan whose result was the detention in the present case").

Here, there is no dispute that the Conservancy is a private entity. Therefore to proceed in their litigation against it, Plaintiffs had to plead a custom or policy of discrimination. They have not done so. Accordingly,

16

the Conservancy respectfully asks the Court to adopt the precedent from the other Circuits, and hold that the claim fails because Plaintiffs have not pled a custom or policy.

## B.     Plaintiffs Were Engaged In Unprotected Non-Expressive Conduct.

Plaintiffs take it as a foregone conclusion that playing their silent videos was inherently expressive activity. However, silently displaying video footage of purported cruelty to animals, is not expression because it contains no inherent message entitled to protection.

The Supreme Court has afforded First Amendment protection "only to conduct that is inherently expressive." *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 66 (2006). Thus, it has "rejected the view that 'conduct can be labeled "speech" whenever the person engaging in the conduct intends thereby to express an idea.'" *Rumsfeld*, 547 at 65-66 (quoting *U.S. v. O'Brien*, 391 U.S. 367, 376 [1968]).

Conduct will receive no First Amendment protection if it "does not convey a message without the aid of additional speech." *Bail Project, Inc., v. Comm'r, Ind. Dept. of Ins.*, 76 F.4th 569, 575 (7th Cir. 2023). That is, "only conduct that is 'inherently expressive' is entitled to First

Amendment protection." *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 388 (5th Cir. 2013) (quoting *Rumsfeld*, 547 U.S. at 66). Likewise, where conduct has "not a specific, particularized message, but rather a broad statement of cultural values," it is "afforded minimal if any First Amendment protection." *Zalewska v. County of Sullivan*, 316 F.3d 314, 319 (2d Cir. 2003). Further, "the First Amendment does not prevent restrictions directed at . . . conduct from imposing incidental burdens on speech." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011).

This Court has observed that "[t]o determine whether particular conduct possesses sufficient 'communicative elements' to be embraced by the First Amendment, courts look to whether the conduct shows an 'intent to convey a particular message' and whether 'the likelihood was great that the message would be understood by those who viewed it.'" *Id.* (quoting *Texas v. Johnson*, 491 U.S. 397, 404 [1989]). The need for "explanatory speech" to convey the speaker's viewpoint is "strong evidence" that the conduct is not so "inherently expressive" as to be entitled to constitutional protection. *Rumsfeld*, 547 at 66.

By the Complaint's own allegations, Plaintiffs' message is one of opposition to animal cruelty (ROA.15, 16, 17, 19 [¶¶ 12, 13, 22-23, 33]),

not one supporting it. Yet the videos gratuitously depict the very cruelty and violence they claim to oppose. (ROA.19-21 [¶¶ 35, 37, 39]). Plaintiffs further admit that the videos contain nothing inherently supportive of their message. Instead, they claim that the purpose of the videos is to "reveal the hidden treatment of animals." (ROA.20 [¶ 37]). The videos are silent, and those holding them do not speak. (ROA.19 [¶¶ 35, 36]). The videos are not "inherently expressive" simply because they provide a means of drawing an audience. According to the Complaint, it is only after the videos are used to lure an audience that the "Outreach Team" "interacts with interested passersby." (ROA.19 [¶ 34]).

If the goal is to advocate against cruelty to animals, the silent video depiction of such violence before any speech has taken place expressing Plaintiffs' message cannot establish "a great likelihood that their intended message will be understood by those who receive it." *Johnson*, 491 U.S. at 404. Indeed, videos depicting the very actions Plaintiffs claim to oppose is precisely the type of "vague and unfocused" message the Second Circuit found to be unprotected in *Zalewska*. Plaintiffs assert that displaying video of farming practices is "the most effective way to educate the public" about those practices. (App. Br. 29). But just because a person

believes that spreading a message via specific conduct is the most effective way to do so does not render that conduct expressive. As this Court has observed, the Supreme Court "has repeatedly explained that non-expressive conduct does not acquire First Amendment protection whenever it is combined with another activity that involves protected speech." *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 389 (5th Cir. 2013); *see also Rumsfeld*, 547 at 66 ("If combining speech and conduct were enough to create expressive conduct, a regulated party could always transform conduct into 'speech' simply by talking about it.").

The Complaint, itself, undermines any claim that the videos are inherently expressive, asserting that the content of the videos "causes some passersby to inquire what is being depicted." (ROA.21 [¶ 39]). This is a far cry from the presence of an inherent message. Thus, by Plaintiffs' own admissions in their Complaint, and on appeal (App. Br. 9), the videos are not inherently expressive of their viewpoints. This fatally undermines Plaintiffs' entire claim.

**C.    Even If the Conduct Was Expressive, The Conservancy Imposed Reasonable Time, Place, and Manner Restrictions (Responding to Plaintiffs' Point II.A).**

Even if the use of the silent videos could be construed as expressive conduct, the Conservancy was well within its rights to place reasonable restrictions on it. The Supreme Court has made clear that "when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *U.S. v. O'Brien*, 391 U.S. 367, 376 (1968).

Intermediate scrutiny is "the default level of scrutiny applicable to laws . . . which do not directly regulate the content of speech and which 'pose a less substantial risk of excising certain ideas or viewpoints from the public dialogue.'" *Nat'l Press Photographers Ass'n v. McCraw*, 84 F.4th 632, 651 (5th Cir. 2023). Under the intermediate scrutiny rubric, content-neutral action will be sustained if "it furthers an important or substantial governmental interest; if the government interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is

essential to the furtherance of that interest.'" *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 662 (1994) (quoting *O'Brien*, 391 U.S. at 377).

"Government regulation of expressive activity is content neutral so long as it is 'justified without reference to the content of the regulated speech.'" *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (quoting *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 [1984]) (emphasis omitted). Thus, "[a] regulation that serves purposes unrelated to the content of expressing is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Id.*

Requiring Plaintiffs to either cease showing their videos or to move a short distance off the Discovery Green property passes muster under intermediate scrutiny. Discovery Green's directives were content neutral, as were the rules of conduct they were intended to promote. The Rules permitted the Conservancy to prohibit conduct that disrupts (or could reasonably be expected to disrupt) others' use of Discovery Green, and prohibits uses that are not consistent with the purpose for which the location was designed, dedicated or for which a Special Use permit has been granted. (ROA.670, 680, 685, Rules §§ 0.3; 2.1.1; 2.1.44). That is

precisely what the Conservancy was doing, as evidenced by the employee's statements.

Second, the Conservancy was not suppressing speech but, rather, encouraging Plaintiffs to continue their expression without the violent videos. Third, the restriction was narrowly tailored as Plaintiffs could either continue to show their videos on the public sidewalk, or continue their advocacy in Discovery Green without the videos.

Plaintiffs contend that the directives were content-based, and consider the use of videos to inherently constitute protected "speech." This, Plaintiffs contend, subjects Defendants to strict scrutiny. However, this argument demonstrates a misconception of what the First Amendment does and does not protect. "Government regulation of speech is content based if a law applies to particular speech because of *the topic discussed or the idea or message expressed.*" *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (emphasis added).

The Supreme Court has expressly "reject[ed] the view that *any* examination of speech or expression inherently triggers heightened First Amendment concern. Rather, it is regulations that discriminate based on 'the topic discussed or the idea or message expressed' that are content

based." *City of Austin v. Reagan Nat'l Adver. of Austin, LLC*, 596 U.S. 61, 62 (2022) (emphasis in original). "[T]he First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. Int'l Soc'y for Krishna Consciousness*, 452 U.S. 640, 647 (1981).

Defendants were not discriminating against Plaintiffs. They had no quarrel with Plaintiffs' viewpoint or message, and indeed, the videos attached to the Complaint shoed that the Conservancy was allowing Plaintiffs to demonstrate in Discovery Green. Again, the only concern was the graphic imagery being shown in a location frequented by children.

The Conservancy's directives, therefore, did not prohibit Plaintiffs from discussing or describing the industrial practices depicted in their video. For that matter, prohibiting videos depicting killing of animals could equally apply to an individual espousing views *opposite* Plaintiffs' in this case; for instance, if a hunting organization sought to publicly show videos of animals being hunted and killed, it would be subject to the same restriction for the same reason that applied to Plaintiffs. The Conservancy made no determination based upon the message, and

unsurprisingly, the Complaint makes no allegations even suggesting that an organization with opposing views would have been permitted to continue showing videos of animals being killed.

Plaintiffs also insist that the restrictions were not content-neutral because of Discovery Green employee Floyd Willis's and a security guard's use of the word, "content," when describing why the videos were objectionable. Plaintiffs' reliance on this is misplaced because Mr. Willis and the security guard were not discussing "content" in the legal sense. Rather, they were referring to the contents of the video in an audio-visual sense. While the First Amendment analysis considers content neutrality, a layperson's use of the word "content" in a non-legal context is not controlling. *Cf. Nawara v. Cook County*, 2025 U.S. App. LEXIS 7523, *14 (7th Cir. Apr. 1, 2025) ("the colloquial use of a word does not necessarily bind its meaning in a particular statute"); *see also Benson, M.D. v. St. Joseph Regional Health Center*, 2007 U.S. Dist. LEXIS 99254, *11 (S.D.Tex. Aug. 22, 2007) (it is improper "word play" when a plaintiff points to a defendant's colloquial use of a term as proof of whether the defendant also intended for the use to apply to the word as a term of art).

Plaintiffs further contend that the Conservancy's restriction fails scrutiny because it was a subjective determination, and not a rigid application of a specific rule. This claim would place unrealistic limitations on an entity's ability to prevent objectionable conduct that otherwise might not have been considered to be the subject of a rule.

The Seventh Circuit's holding in *Milestone v. City of Monroe*, 665 F.3d 774 (7th Cir. 2011), is instructive. There, the court upheld a code of conduct at a city-owned senior center that required patrons to "treat everyone with respect and courtesy," that prohibited "abusive, vulgar, or demeaning language," and that required patrons to "treat Center personnel with respect." *Milestone*, 665 F.3d at 783. The plaintiff contended that the rules were viewpoint-based because they allowed, in the plaintiff's view, the ejection of "any person who disagrees with the director's decisions." *Id.* The Seventh Circuit disagreed, holding that the defendant's "mission statement and objectives make it clear that the purpose of the Code is completely unrelated to the content of any speaker's message. Rather than focusing on *what* the Center's patrons say, the Code focuses on *the manner* in which they say it. Nothing in the Code provides a basis for punishing patrons for disagreeing with other

visitors or the Center Staff." *Id.* (emphasis in original). *Milestone*'s holding applies here. Like there, Discovery Green was permitted to enforce its Rules that prohibit people from disturbing other patrons' use of Discovery Green.

Plaintiffs' arguments, taken to their logical extension, would allow all manner of objectionable conduct that has no inherent speech component. For instance, their argument would allow them to show those very same videos in the center of a playground. It would further allow a protestor of human rights violations to show silent videos of the torture and murder of humans (even children) in a playground. Case law supports the Conservancy's right to exclude such conduct at Discovery Green, particularly where its Rules are intended to prevent the disruption of others' use of the Park.

The Sixth Circuit recently observed, "[t]he Supreme Court has never applied exacting free-speech scrutiny to laws that bar conduct based on the harm that the conduct causes apart from the message it conveys. . . . That is true even if the ban on conduct imposes 'incidental burdens on speech. . . . And it is true even if the person engaging in the

conduct 'intends thereby to express an idea.'" *Lichtenstein v. Hargett*, 83 F.4th 575, 583 (6th Cir. 2023) (internal citations omitted).

Plaintiffs rely on *U.S. v. Marcavage*, 609 F.3d 264 (3d Cir. 2010), to argue that depictions of mutilated fetuses on a public sidewalk, for instance, are entitled to constitutional protection even if they are "jarring." Their argument fails. *Frye v. Kansas City Missouri Police Dep't*, 375 F.3d 785 (8th Cir. 2004), which involved those very depictions, undermines their argument and supports Defendants' reasonable restrictions here.

Indeed, *Frye* bears marked similarities to this case. In *Frye*, demonstrators placed large signs on the curb of a roadway containing graphic depictions of fetuses. The police fielded numerous complaints from motorists that the signs were upsetting and distracting drivers, nearly resulting in multiple collisions, and upsetting passengers, including children. *Frye*, 375 F.3d at 788. The police ordered the plaintiffs to move the photographs away from the road or, alternatively, stay in the same location as long as they did not display the photographs. *Id.* The plaintiffs refused and were arrested.

The Eighth Circuit held that the officers' directives constituted a reasonable restriction in light of the city's substantial interest in ensuring that drivers are devoting their attention to the driving conditions. *Id.* The court also acknowledged that parents were concerned about their children and held that "a city's interest in protecting very young children from frightening images is constitutionally important; that is, the interest is significant, compelling, and legitimate." *Frye*, 375 F.3d at 791 n.2 (quoting *Olmer v. City of Lincoln*, 192 F.3d 1176, 1180 (8th Cir. 1999).

The court also cited *Foti v. City of Menlo Park*, 146 F.3d 629 (9th Cir. 1988), holding that the First Amendment did not give the plaintiffs "a 'right to dictate the *manner* in which they convey their message within their chosen avenue.'" *Frye*, 375 F.3d at 792 (quoting *Foti*, 146 F.3d at 641) (emphasis in original). Importantly, even though the issue in *Frye* focused on the effects of the "content" of the signs, the court nevertheless found that "the police officers did not impose restrictions based on the content of appellants' message. The lower court noted that the police did not forbid the plaintiffs from expressing their anti-abortion message.

*Frye* applies seamlessly here because the sole reason for the restrictions at issue here was the graphic nature of the video footage. *Frye* also easily dispenses with Plaintiffs' meritless claim that because what was conveyed in a video is at issue, the restrictions are not content-neutral. The court rejected the very same claims there, citing the premise that "[t]he principal inquiry in determining content neutrality . . . is whether the government has adopted a regulation of speech because of disagreement with the message it coveys." *Id.* at 790 (quoting *Hill v. Colorado*, 530 U.S. 703, 719 [2000]). The court aptly concluded that "the police officers narrowly tailored the restrictions to serve a significant governmental interest and left open alternative channels of communicating their message." *Id.* at 790.

Plaintiffs assert that Defendants' offer of alternative avenues of communication is irrelevant here because, they claim, the underlying restriction on their videos was "content-based." (App. Br. 27-28). Yet, they ignore the fact that the "content" of their speech in the constitutional context was not the subject of any restriction.

Plaintiffs also insist that showing their videos is the "most effective way" to convey their views. (App. Br. 29). The First Amendment,

however, does not guarantee demonstrators "the most effective means of communication" of their message. *Galena v. Leone*, 638 F.3d 186, 204 (3d Cir. 2011). Thus, "alternative channels of expression . . . need not 'be perfect substitutes for those channels denied to plaintiffs.'" *Vincenty v. Bloomberg*, 476 F.3d 74, 88 (2d Cir. 2007) (quoting *Mastrovincenzo v. City of New York*, 435 F.3d 78, 101 [2d Cir. 2006]). The channels of expression permitted will be adequate if they "leave open sufficient alternative avenues of communication to minimize the 'effect on the quantity or content of the expression." *Vincenty*, 476 F.3d at 88 (quoting *Ward*, 491 U.S. at 791).

In the end, the restrictions here related to conduct that was intended to make passersby uncomfortable. The Supreme Court has explained that "'it may not be the content of the speech, as much as the deliberate verbal or visual assault that justifies proscription.'" *Hill v. Colorado*, 530 U.S. 703, 716 (2000) (quoting *Erznoznik v. Jacksonville*, 422 U.S. 205, 210-11 n.6 [1975]). Likewise, the Supreme Court "has regularly rejected the assertion that people who wish to 'propagandize protests or views have a constitutional right to do so whenever and

however and wherever they please.'" *U.S. v. Grace*, 416 U.S. 171, 177-78 (1983) (quoting *Adderley v. Florida*, 385 U.S. 39, 47-48 [1966]).

The Supreme Court has "never held, or suggested, that it is improper to look at the content of an oral or written statement in order to determine whether the rule of law applies to a course of conduct." *Hill*, 530 U.S. at 721. Insofar as Plaintiffs believe that they had the unfettered right to play their video wherever they wish, with the Conservancy being powerless to determine where such conduct would be appropriate, their believe is undermined by clear precedent.

**D.    Plaintiffs Are Not Subject to an Unconstitutional Prior Restraint.**

Plaintiffs claim that they are subject to a prior restraint of their First Amendment rights because the Conservancy has "prohibited Plaintiffs from communicating their message going forward in the way they and other activists have found most effective." (App. Br. 33). However, framing their claim in the context of an unconstitutional prior restraint, as opposed to the main argument that their rights were infringed, does not change the analysis.

"Prior restraints are 'administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur.'" *Test Masters Educ. Servs. v. Singh*, 428 F.3d 559, 579 (5th Cir. 2005) (quoting *Alexander v. United States*, 509 U.S. 544, 550 [1993]). "The relevant question is whether the challenged regulation authorizes suppression of speech in advance of its expression." *Ward v. Rock Against Racism*, 491 U.S. 781, 798 (1989).

For the reasons discussed, there was no prior restraint because Plaintiffs have not been subject to any rule or policy prohibiting them from speaking. Rather, they were advised that playing a particular video graphically depicting violence toward animals was not permitted.

Plaintiffs' claim of prior restraint is disingenuous insofar as the only action touching on future conduct was communication that occurred between Plaintiffs' counsel and Defendants by which Plaintiffs sought to persuade Defendants that their conduct was constitutional.

Here, Plaintiffs were told only that playing a specific video was not allowed. This is no different from being told that any other objectionable conduct would not be tolerated in the future. Therefore, Defendants did not impose a prior restraint on speech.

**E.** **Plaintiff Dubash Has Not Stated a Free Exercise Violation (Responding to Plaintiffs' Point II.C).**

Dubash claims that prohibiting him from showing videos violated his right to proselytize in accordance with his faith. He further argues that the Conservancy "penalized" him for engaging in his "right to peacefully proselytize in a public park." (App. Br. 37, 38). This contention is disingenuous in light of the fact that Dubash never asserted his religious views, or otherwise suggested that he was acting in accordance with any such belief during any of his encounters.

A plaintiff will not state a Free Exercise claim if the policy at issue is a "neutral and generally applicable rule." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 526 (2022). Such a policy is not neutral if it is "specifically directed at religious practice." *Id.* quoting *Employment Div. v. Smith*, 494 U.S. 872, 878 (1990) (internal ellipsis omitted). "A policy can fail this test if it 'discriminates on its face,' or if a religious exercise is otherwise its 'object.'" *Id.* quoting *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 533 (1993) (internal edits omitted). Similarly, a government action will run afoul of the Free Exercise Clause if it purports to "impose regulations that are hostile to the religious beliefs of affected citizens and cannot act in a manner that passes judgment upon or

presupposes the illegitimacy of religious beliefs and practices." *Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rights Comm'n*, 584 U.S. 617, 638 (2018).

The Complaint pled no facts suggesting that the Conservancy even knew of Dubash's religion at the time of the demonstrations. Plaintiffs put forth no basis supporting a Free Exercise claim other than the Complaint's allegation that Dubash feels that his religion compels him to encourage the public to be kind to animals.

In the Free Exercise context, as with free speech principles, "the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v Int'l Soc. for Krishna Consciousness*, 452 U.S. 640, 647 (1981). The Conservancy reasonably restricted conduct, while leaving Dubash free to proselytize about his faith.

**F.** **Plaintiffs Failed To Articulate Claims For Damages for Direct or Retaliatory First Amendment Violations (Responding to Plaintiffs' Point II.D).**

Plaintiffs' Fourth Cause of Action for damages was properly dismissed. Initially, the entirety of this claim, much like Plaintiffs' other causes of action, rested entirely on the premise that the Conservancy's time, place, and manner restrictions were unreasonable. As discussed throughout, that threshold claim fails. Therefore, there is no basis to allow a damages claim to proceed.

Plaintiffs cannot plead a claim against the Officers on behalf of Harsini because he was not arrested. *See*, *e.g.*, *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 544 (9th Cir. 2010) ("minor indignity" and "de minimis deprivations" based on one's speech do not amount to a First Amendment claim). The balance of this cause of action also fails on its merits. As an initial point, neither named Officer was involved in Dubash's arrest. Rather, it was a different officer, Officer Minh Ta, who made the arrest. Defendants submitted an Offense Report prepared by Officer Ta (ROA.767-774), of which the District Court appropriately took judicial notice. "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir.

1983) (citing *Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976). Without alleging that Whitworth or Douglas was responsible for the arrest, Dubash fails to state a claim.

Dubash makes *no* allegations whatsoever against Officer Whitworth other than that he was present at the time of the arrest. The only factual allegation is that Officer Douglas placed Dubash under arrest. (ROA.34, ¶ 142). An officer's "mere presence at the scene, without more, does not by some mysterious alchemy render him legally responsible under section 1983 for the actions of a fellow officer." *Calvi v. Knox County*, 470 F.3d 422, 428 (1st Cir. 2006). Officer Whitworth was therefore properly dismissed from the suit.

The claim also fails on the merits, regardless of the Officers' individual involvement. To plead First Amendment retaliation, a plaintiff must allege engagement in constitutionally protected activity, that the defendants cause him to discontinue engaging in that activity, and that "the defendant's adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected activity." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).

Because Plaintiffs' First Amendment rights were not violated, there can be no retaliation because the first *Keenan* prong is not satisfied. As is discussed, *infra*, the District Court properly held that Officers Whitworth and Douglas are entitled to qualified immunity. In any event, the Complaint fails to demonstrate a retaliation claim. The facts pled, and the exhibits discussed above, make it clear that Plaintiffs were told they could continue their protected speech at Discovery Green. Nowhere do they claim that the Officers or Mr. Mandel was motivated by any desire to retaliate. Thus, there is simply no claim that they were being discriminated against for doing so.

Plaintiffs contend that they possess a direct First Amendment claim for damages (apart from retaliation), but this claim also fails. Plaintiffs cite to no authority supporting their entitlement to damages in this context, but suffice it to say, their failure to articulate a First Amendment violation as discussed at length undermines any claim that they are entitled to damages for such a violation.

As for the Officers, Dubash's retaliation claim is barred because the Officers had probable cause to arrest him for trespassing. "The presence of probable cause should generally defeat a First Amendment retaliatory

arrest claim." *Nieves v. Bartlett*, 587 U.S. 391, 393 (2019). *Nieves* recognized only a "narrow qualification" to that rule "for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Id.* at 406. Plaintiffs do not allege that a trespass violation is the time of claim that officers "typically exercise their discretion" not to enforce. In any event, Dubash must establish a "causal connection" between Defendants' "retaliatory animus" and his "subsequent injury." *Id.* at 398 (citation omitted). "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury." *Id.* (emphasis in original). Courts do not reach the causation analysis described above unless the plaintiff establishes an absence of probable cause. *Id.*

Here, the Officers repeatedly instructed Dubash to leave because he was trespassing, not because they disliked his videos. Plaintiffs bore the burden of pleading with *facts* that they were retaliated against because of their speech. Instead, they relied on nothing more than supposition and their own self-serving insistence that they had the First Amendment right to continue to publicly show the violent videos in Discovery Green.

Plaintiffs insist that the Officers "singled out Mr. Dubash for arrest apart from others whose protests and advocacy involve controversial topics at Discovery Green." (App. Br. 42-43). Again, Plaintiffs' *topic* is not at issue. Plaintiffs' argument, taken to its logical ends, would suggest that any individual could engage in any conduct so desired so long as that individual can claim that it is connected to his speech. As discussed above, copious case law belies this premise, as the Supreme Court has clearly held that conduct does not become protected speech merely because a participant intends it to convey a message.

Moreover, the officers were not alleged to have been involved in the November 13, 2021, April 16, 2022, or June 18, 2022, encounters with park employees and park security. As discussed, personal involvement must be alleged in order to articulate a civil rights claim. *See Thompson*, 709 F.2d at 382. A plaintiff must therefore specify the personal involvement of *each* defendant in a section 1983 proceeding and "cannot make generalized allegations, nor can he support a claim based on any vicarious liability theory." *See Murphy v. Kellar*, 950 F.2d 290, 292 n.7 (5th Cir. 1992) (citing *Rizzo*, 423 U.S. at 371-72). Thus, those encounters cannot support a claim against the Officers.

41

Lastly, any claims against the Conservancy and Mr. Mandel for damages must be dismissed because there were no First Amendment violations. In addition to the argument asserted above that Plaintiffs have not properly pled a *Monell* claim against the Conservancy, the absence of a violation will necessarily undercut any claim for damages.

## G.     The District Court Properly Found That Plaintiff Dubash Failed To State a Damages Claim Under the Fourth Amendment (Responding to Plaintiffs' Point II.E).

Plaintiffs contend that the District Court erred when it dismissed Dubash's cause of action for damages under the Fourth Amendment. (App. Br. 43). Plaintiffs' arguments fail.

## Plaintiffs' Argument As to Belief of Being Under Arrest is Meritless

Dubash contends that the District Court incorrectly found that Officer Douglas had not arrested him. However, the facts bear out precisely what the court here found. At best, Officer Douglas temporarily detained Dubash before Officer Ta effectuated an arrest, and given the statements made by Conservancy employees, there is no question that Officer Douglas had sufficient basis for a temporary detention. A temporary detention "must be justified by reasonable suspicion that criminal activity has taken or is currently taking place." *United States v. Garza*, 727 F.3d 436, 440 (5th Cir. 2013). "Although a mere hunch does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for

probable cause." *United States v. Castillo*, 804 F.3d 361, 364 (5th Cir. 2015) (quoting *Navarette v. California*, 572 U.S. 393, 397 [2014]).

Dubash contends that he was "arrested" by Officer Douglas because he was not "free to go" and was handcuffed. (App. Br. 44-45). However, "using some force on a suspect, pointing a weapon at a suspect, ordering a suspect to lie on the ground, and handcuffing a suspect—whether singly or in combination do not automatically convert an investigatory detention into an arrest requiring probable cause." *United States v. Sanders*, 994 F.2d 200, 206 (5th Cir. 1993). Here, the actual arrest was effectuated by Officer Ta, an individual Plaintiffs have not sued.

Dubash also claims that Officer Whitworth had an obligation to intervene. However, the only factual allegation is that Officer Douglas placed Dubash under arrest. (ROA.34, ¶ 142). An officer's "mere presence at the scene, without more, does not by some mysterious alchemy render him legally responsible under section 1983 for the actions of a fellow officer." *Calvi v. Knox County*, 470 F.3d 422, 428 (1st Cir. 2006). "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) (citing *Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976). Plaintiffs put forth no facts

suggesting that Officer Whitworth had any involvement in arresting Dubash, or that he had an obligation to become involved.

## The Officers Had Probable Cause To Arrest Dubash.

Regardless of whether Dubash knew he was under arrest, his claim is baseless because the Officers had probable cause to arrest him for trespassing. Plaintiffs contend that the Officers lacked probable cause because they relied upon their mistaken belief that Discovery Green is a private park. This claim is meritless. "An officer may rely on a statement by a witness to supply probable cause." *Cf. Bennett v. City of Grand Prairie*, 883 F.2d 400, 405-06 (5th Cir. 1989) (concluding that probable cause for a warrant can be found based on hearsay, information from informants, or circumstantial evidence if the affiant believes or appropriately accepts the information as true); *Shadley v. Grimes*, 405 Fed. Appx. 813, 815 (5th Cir. 2010) (per curiam) (stating that an officer had probable cause when "nothing in [the witness's] demeanor, appearance, or account caused [the officer] to believe or suspect that [the witness] was wrong or lying"). *See also Jordan v. Brumfield*, 687 Fed. Appx. 408, 413 (5th Cir. 2017). This Court recently reaffirmed that "[p]robable cause to arrest 'is not a high bar.' . . . It 'requires only a

probability or substantial chance of criminal activity, not an actual showing of such activity.'" *Villarreal v. City of Laredo*, 2024 U.S. App. LEXIS 1533, *13 (5th Cir. Jan. 23, 2024) (en banc).

Here, the Officers were called to Discovery Green because Plaintiffs would not leave when asked to do so, not because the Officers decided that Plaintiffs were engaged in disagreeable speech. As discussed, *infra*, in response to Plaintiffs' qualified immunity arguments, *Bodzin v. Dallas*, 768 F.2d 722 (5th Cir. 1985), supports a finding of probable cause here because by relying on the Conservancy's statement that Dubash had been asked to leave and did not do so, the Officers "had probable cause to believe that [Dubash] had committed all the elements of criminal trespass in their presence." *Bodzin*, 768 F.2d at 724.

## POINT THREE

## THE DISTRICT COURT PROPERLY REJECTED PLAINTIFFS' CLAIMS AGAINST THE CITY OF HOUSTON.

Plaintiffs next allege that they adequately pled a *Monell*-based theory of recovery against the City of Houston for two reasons: first, that the City failed to adequately train Conservancy employees and "local law enforcement" about the "First Amendment's applicability in Discovery Green", and second, that the City ratified "multiple policies and practices that were the 'moving force' behind" constitutional violations. (App. Br. 48). Each theory is devoid of merit.

## A. Plaintiffs Did Not Articulate a Failure-To-Train Theory of Liability.

Plaintiffs assert that the City of Houston failed to adequately train Conservancy employees about First Amendment protections. This claim is devoid of merit. To show liability on a failure-to-train theory, Plaintiffs must articulate that "(1) the city failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Henderson v. Harris County*, 51

F.4th 125, 130 (5th Cir. 2022). "Because the standard for municipal liability is a stringent one, a pattern of similar constitutional violations by untrained employees is ordinarily required to show deliberate indifference." *Pena v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018).

Plaintiffs' failure-to-train arguments are easily dispensed with. In *City of Canton v. Harris*, 489 U.S. 378 (1989), the Supreme Court held that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Harris*, 489 U.S. at 388. The Court explicitly held that that rule was "most consistent with [the Court's] admonition in *Monell*, and *Polk County v. Dodson*, 454 U.S. 312, 326 (1981), that a municipality can be liable under § 1983 only where its policies are the 'moving force behind the constitutional violation.' Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* at 388-89.

As this Court has explained:

> 'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.' 'For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' Deliberate indifference requires a showing of more than negligence or even gross negligence. "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity.' 'To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is 'obvious and obviously likely to result in a constitutional violation.'

*Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (internal citations and brackets omitted).

None of the factors identified in *Davis* is even remotely pled here. First, Plaintiffs allege no pattern of violations. To the contrary, Plaintiffs admit that Discovery Green promotes, not stifles, free expression. Second, there is no "obvious likel[ihood]" that the failure to train would result in an effort to prevent park users, including their children, from being exposed to violent videos while permitting Plaintiffs to express their same message through other means. Third, even if training could have prevented the purported violation, Plaintiffs do not allege facts

demonstrating that there was "more than negligence or even gross negligence."

Plaintiffs criticize the District Court for holding that they cannot establish a pattern "by relying only on facts that give rise to the Complaint here." (App. Br. 51). Yet, the Sixth Circuit, for instance, has observed that the pattern that constitutes the policy must involve individuals other than the plaintiff. *See Nouri v. County of Oakland*, 615 Fed.Appx. 291, 296 (6th Cir. 2015) (unpub. order) (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 432-33 (6th Cir. 2005) ("we have never found notice of a pattern of misconduct (or the pattern itself) solely from the mistreatment of the plaintiff. . . . To do so risks 'collapsing the municipal liability standard into a simple *respondeat superior* standard.'" Internal citation and ellipsis omitted]).[2]

---

[2] Plaintiffs cite three cases that they contend support their theory that "multiple incidents of a defendant's alleged violations" can give rise to a pattern. (App. Br. 52). None of their authorities, however, supports the premise that a single plaintiff's multiple experiences can constitute a pattern. *See McNeal v. LeBlanc*, 90 F.4th 425, 432 (5th Cir. 2024) (per curiam) (report detailed over-detention of other individuals prior to plaintiff's claim); *Duvall v. Dallas County Tex.*, 631 F.3d 203, 207-08 (5th Cir. 2011) (county housed detainee under inhumane conditions despite that county "knew of the conditions complained of, yet continued to house inmates in those conditions); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 457 (5th Cir. 1994) (school employee had pattern of misconduct with "freshman girls, including" the plaintiff). *Compare with Jason v. Tanner*, 938 F.3d 191, 198 (5th Cir. 2019) (under Supreme Court precedent there "needed to be a pattern of *previous* violations." [emphasis added]).

Likewise, Plaintiffs' suggestion that the failure to train created an "obvious" risk of constitutional violations is speculative, with Plaintiffs having cited to no violations beyond their own meritless claims.

## B.    Plaintiffs' "Moving Force" Theory Is Meritless (Responding to Point III.A.2).

Plaintiffs next assert that there was an "'official policy' of granting unfettered discretion to the Conservancy" without any guidance, which was the "moving force" behind the alleged violation of their rights. (App. Br. 52). This claim is baseless. To succeed on a "moving force" theory, Plaintiffs must show either a written statement or "widespread practices that are so common and well settled as to constitute customs that fairly represent municipal policy." *Deleon v. Nueces County*, 2023 U.S. App. LEXIS 17523, *3 (5th Cir. Jul. 11, 2023) (unpub. op.) (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 [5th Cir. 2009]). As discussed above, there is ample precedent for the notion that the policy must involve individuals other than the plaintiffs. *See Nouri*, 615 Fed.Appx. at 296 (quoting *Thomas*, 398 F.3d at 432-33).

Plaintiffs do not even attempt to articulate a genuine policy of First Amendment violation. Again, the allegations in their Complaint convey the opposite. Plaintiffs attempting to allege a *Monell* claim must "plead

'specific facts, not merely conclusory allegations.'" *Fraire v. Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992) (quoting *Elliott v. Perez*, 751 F.2d 1472, 1479 [5th Cir. 1985]). This Court has referred to this as a "heightened pleading requirement" that "applies to allegations of municipal custom or policy." *Id.* Plaintiffs' unsubstantiated accusations fall woefully short of the pleading standard applicable to their claim.

## C.   Plaintiffs' Policymaking Delegation Theory is Meritless (Responding to Point III.A.3).

Plaintiffs argue that the City is liable under *Monell* because it purportedly delegated "final policymaking authority to the Conservancy." (App. Br. 54). Yet, Plaintiffs still fail to identify a municipal policy such that the City can be liable under *Monell*. Even the authority on which Plaintiffs rely, *Webster v. City of Houston*, 735 F.2d 838 (5th Cir. 1984), recognizes that demonstrating an official policy requires either a specific rule or a persistent, widespread practice of constitutional rights deprivations. *See Webster*, 735 F.2d at 841. Plaintiffs are also wrong on the law. A policymaker "takes the place of the governing body in a designated area of city administration." *Id.* "A city's governing body may delegate policymaking authority (1) by express statement or formal action or (2) 'it may, by its conduct or practice, encourage or acknowledge

the agent in a policymaking role.'" *Zarnow v. City of Wichita Falls Tex.*,
614 F.3d 161, 167 (5th Cir. 2010) (quoting *Bennett v. City of Slidell*, 728
F.2d 762, 769 [5th Cir. 1984]).

Here, there have been no allegations satisfying the criteria
articulated in *Zarnow* and *Bennett*. The City has not expressly delegated
the authority to make decisions of city administration to the
Conservancy, and nor ha it "encourage[d] or acknowledge[d]" that the
Conservancy has some unchecked ability to violate constitutional rights.
To the contrary, the Conservancy is a private entity that manages
Discovery Green pursuant to a set of regulations promulgated by the
Houston Downtown Park Corporation, which the Conservancy is
obligated to administer in accordance with state and federal law.
Plaintiffs have failed to articulate a claim that the Conservancy is a
policymaker. They certainly fail to allege that there was any policy of
discrimination sufficient to subject the City to *Monell* liability.

**D.    Plaintiffs' "Ratification" Theory Is Meritless (Responding to Point III.A.4).**

Plaintiffs make the irrational claim that the City Council and Mayor have ratified the Conservancy's "censorship" of Plaintiffs by "standing behind" the decision (App. Br. 58). This allegation is conclusory and makes no logical sense. It also lends no support to Plaintiffs' *Monell* theory in the slightest.  Plaintiffs do not plead that the City Council or Mayor even knew about their interactions with Discovery Green employees. Plaintiffs, once again, argue that the City "delegated" authority to the Conservancy, which should permit *Monell* liability against the City, but this does not show ratification for all of the reasons discussed.

Plaintiffs' ratification claim likewise flies in the face of the Complaint's assertions that Discovery Green had a practice of *facilitating and encouraging* robust demonstration and protest. That is, the Complaint affirmatively alleges that Discovery Green welcomes demonstrators of disparate viewpoints, and lists a variety of those demonstrations it has hosted, agreeing that it "has long served as a locus of protest on matters of public concern for the Houston area," (ROA.25-26, ¶¶ 68-77, 80). Plaintiffs even admit that the City, its Mayor, and its

Police Department have been supportive of demonstrators, have set up protest zones, and have never interfered with speakers, even in the face of outside objections to the "content of their speech." (ROA.25-26, ¶¶ 73, 76, 77, 81).

Plaintiffs contend, somehow, that because they were told not to play violent videos, the very same Defendants with a tradition of hosting public debate are subject to *Monell* liability because of a custom or policy of discrimination just as to Plaintiffs. This claim is confounding and baseless. Even if the City somehow had oversight authority, the Complaint pleads no facts in support of Plaintiffs' claim. Plaintiffs misconstrue what a "policy" is for purposes of *Monell* liability. They claim that the offending "policy" at issue here is permitting the Conservancy to maintain rules without providing appropriate criteria to prevent infringement of the First Amendment. (Pl. Opp., p. 14). However, the policy must be one directly related to the violation in question, not just a benign policy of operation. *See, e.g.*, *Mendoza v. Round Rock Indep. Sch. Dist.*, 854 Fed.Appx. 612, 613 (5th Cir. 2021) (unpub. order)(plaintiff failed to allege that school board "had an official policy of violating students' rights . . . ."). From any angle, Plaintiffs' claims fail.

## POINT FOUR

## THE DISTRICT COURT CORRECTLY HELD THAT OFFICERS WHITWORTH AND DOUGLAS WERE ENTITLED TO QUALIFIED IMMUNITY.

Plaintiffs have sued two police officers who were called to handle a call about trespassers in Discovery Green. The District Court rightly held that they were entitled to qualified immunity. "Qualified immunity shields government officials from civil liability in their individual capacity so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *McLin v. Twenty-First Jud. Dist.*, 79 F.4th 411, 418 (5th Cir. 2023) (quoting *Cunningham v. Castloo*, 983 F.3d 185, 190 [5th Cir. 2020]). "It protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Cunningham*, 983 F.3d at 190).

"When a defendant asserts a qualified-immunity defense in a motion to dismiss, the court has an obligation to carefully scrutinize the complaint before subjecting public officials to the burdens of broad-reaching discovery." *Longoria v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 263-64 (5th Cir. 2019). "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts

showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731 [2011]). "Ultimately, the central concern is whether the official has fair warning that his conduct violates a constitutional rights." *Id.* (quoting *Clarkston v. White*, 943 F.3d 988, 993 [5th Cir. 2019]).

However, "[a] plaintiff does not overcome qualified immunity by merely alleging 'that a violation has arguably occurred.'" *Thomson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014) (quoting *Connelly v. Comptroller of the Currency*, 876 F.2d 1209, 1212 [5th Cir. 1989]). Rather, "'[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments.'" *Id.* (quoting *al-Kidd*, 563 U.S. at 743). This applies to determinations of whether a police officer has probable cause to make an arrest. The Court must determine if an officer "could have reasonably thought his actions were lawful, as 'police officers who "reasonably but mistakenly conclude that probable cause is present" are entitled to qualified immunity.'" *Reitz v. Woods*, 85 F.4th 780, 792 (5th Cir. 2023) (quoting *Mangieri v. Clifton*, 29 F.3d 1012, 1017 [5th Cir. 1994]) (internal edits and citation omitted). "To survive a motion to

dismiss in cases where the qualified immunity defense is raised, a plaintiff must state facts, which if proven, would defeat the defense." *Babb v. Dorman*, 33 F.3d 472, 475 n.5 (5th Cir. 1994).

Likewise, "[t]he probable cause issue must be analyzed under the 'totality of the circumstances' as to whether there is a 'fair probability' that a crime occurred." *U.S. v. Garcia*, 179 F.3d 265, 269 (5th Cir. 1999) (quoting *U.S. v. Antone*, 753 F.2d 1301, 1304 [5th Cir. 1985]). "In short, the requisite 'fair probability' is something more than a bare suspicion, but need not reach the fifty percent mark.'" *Id.*

The Officers were unquestionably entitled to qualified immunity. First, as discussed, the Officers were not involved in Dubash's arrest, thereby negating any theory that they violated Dubash's rights. Moreover, Plaintiffs' underlying allegations are deficient on their merits for multiple reasons, as discussed above. That is, Plaintiffs have failed to articulate that their rights under the First Amendment have been violated. Thus, Plaintiffs fail the first prong of the qualified immunity analysis, which is "'whether a constitutional right would have been violated on the facts alleged.'" *McClendon v. City of Columbia*, 305 F.3d

314, 322-23 (5th Cir. 2002) (quoting *Saucer v. Katz*, 533 U.S. 194, 200 (2001).

Second, the Complaint fails the objective unreasonableness standard. Plaintiffs misconstrue why Dubash was arrested. Officer Ta was not making a decision to arrest because he disliked Dubash's speech. Rather, he arrested him for trespassing. (ROA.32, ¶ 127). Officer Ta had probable cause to arrest Dubash because "the manager [Barry Mandel, via Floyd Willis] told them that [Dubash] was on [Discovery Green] property, had been asked to leave, and had not done so." *See Bodzin v. Dallas*, 768 F.2d 722, 724 (5th Cir. 1985). Moreover, the Offense report prepared by Officer Ta reflects that he contacted the District Attorney's Office, who "accepted" the trespass charge, further supporting qualified immunity here (ROA.771). *See Perry v. Mendoza*, 83 F.4th 313, 318 (5th Cir. 2023) (fact that prosecutor advised before arrest should be considered in determining officer's entitlement to qualified immunity).

Plaintiffs argue that the Officers should have known better, since Plaintiffs believe they were being asked to leave because of their speech. However, the Officers were within their rights to rely on statements by Discovery Green that it was a private park and that Plaintiffs were

refusing an order to leave. *Bodzin* is instructive. There, this Court found that two arresting officers were entitled to qualified immunity where a property manager claimed that property on which the plaintiff was standing was private, whereas it was actually public property. *Bodzin*, 768 F.2d at 724. The plaintiff had claimed that the arresting officers could not reasonably accuse him of trespassing "without first ascertaining the location of the property line from official sources, and thus did not have probably cause to believe that he was on private property." *Id.* at 725.

The Court "decline[d] to engraft such a universal insistence upon the essentially ad hoc inquiry into probable cause," and afforded the officers qualified immunity. *Id.* In reaching its holding, the Court relied upon *Saldana v. Garza*, 684 F.2d 1159 (5th Cir. 1982), where the Court affirmed a qualified immunity defense where the plaintiff claimed he was arrested for public intoxication while standing in his own driveway. The court held that the Officers "cannot be held to a title-searcher's knowledge of metes and bounds or a legal scholar's expertise in constitutional law." *Id.* at 1165.

Here, if Discovery Green were private property, Plaintiffs would ostensibly have no First Amendment rights, and could be ejected even if, *arguendo*, the rationale was that Discovery Green disapproved of their "speech." *See Lloyd Corp. v. Tanner*, 407 U.S. 551, 569 (1972). However, as discussed above, no matter how self-evident and all-encompassing Plaintiffs claim their rights to be, the actual question here would have required the Officers to have an awareness of the legal status of property *and* possess "a legal scholar's expertise in constitutional law."

The Complaint surmises that the Officers "understood" both that Discovery Green is a "public park," and that the "sole basis" for Dubash's arrest was the "content of his speech." (ROA.52, ¶¶ 261-62). These allegations are conclusory, and are inconsistent with the Complaint's allegations that the officers were told the property was private, and that the sole reason for Dubash's arrest was his refusal to leave after being asked multiple times by management to stop playing the videos. Thus, these allegations are nothing more than "labels and conclusions," insufficient to meet pleading standards. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Lastly, even if Plaintiffs had satisfactorily pled a First Amendment violation on the part of any of the defendants, such violations were hardly contrary to "clearly established" law. *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). Plaintiffs' right to show violent videos in Discovery Green was *not* clearly established as illustrated by the complex framework of First Amendment analysis required to defeat each of the defenses. That is, in order to overcome dismissal, Plaintiffs must show that Discovery Green is a traditional public forum, that Plaintiffs' conduct was more than non-expressive conduct, that restricting their right to display violent videos was not a legitimate time, place, and manner restriction, that the restriction was not a narrowly tailored means of advancing a compelling governmental interest, and that Plaintiffs were being discriminated against based on their viewpoint. However, "[p]olice officers are not required to be legal scholars." *Williams v. Jaglowski*, 269 F.3d 778, 783 (7th Cir. 2001). The analysis is whether the officers "acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed" later. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991).

Supreme Court precedent justifies reasonable restrictions on conduct, even where it might arguably have components of speech. There is no precedent (and Plaintiffs have identified none) suggesting that an entity is not entitled to impose reasonable restrictions on conduct that a person might subjectively believe to be a necessary part of his speech. For these reasons, Officers Douglas and Whitworth are unambiguous entitled to qualified immunity.

**POINT FIVE**

**IF THE CASE IS REMANDED, PLAINTIFFS ARE NOT ENTITLED TO PRELIMINARY INJUNCTIVE RELIEF.**

Even if the Court were to disagree and to remand to District Court, Plaintiffs are not entitled to preliminary injunctive relief because the evidence Defendants put forth demonstrate that there was a legitimate reason why Plaintiffs were instructed to stop showing their video. Specifically, the Conservancy submitted Declarations from its current President and an employee reflecting that Discovery Green is not just an ordinary park but, rather, offers activity programming, art installations, dance and theatrical performances, and other similar activities. Further, the declarations showed that Plaintiffs were offered ample alternative opportunities to speak their message.

Initially, Plaintiffs failed, in the first instance, to put forth evidence satisfying their initial burden because they failed to put the video in question before the District Court. As is discussed above, the analysis of whether the Conservancy imposed reasonable restrictions on Plaintiffs' conduct turns on the nature of Plaintiffs' conduct. Without providing the video, it was impossible for the District Court to make that

determination.[3] *See Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009) (injunctive relief "should only be granted when the movant has clearly carried the burden of persuasion").

Yet, even if Plaintiffs could meet their burden without putting their actual conduct before the court, the evidence in the motion record demonstrates the weakness in Plaintiffs' case. Plaintiffs submitted declarations supporting Defendants' argument that the conduct was not expressive because it contains no inherent message. Plaintiffs admitted as much in their motion. Plaintiff Dubash states that the videos "portray images from a documentary film titled *Dominion* that shows behind-the-scenes footage of industrial meat production." (ROA.381, ¶ 21). The purpose of the videos was for people to "see the cramped conditions where the animals live, the callous ways in which they are handled, and the inability of the animals to protect themselves." (ROA.381, ¶ 22). Plaintiff

---

[3] Plaintiffs contended below, and they do here, that the video consisted of "footage" taken from a "documentary." (App. Br. 9). This does not aid the analysis in the slightest. Initially, the link they provide ultimately redirects the viewer to a Youtube link which, interestingly enough, requires the viewer to sign in because "[t]his video may be inappropriate for some users." Youtube.com/watch?v=LQRAfJyEsko (last visited April 15, 2025). Regardless, the film is a 120-minute-long documentary. Plaintiffs do not claim that they played the entire video. Rather, they plainly took excerpts. Presumably, there are aspects of the movie that are benign, whereas Plaintiffs undoubtedly selected the most graphic portions they could find for their demonstrations.

Harsini admits that his objective is for the videos to foment "uneasiness and discomfort" by showing videos that play "uncomfortable truth." (ROA.397-98, ¶ 27).  The demonstrators hold "small televisions to show silent film clips of the poor treatment of animals all over the world while the 'Outreach team' members stand aside and wait to be approached by those passing by" who show interest. (ROA.380, ¶ 19).

Only once an individual "show[s] interest or approach[es] the Cube of Truth" does Dubash ask, "'How does this make you feel?' or 'Do you want to know what we're doing here?'" (ROA.382, ¶ 23). These admissions fatally undermine Plaintiffs' case. The fact that Plaintiffs must ask people whether they want to know "what we're doing here" strikingly cuts against any conceivable theory that the videos, themselves, are expressive. The Supreme Court is clear that conduct which requires further explanation is not subject to *any* First Amendment protection. Here, the underlying conduct is intended solely to draw an audience, and only those who show interest hear Plaintiffs actual speech. Plaintiffs' actions are therefore the very essence of conduct that "does not convey a message without the aid of additional speech." *See Bail Project, Inc. v. Comm'r, Ind. Dept. of Ins.*, 76 F.4th 569, 575 (7th Cir. 2023).

The Conservancy's evidence further undermined Plaintiffs' arguments. First, the Conservancy submitted evidence showing that Discovery Green should not be treated as a traditional public forum but, rather, was a limited public forum because of the stated reasons for its existence. Second, its employees made clear to Plaintiffs that they would be given wide berth to speak on their topic without limitations. One employee even invited Plaintiffs to participate in Discovery Green's Earth Day festivities, which would afford them an audience and a dedicated platform from which to speak, with the only condition being that they could not play the videos showing killing of animals. Plaintiffs declined this offer.

As discussed above, the Complaint facially lacks allegations demonstrating any viewpoint- or content-based discrimination or violation of their rights under the First Amendment. However, even if their allegations satisfied pleading standards, the evidence submitted on the motion for a preliminary injunction demonstrates that Plaintiffs' claim will fail on the merits.

The evidence the Conservancy submitted in opposition to Plaintiffs' motion made plain that its restrictions upon Plaintiffs were in

furtherance its efforts to protect children from scary, graphic videos, an interest that courts have found is a legitimate government interest for purposes of intermediate scrutiny analysis as discussed, supra. *See, e.g., Olmer*, 192 F.3d at 1180. For instance, current Conservancy President stated that the Discovery Green Rules are intended to provide a "safe, enriching space where families, including children of all ages, can enjoy the playgrounds, amenities, and events that are available, in a manner that is appropriate for children. (ROA.510, ¶ 7). She further stated that Discovery Green does not decide who can speak there based on what they are saying but that, "[r]egardless of the message, viewpoints, or causes that drive any demonstration, or the identity of the people or organizations intending to do so, Discovery Green will not allow public broadcasting of videos displaying violence or death. This would include killing or torturing animals." (ROA.511, ¶¶ 11-12).

Conservancy employee Brian Wilmer stated that Plaintiffs and their fellow protestors would select locations frequented by families with children to set up their demonstration, "making it impossible to pass them without walking off the promenade." (ROA.517 ¶¶ 10, 11). Employee Floyd Willis stated that he had told the Plaintiffs on multiple

occasions that they could speak freely but for their videos, and he encouraged them to participate in Discovery Green's Earth Day events. (ROA.522, ¶ 9).

Simply put, the evidence before the District Court reflected that Plaintiffs were subject to content-neutral, appropriate time, place, and manner restrictions. Accordingly, Plaintiffs were not entitled to injunctive relief.

## <u>CONCLUSION</u>

Defendants City of Houston, Officer Douglas, Officer Whitworth, the Discovery Green Conservancy, and Barry Mandel respectfully request that the Court affirm the District Court's Judgment in all respects, and uphold the dismissal of this case against them.

Respectfully submitted,

<u>s/ Andrew S. Holland</u>
**Andrew S. Holland**
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
909 Fannin St., Suite 3300
Houston, TX 77010
713-353-2000 tel
713-785-7780 fax
andrew.holland@wilsonelser.com

*Counsel for Defendants City of Houston, Texas, Officer Robert Douglas (# 7943), Officer Vern Whitworth (# 7595), Discovery Green Conservancy, and Barry Mandel*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 23, 2025, this Brief of Appellees City of Houston, Robert Douglas, Vern Whitworth, Discovery Green Conservancy, and Barry Mandel, was electronically filed using CM/ECF, and that all parties were therefore served electronically with this Brief.

<u>s/ Andrew S. Holland</u>
Andrew S. Holland

## **CERTIFICATE OF COMPLIANCE**

I certify that this Appellees' Brief contains 12,964 words, as counted by the word count function in Microsoft Word, including footnotes and excluding those portions of the Brief not included in the word count in accordance with Rule 32(f); and that it was prepared in the 14-point Century Schoolbook proportionally spaced typeface, with footnotes in 12-point Century Schoolbook typeface.

s/ Andrew S. Holland
Andrew S. Holland
