No. 24-20485

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

DARAIUS DUBASH; FARAZ HARSINI,

*Plaintiffs-Appellants,*

v.

CITY OF HOUSTON; HOUSTON DOWNTOWN PARK CORPORATION; ROBERT DOUGLAS; VERN WHITWORTH; DISCOVERY GREEN CONSERVANCY, FORMERLY KNOWN AS HOUSTON DOWNTOWN PARK CONSERVANCY; BARRY MANDEL,

*Defendants-Appellees.*

## REPLY BRIEF OF APPELLANTS
## DARAIUS DUBASH AND DR. FARAZ HARSINI

On Appeal from the United States District Court for the Southern District of Texas, Houston Division, Civil Action 4:23-cv-03556 Honorable Andrew S. Hanen Presiding

Sara Berinhout
FOUNDATION FOR INDIVIDUAL
RIGHTS & EXPRESSION (FIRE)
510 Walnut St., Ste. 900
Philadelphia, PA 19106
(215) 717-3473
sara.berinhout@thefire.org

John Greil
Steven T. Collis
Law & Religion Clinic
University of Texas School of Law
727 East Dean Keeton St.
Austin, TX 78705
(512) 471-5151
john.greil@law.utexas.edu
steven.collis@law.utexas.edu

(Additional counsel listed on next page)

JT Morris
FOUNDATION FOR INDIVIDUAL
RIGHTS & EXPRESSION (FIRE)
700 Pennsylvania Ave. SE, Ste. 340
Washington, DC 20003
(215) 717-3473
jt.morris@thefire.org

*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ii

INTRODUCTION ........................................................................... 1

ARGUMENT .................................................................................. 2

   I.    The First Amendment Protects Plaintiffs' Advocacy in a Public Park. ........................................ 2

   II.   Defendants Have Imposed a Content-Based Speech Restriction That Cannot Overcome Strict Scrutiny. ........................................................................ 6

   III.  Defendants' Speech Prohibition Is Also an Unlawful Prior Restraint. ............................................ 12

   IV.   Mr. Dubash's Advocacy Is Also Protected Religious Expression. ......................................................... 14

   V.    Plaintiffs' Pleadings Establish the Conservancy and Mr. Mandel Acted Under Color of State Law and Finding Otherwise Would Create a Circuit Split. ............................................................................. 17

   VI.   The City and Its Park Corporation Must Uphold Constitutional Rights in Their Public Park. ......................... 20

   VII.  Plaintiffs Have Satisfied Their *Monell* Burden at the Pleadings Stage. ............................................. 23

   VIII. Plaintiffs Have Stated Damages Claims for First and Fourth Amendment Violations. ...................................... 26

   IX.   Plaintiffs Have Shown They Are Entitled to Preliminary Injunctive Relief. ................................. 32

CONCLUSION ........................................................................ 34

i

# TABLE OF AUTHORITIES

## Cases

*Bevill v. Fletcher,*
26 F.4th 270 (5th Cir. 2022) .......................................................... 14, 16

*Blair v. Bethel Sch. Dist.,*
608 F.3d 540 (9th Cir. 2010) ................................................................ 27

*Bodzin v. City of Dallas,*
768 F.2d 722 (5th Cir. 1985) ................................................................ 28

*Boos v. Barry,*
485 U.S. 312 (1988) ....................................................................... 8, 10

*Burwell v. Hobby Lobby Stores, Inc.,*
573 U.S. 682 (2014) ............................................................................ 14

*Byrum v. Landreth,*
566 F.3d 442 (5th Cir. 2009) ................................................................ 33

*Cath. Leadership Coal. of Tex. v. Reisman,*
764 F.3d 409 (5th Cir. 2014) ................................................................ 12

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,*
508 U.S. 520 (1993) ............................................................................ 15

*Cohen v. California,*
403 U.S. 15 (1971) .............................................................................. 12

*Cornish v. Corr. Servs. Corp.,*
402 F.3d 545 (5th Cir. 2005) ................................................................ 18

*Davidson v. Stafford,*
848 F.3d 384 (5th Cir. 2017) ................................................................ 32

*Erznoznik v. City of Jacksonville,*
422 U.S. 205 (1975) ............................................................................ 10

*Evans v. Newton,*
382 U.S. 296 (1966) ............................................................................ 20

*Flagg Bros. v. Brooks*,
    436 U.S. 149 (1978) ............................................................. 20

*Forsyth County v. Nationalist Movement*,
    505 U.S. 123 (1992) ............................................................. 10

*Fraire v. City of Arlington*,
    957 F.2d 1268 (5th Cir. 1992) ............................................ 24

*Freeman v. Gore*,
    483 F.3d 404 (5th Cir. 2007) ........................................ 29, 30

*Frye v. Kansas City Mo. Police Dep't*,
    375 F.3d 785 (8th Cir. 2004) .............................................. 11

*Fulton v. City of Philadelphia*,
    593 U.S. 522 (2021) ............................................................. 16

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*,
    515 U.S. 557 (1995) .......................................................... 4, 5

*Johnson v. City of Shelby*,
    574 U.S. 10 (2014) ............................................................... 24

*Joseph Burstyn, Inc. v. Wilson*,
    343 U.S. 495 (1952) ............................................................... 4

*Kennedy v. Bremerton Sch. Dist.*,
    597 U.S. 507 (2022) ........................................................ 7, 15

*Knowles v. City of Waco*,
    462 F.3d 430 (5th Cir. 2006) ................................................ 6

*Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*,
    507 U.S. 163 (1993) ............................................................. 24

*Lee v. Katz*,
    276 F.3d 550 (9th Cir. 2002) .............................................. 17

*Lovelace v. Software Spectrum Inc.*,
    78 F.3d 1015 (5th Cir. 1996) .............................................. 30

*Marsh v. Alabama,*
    326 U.S. 501 (1946) ............................................................ 18

*Masterpiece Cakeshop v. Colo. C.R. Comm'n,*
    584 U.S. 617 (2018) ............................................................ 15

*McCullen v. Coakley,*
    573 U.S. 464 (2014) ............................................................ 12

*Mink v. Knox,*
    613 F.3d 995 (10th Cir. 2010) ............................................ 32

*Minn. Voters All. v. Mansky,*
    585 U.S. 1 (2018) ............................................................... 34

*NAACP v. Button,*
    371 U.S. 415 (1963) ............................................................ 27

*Polnac v. City of Sulphur Springs,*
    555 F. Supp. 3d 309 (E.D. Tex. 2021) ................................ 30

*Poullard v. Jones,*
    596 F. Supp. 3d 729 (N.D. Tex. 2022) ................................ 30

*Reed v. State,*
    762 S.W.2d 640 (Tex. App.—Texarkana 1988) .................. 31

*Reed v. Town of Gilbert,*
    576 U.S. 155 (2015) ......................................................... 8, 9

*Roaden v. Kentucky,*
    413 U.S. 496 (1973) ............................................................ 13

*Robinson v. Hunt County,*
    921 F.3d 440 (5th Cir. 2019) ................................................ 9

*Saldana v. Garza,*
    684 F.2d 1159 (5th Cir. 1982) ............................................ 28

*Scanlan v. Tex. A&M Univ.,*
    343 F.3d 533 (5th Cir. 2003) ................................................ 7

iv

*SEIU, Loc. 5 v. City of Houston*,
    595 F.3d 588 (5th Cir. 2010) .............................................................. 26

*Sindhi v. Raina,*
    905 F.3d 327 (5th Cir. 2018) .............................................................. 32

*Staub v. City of Baxley*,
    355 U.S. 313 (1958) ........................................................................... 13

*Tandon v. Newsom*,
    593 U.S. 61 (2021) ...................................................................... 15, 16

*UAW, Loc. No. 5285 v. Gaston Festivals, Inc.*,
    43 F.3d 902 (4th Cir. 1995) ......................................................... 19, 20

*United States v. O'Brien*,
    391 U.S. 367 (1968) ............................................................................. 8

*United States v. Virginia*,
    518 U.S. 515 (1996) ............................................................................. 7

*Wayte v. United States*,
    470 U.S. 598 (1985) ........................................................................... 31

*Whitley v. Hanna*,
    726 F.3d 631 (5th Cir. 2013) .............................................................. 31

*World Wide St. Preachers Fellowship v. Town of Columbia*,
    245 F. App'x 336 (5th Cir. 2007) ....................................................... 27

## Other Authorities

Andrew Smith,
    *Events in the City: Using Public Spaces as Event Venues* (2015) ......... 3

## INTRODUCTION

Defendants widely proclaim Discovery Green is a public park, from its official website, to the "Park Rules," to a prominent sign at its entrance, and even to the IRS under oath. ROA.22 [¶¶ 45, 47]; ROA.23 [¶ 53]; ROA.328 [Question 4a].

Under the First Amendment, Plaintiffs have every right to advocate peacefully for animal rights in this public park by showing passersby silent documentary clips of industrial farming practices. Yet on four separate occasions, Defendants expelled Plaintiffs from Discovery Green, ultimately arresting Mr. Dubash and threating to arrest Dr. Harsini for trespass. Why? In Defendants' own words, it was "the content of [Plaintiffs'] videos," their perceived "offensive[ness]," and lack of "appropriate[ness]" that motivated Plaintiffs' removal. ROA.27–30 [¶¶ 83–102, 111–14]. As park staff and city police confirm on video, "*the only problem that Discovery Green has*" is "*the content of the videos.*" ROA.30 [¶¶ 109–10] (emphasis added); Video 1, at 00:07:20.

Defendants now argue to this Court that it should ignore all these statements—made to the public, to Plaintiffs on recorded video, and to the federal government under penalty of perjury—and hold that

1

Discovery Green is not a traditional public forum and Defendants' actions had nothing to do with the content or offensiveness of Plaintiffs' speech. They even argue that showing documentary film is "non-expressive conduct … afforded no constitutional protection." Brief of Appellees City of Houston et al. 7 ("City Resp. Br.").

Defendants' arguments contradict not just their own words, but well-established First Amendment law. At bottom, this is a straightforward case involving a City, its police, and others acting on its behalf, stifling free expression in Houston's premier traditional public forum. If the Court takes Defendants' statements at face value, as one must at the motion to dismiss stage, the law does the rest. Mr. Dubash and Dr. Harsini respectfully ask this Court to reverse the district court's decision and remand with instructions to grant a preliminary injunction.

## ARGUMENT

## I.    The First Amendment Protects Plaintiffs' Advocacy in a Public Park.

Defendants' attempts to redefine Discovery Green as a "limited public forum," City Resp. Br. 67, defy core constitutional principles and are improper at the motion to dismiss stage. Defendants' statements on the Discovery Green website, in the park's organization documents, to

2

the IRS, and elsewhere, leave no doubt that Discovery Green is a public park and thus a traditional public forum. ROA.22 [¶¶ 45, 47]; ROA.23–24 [¶¶ 53, 56, 57, 59]; ROA.301 [§ 2(b)(i)]; ROA.328 [Question 4a]. And Plaintiffs' speech goes to the very heart of the First Amendment: advocacy on a matter of public concern within a traditional public forum.

Yet Defendants now attempt to describe the Park as "a specially designed urban green space" that "carries out the vision of the private benefactors who create it." *See, e.g.*, Brief of Appellee Houston Downtown Park Corp. Resp. 6 ("Park Corp. Resp. Br."). And they even argue that because Discovery Green hosts "multiple events" and "programming," it is a "limited public forum." City Resp. Br. 67, 13. Defendants offer no record support and, more importantly, cite no case holding that hosting private events diminishes a public park's entitlement to First Amendment protection. If that were so, it would upend the time-honored tradition of public parks serving as havens for free expression. *See, e.g.*, Andrew Smith, *Events in the City: Using Public Spaces as Event Venues* 1972 (2015) (describing the "macro-trend" in which public parks are "staging more events than ever").

Just as wrong is Defendants' claim that showing a film is "non-expressive conduct, which is afforded no constitutional protection." City Resp. Br. 7; *see also id.* at 17–20. The Supreme Court rejected this argument decades ago, affirming films "are a significant medium for the communication of ideas" as "they may affect public attitudes and behavior in a variety of ways." *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501 (1952).

Defendants nonetheless maintain that Plaintiffs' display of muted documentary footage portraying industrialized farming—to affect public attitudes about what Plaintiffs believe are cruel practices—"is not expression because it contains no inherent message entitled to protection." City Resp. Br. 17. They even assert Plaintiffs' message lacks "a specific, particularized message" and is unlikely to "be understood by those who viewed it." *Id.* at 18 (internal quotations omitted).

The Supreme Court rejected that argument decades ago, too, making clear the First Amendment protects expression no matter if a viewer understands a "particularized message." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 569 (1995). It's enough that an ordinary viewer would understand Plaintiffs are expressing

*something* about the treatment of animals portrayed in their videos. *See id.*

Here, Defendants' own morally charged descriptions of these silent videos prove that simply viewing them *does* convey Plaintiffs' message. While Plaintiffs' Complaint describes the footage objectively as "lawful, industry-standard practices" such as "killing male chicks at birth" or "keeping pregnant pigs in small cages where they can only sit or stand," ROA.21 [¶ 39], it is *Defendants* who characterize these facts as "mistreatment of animals," "torture," and "cruelty and violence." City Resp. Br. 3, 6, 19. In short, Defendants' briefing proves the Supreme Court's point in *Burstyn*.

Defendants also assert that because "some passersby [] inquire what is being depicted" it "fatally undermines Plaintiffs' entire claim." City Resp. Br. 20. But if that argument held, the government could muzzle all sorts of advocacy. Imagine if the First Amendment did not protect advocates for ending child hunger merely because they air commercials depicting emaciated children. Or if antisemitism protesters lost First Amendment protection because they "merely" display silent

footage depicting the horrors of the Holocaust. Defendants' arguments

find no purchase whatsoever in First Amendment law.

## II. Defendants Have Imposed a Content-Based Speech Restriction That Cannot Overcome Strict Scrutiny.

Defendants' own recorded statements at the time of arrest *and on appeal* disprove their claim that "even if [Plaintiffs'] conduct were expressive" the speech prohibition was merely a "time, place, and manner restriction," City Resp. Br. 7. Indeed, their statements only cement that it's a content-based speech restriction that flunks strict scrutiny. *See, e.g.*, *Knowles v. City of Waco*, 462 F.3d 430, 433–34 (5th Cir. 2006) (analyzing speech prohibitions as time, place, and manner restrictions requires content-neutrality).

When Defendants arrested Mr. Dubash and threatened to arrest Dr. Harsini, they consistently cited the "offensive" nature and "content" of Plaintiffs' speech as the basis for their removal. *See, e.g.*, ROA.30 [¶¶ 109–11]. Neither Conservancy staff nor the arresting officers cited a single park rule that Plaintiffs allegedly violated, let alone a content-neutral one. *See, e.g.*, ROA.27–29 [¶¶ 87, 94, 99, 101]; ROA.32 [¶ 128].

Now, on appeal, Defendants ask the Court to ignore these statements and accuse Plaintiffs of "word play" for suggesting Defendants

meant what they said. City Resp. Br. 25. But the plain meaning of Defendants' words controls, especially at the motion to dismiss stage where courts must resolve any doubt in plaintiffs' favor. *Cf. Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 537 (5th Cir. 2003) (reversing where "district court failed to construe" all statements in "light most favorable to the plaintiffs"). The law, moreover, binds Defendants to their contemporaneous reasons for censorship and rejects post-litigation rationales invented by their attorneys. "Government 'justification[s]' for interfering with First Amendment rights 'must be genuine, not hypothesized or invented post hoc in response to litigation." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 543 n.8 (2022) (quoting *United States v. Virginia*, 518 U.S. 515, 533 (1996)).

Defendants' argument that they "were not discussing 'content' in the legal sense" but "in an audio-visual sense" makes no sense. City Resp. Br. 25. "Content" is not a legal term of art. It means the same thing here as it would in any other context—and Defendants' arguments on appeal prove it. Indeed, Defendants repeatedly describe Plaintiffs' documentary clips by referring to their content: videos "depicting mistreatment of animals," "killing, torture, or other violence against animals," or "animal

7

cruelty." *Id.* at 3, 6–7. They even admit "the sole reason for the restrictions at issue here was the graphic nature of the video footage." *Id.* at 30. Defendants thus imposed an "obvious" content-based restriction because it operates by "defining regulated speech by particular subject matter." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).

Defendants' own statements also foreclose their reliance on *United States v. O'Brien*, City Resp. Br. 21, since they establish the limitations on Plaintiffs' First Amendment rights were not "incidental" to an interest "unrelated to the suppression of free expression." 391 U.S. 367, 377 (1968). This case is instead akin to *Boos v. Barry*, where the Supreme Court invalidated a prohibition on signs near foreign embassies that "tend[] to bring that foreign government into 'public odium' or 'public disrepute.'" 485 U.S. 312, 315 (1988). The Court held the prohibition was clearly "content based" as its enforcement depended on whether the signs contain "critic[ism] of the foreign government." *Id.* at 319–20. So too here, where Defendants prohibit displaying video footage based solely on whether it contains "mistreatment of animals," "killing, torture, or other violence against animals," or "animal cruelty." City Resp. Br. 3, 6–7.

Defendants err twice over by arguing that because they do not take a position on animal cruelty, their speech prohibition is not content based: "prohibiting videos depicting killing of animals could equally apply to an individual espousing views *opposite* Plaintiffs' in this case," and thus "[t]he Conservancy made no determination based upon the message." *Id.* at 24. First, the argument misses the Supreme Court's point in *Reed* that the "paradigmatic example of content-based discrimination" "singles out specific subject matter for differential treatment, *even if it does not target viewpoints within that subject matter*." 576 U.S. at 169 (emphasis added). By Defendants' repeated admission, their restriction "singles out" video footage of "specific subject matter" for blanket censorship within Discovery Green. *Id.*

Second, Defendants again ignore their own words establishing they *do* discriminate against Plaintiffs' viewpoint. By censoring Plaintiffs based on the Conservancy's and city police officers' "subjective judgment that the content of protected speech is offensive or inappropriate," Defendants violated the First Amendment's bar on viewpoint discrimination. *Robinson v. Hunt County*, 921 F.3d 440, 447 (5th Cir. 2019).

9

What's more, Defendants' concerns about viewer reactions to Plaintiff's speech also underscore why their prohibition is content based. At the time of Mr. Dubash's arrest, Conservancy management justified Plaintiffs' removal on grounds that their speech is offensive and might "disturb children." ROA.31 [¶ 124]; ROA.29 [¶ 98]; *see also* ROA.791 [¶ 1]. By repeating this justification on appeal, Defendants confirm their "restrictions upon Plaintiffs were in furtherance [of] its efforts to protect children" and to prevent Plaintiffs from "disturbing" others. City Resp. Br. 67–68, 27; *see also id.* at 7, 27, 49, 68. Such "[r]egulations that focus on the direct impact of speech on its audience" are not content neutral. *Boos*, 485 U.S. at 321; *see also Forsyth County v. Nationalist Movement*, 505 U.S. 123, 134 (1992) ("Listeners' reaction to speech is not a content-neutral basis for regulation."). And as Plaintiffs explained in their Opening Brief, in a traditional public forum protected speech "cannot be suppressed solely to protect the young from ideas or images that" the government "thinks unsuitable for them." *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 213–14 (1975).

Defendants ignore these Supreme Court cases and rely instead on an out-of-circuit opinion, *Frye v. Kansas City Missouri Police Department*,

to argue that governments may restrict graphic images in public spaces. City Resp. Br. 28–30 (citing 375 F.3d 785 (8th Cir. 2004)). Not only is *Frye* inapplicable to the extent it conflicts with subsequent Supreme Court precedent like *Reed*, it is also plainly distinguishable.

In *Frye*, police officers removed anti-abortion protesters displaying magnified photographs of aborted fetuses at a busy intersection under a content-neutral city ordinance restricting conduct "hindering or impeding" traffic. 375 F.3d at 788. As Defendants themselves describe, the "police fielded numerous complaints from motorists" that the signs were "distracting drivers, nearly resulting in multiple collisions." City Resp. Br. 28 (citing *Frye*, 375 F.3d at 788). To redress this safety concern, police officers gave protesters the option of remaining in the public forum but moving "further away from the road with the large photographs of the mutilated fetuses," or "staying in the same location as long as they did not display the large photographs that were creating a traffic hazard." 375 F.3d at 788.

By contrast, Defendants enforced a blanket prohibition on Plaintiffs' speech *anywhere* in a *public park* based explicitly on its *content*. In *Frye*, viewers' inability to avert their eyes without causing

11

harm informed the court's reasoning. But in traditional public forums, we tolerate a protester's right to use shocking language and imagery specifically because offended viewers can "effectively avoid further bombardment of their sensibilities simply by averting their eyes." *Cohen v. California,* 403 U.S. 15, 21 (1971). Indeed, this "aspect of traditional public fora," by which "a listener often encounters speech he might otherwise tune out," is "a virtue, not a vice." *McCullen v. Coakley*, 573 U.S. 464, 476 (2014).

Defendants' content-based speech prohibition cannot satisfy strict scrutiny for the litany of reasons described in Plaintiffs' Opening Brief. *See* Opening Br. 24–32. Defendants do not attempt to argue otherwise and so forfeit the argument on appeal.

## III.  Defendants' Speech Prohibition Is Also an Unlawful Prior Restraint.

The Defendants' edict "forbidding certain communications" issued "in advance of the time that such communications are to occur" is a "classic prior restraint." *Cath. Leadership Coal. of Tex. v. Reisman*, 764 F.3d 409, 437 (5th Cir. 2014). As described in Plaintiffs' Opening Brief, following Mr. Dubash's unlawful arrest in Discovery Green, he and Dr. Harsini sent a letter through counsel to the City, its Park Corporation,

and the Conservancy outlining the constitutional issues underlying this action. ROA.36 [¶¶ 155–58]; ROA.160–63, 165–67. The Conservancy replied that its "position has not changed" and affirmed that Plaintiffs were henceforth prohibited from advocating against animal cruelty in the Park by displaying their muted documentary footage or wearing Guy Fawkes masks. ROA.37 [¶ 160]; ROA.170.

The City and Conservancy claim this is not a prior restraint because "Plaintiffs were told only that playing a specific video was not allowed." City Resp. Br. 34. But that is, quite literally, a prior restraint. *See, e.g.*, *Roaden v. Kentucky,* 413 U.S. 496, 504–06 (1973) (finding government actions against specific video titled *Cindy and Donna* constituted unconstitutional prior restraint). And Defendants make no attempt to deny the Conservancy's unbridled discretion in determining what speech is permitted. *Staub v. City of Baxley*, 355 U.S. 313, 325 (1958) (invalidating prior restraint on grounds of unbridled discretion).

The Park Corporation, meanwhile, argues only that it never received notice of Plaintiffs' letter describing the issue and so is not responsible for any prior restraint. Park Corp. Resp. Br. 2, 4. But whether the Park Corporation's registered agent to whom Plaintiffs mailed the

13

letter notified the Park Corporation of its receipt is a fact question inappropriate at the motion to dismiss stage.[1] *Bevill v. Fletcher*, 26 F.4th 270, 274 (5th Cir. 2022).

## IV. Mr. Dubash's Advocacy Is Also Protected Religious Expression.

Defendants' attack on Mr. Dubash's free exercise claim gets the law and factual allegations wrong. Mr. Dubash was motivated by desire to spread *ahimsa*, a central tenet of his Vedantic Hindu faith meaning "nonviolence." ROA.16–17 [¶¶ 22–24]. Courts must accept this factual allegation as true at this stage, and regardless, Defendants do not dispute it.[2] And because Mr. Dubash's arrest (and continued exclusion from advocating in Discovery Green under a prior restraint) penalize him for acting "in accordance with [his] religious beliefs," Defendants' action "clearly imposes a substantial burden on those beliefs." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 726 (2014).

---

[1] The notice letter is addressed to Mr. Arturo G. Michel and the City of Houston Legal Department—the Park Corporation's registered agent. ROA.62 (articles of incorporation, Article VIII); *see also* ROA.164 (confirming receipt).

[2] Nor could they. *See* Amicus Br. of Hindu Am. Found. 5.

Defendants' argument consequently consists of a single claim: "that Dubash never asserted his religious views" and Defendants were unaware "of Dubash's religion at the time [of his arrest]." City Resp. Br. 35, 36. Yet there is no "knowledge" element to the Free Exercise Clause, and Defendants cite no authority suggesting otherwise. The First Amendment protects conduct that is "motivated by religious conviction." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 544 (1993). And burdens on religious exercise are subject to strict scrutiny when they are "not neutral" *or* are not "generally applicable." *Kennedy*, 597 U.S. at 525–26. Hostility to religion, which requires knowledge, may be relevant to whether a government action is *neutral*. *See Masterpiece Cakeshop v. Colo. C.R. Comm'n*, 584 U.S. 617, 638 (2018). But it has no bearing on whether the action is "generally applicable." *Tandon v. Newsom*, 593 U.S. 61, 62 (2021) (per curiam).

Defendants' speech prohibition is not generally applicable and thus "trigger[s] strict scrutiny" for two independent reasons. *Id.* First, it "treat[s] *any* comparable secular activity more favorably than religious exercise." *Id.* (emphasis in original). "Comparability is concerned with the risks various activities pose, *not the reasons why people gather*." *Id.*

15

(emphasis added). Because Mr. Dubash alleges Defendants treated comparable secular activity more favorably than his religious exercise, ROA.25–26, 49, Defendants' awareness of his religious motivation is irrelevant. *Tandon*, 593 U.S. at 62.

Second, Defendants' enforcement of their speech prohibition is determined subjectively on a "case by case" basis, depending on what the Conservancy's management finds "appropriate" or "offensive." ROA.30–31, 34; *see* ROA.31 [¶ 124] ("[I]f you are showing offensive material [the Conservancy's President] does not like, you can't be here."). Mere existence of a "mechanism for granting exceptions renders a policy not generally applicable, regardless whether any exceptions have been given," and triggers strict scrutiny. *Fulton v. City of Philadelphia*, 593 U.S. 522, 537 (2021).

The Park Corporation maintains it "did not receive notice of any issues associated with [this action] until receipt of the underlying lawsuit." Park Corp. Resp. Br. 2. Once again, that is a factual dispute with no place at the motion to dismiss stage. *Bevill*, 26 F.4th at 274. Mr. Dubash has satisfied his pleading burden as to the Park Corporation on his free exercise claim.

**V.    Plaintiffs' Pleadings Establish the Conservancy and Mr. Mandel Acted Under Color of State Law and Finding Otherwise Would Create a Circuit Split.**

Nothing Defendants offer on appeal changes the fact that the Conservancy and Mr. Mandel are state actors because they worked jointly with the government to operate a traditional public forum. The question of whether a private entity becomes a state actor by virtue of operating a public park is not a new one for the circuit courts. The Ninth Circuit held in *Lee v. Katz* that a private company operating a government-owned outdoor commons area was a state actor subject to the First Amendment. Opening Br. 22 (citing 276 F.3d 550, 556 (9th Cir. 2002)). If this Court upholds the district court's contrary opinion, it will create a split with the Ninth Circuit—and place this Court on the less speech-protective side of that split.

It would also put this Court on the wrong side of the Supreme Court's decision in *Marsh v. Alabama*, which held a state violates the First and Fourteenth Amendments by convicting an individual for trespass after she was arrested for distributing religious literature in a privately-owned town "contrary to the wishes of the town's [private] management." 326 U.S. 501, 502 (1946). If a privately owned town is

17

subject to the First Amendment, so is a *publicly* owned and created, privately run park—over which the City maintains some control.

For the same reasons that guided the Ninth Circuit in *Lee* and Supreme Court in *Marsh,* Plaintiffs have established that Defendants acted under color of state law by: (a) engaging in joint action with the City, and (b) undertaking a function that is both traditionally and exclusively held by the government.

Plaintiffs' allegations and the documents incorporated by reference show the Conservancy and Mr. Mandel are "willful participant[s] in joint action with the State or its agents" and thus state actors under the "joint action test." *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 550 (5th Cir. 2005). The Park Corporation's Articles of Incorporation explicitly acknowledge the intent "to accomplish the City's governmental purposes consisting of the acquisition, development, operation and maintenance of a new public park." ROA.24 [¶ 59]; ROA.59 [art. IV]. The Park Corporation's board of directors is required to contain at minimum three members of the Conservancy's board, which manages the Park under an operating agreement reserving supervisory authority to the Mayor. ROA.24 [¶ 60]; ROA.60–61 [art. VI].

18

Once the Conservancy was created to oversee Discovery Green on the government's behalf, the City and its Park Corporation expressly delegated rule-making authority for Discovery Green to the Conservancy, subject to the Mayor's approval. ROA.24 [¶ 62]; ROA.811 [§ 4.3]. And as this case highlights, City police enforce park rules and laws at Discovery Green and join with park management to decide who may speak in the public park. All of this negates Defendants' argument that "Plaintiffs have asserted no facts establishing joint action." City Resp. Br. 11. If Plaintiffs' factual allegations do not satisfy joint action at the motion to dismiss stage, it is hard to imagine what would.

Also, it is difficult to deny that operating a public park—our country's quintessential "traditional public forum"—is a traditional, exclusive government function. The Defendants' reliance on a single out-of-circuit case cannot defeat that reality. *See* City Resp. Br. 13 (citing *UAW, Loc. No. 5285 v. Gaston Festivals, Inc.*, 43 F.3d 902, 908 (4th Cir. 1995)). *Gaston Festivals* concerned a private actor operating a "one day" festival within a public forum, not a private actor operating the *public forum* itself. *Id.* at 904. It is thus inapposite.

On the other hand, the Supreme Court in *Evans v. Newton* held that private trustees tasked with maintaining a public park on behalf of a city engaged in state action, and likened public parks to "a fire department or police department that traditionally serves the community." 382 U.S. 296, 301–02 (1966). Even in *Flagg Bros. v. Brooks*, where the Supreme Court in dicta expressed some "doubt that [*Evans v. Newton*] intended to establish" broadly that "operation of a park for recreational purposes is an exclusively public function," the Court emphasized that—as the *Newton* Court found—state action occurs where "transfer of title [for a public park] to private trustees" has not "eliminated the actual involvement of the city" in the park's "maintenance and care." 436 U.S. 149, 159 n.8 (1978). That is so here, where public records establish the City retains oversight authority and numerous reserved powers pertaining to Discovery Green's operations. ROA.15 [¶ 15], 24–26 [¶¶ 60, 73–77]; ROA.60–61 [art. VI]; ROA.811 [§ 4.3].

## VI.    The City and Its Park Corporation Must Uphold Constitutional Rights in Their Public Park.

Despite the City and its Park Corporation's efforts to evade constitutional obligations, they are dutybound to uphold the First

Amendment in Discovery Green. Both Defendants point to the other, and to the Conservancy they tasked with overseeing Discovery Green, to try to avoid liability. But the City and its Park Corporation acted jointly with the Conservancy to oversee and develop its public park, so all three are liable.

The City points to its Park Corporation, claiming there is no "sufficient nexus between the Conservancy's actions and the City" because the Park Corporation acted as an intermediary. City Resp. Br. 11. Elsewhere, the City argues it was the Park Corporation, not the City itself, that "expressly delegated the authority to make decisions" to the Conservancy. City Resp. Br. 53.

But these distinctions are illusory. The Park Corporation is a local government entity the City created solely "to aid and act on [its] behalf … to accomplish the City's governmental purposes consisting of the acquisition, development, operation and maintenance of a new public park." ROA.24 [¶ 59]; ROA.59 [art. IV]. Texas law also confirms the Park Corporation acts on the City's behalf. *See* Tex. Transp. Code §§ 431.003(4), .101(a). Members of the Park Corporation's board of directors are appointed by the Mayor and subject to confirmation by the

21

City Council, and its operations are specifically "governmental and not proprietary functions." ROA.15 [¶ 15], 24 [¶ 60]; ROA.60–61 [arts. IV, VI]. The City's choice to create a government entity to serve as its intermediary does not absolve the City of liability.

The Park Corporation's arguments fare no better. Despite owning the land encompassing Discovery Green, ROA.23–24 [¶¶ 56, 59], the Park Corporation points the finger at the Conservancy, maintaining that it did not itself "control the day-to-day operations of Discovery Green" and was thus "not involved" in Plaintiffs' expulsion. Park Corp. Resp. Br. 1–2. This ignores that the City and its Park Corporation—both government actors—charged the Conservancy "with developing rules and regulations governing the use of Discovery Green (Park Rules)." ROA.24 [¶¶ 61, 63]; ROA.875 [§ 0.1]. They are accordingly all liable. If government entities could circumvent their constitutional obligations in public forums by delegating rulemaking and oversight to private third parties, it would imperil all constitutional rights, as several *amici* emphasize.[3]

––––––––––––––––––

[3] *See* Amicus Br. of the ACLU of Texas; Young America's Foundation, Hamilton Lincoln Law Institute, and Advancing American Freedom; Liberty Justice Center; Center for American Liberty; and National Press Photographers Association.

As the ACLU of Texas points out, public parks are frequently operated by private conservancies. Amicus Br. of ACLU of Tex. 26. The National Mall in Washington, D.C., and Central Park in New York City are just two examples. *Id.* at 26–27. Certainly, a private conservancy the government charges with operating the National Mall may not violate speakers' First Amendment rights in that venerated public park. And what of the implications beyond public parks? Public universities across the country are already attempting to evade First Amendment obligations by creating "independent" nonprofit corporations endowed with authority to suppress student expression. *See* Amicus Br. of Young Am.'s Found. et al. 14–17. If the district court's opinion stands, there is no doubt it will have far-reaching consequences for freedom of expression.

## VII. Plaintiffs Have Satisfied Their *Monell* Burden at the Pleadings Stage.

Defendants err on both process and substance in seeking to avoid *Monell* liability. At the outset, they misstate the law by claiming *Monell* imposes a "heightened pleading requirement." City Resp. Br. 51–52. The Supreme Court expressly rejected as much in *Johnson v. City of Shelby*, confirming there is "no heightened pleading rule" for "seeking damages for violations of constitutional rights" under Section 1983. 574 U.S. 10,

11 (2014) (per curiam). Federal courts, therefore, do not apply a standard "more stringent than the usual pleading requirements of Rule 8(a)" in "civil rights cases alleging municipal liability." *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit,* 507 U.S. 163, 164 (1993). The Fifth Circuit opinion Defendants rely upon to argue for a heightened *Monell* standard predates these Supreme Court cases. *See* City Resp. Br. 51–52 (quoting *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)).

Substantively, Defendants err on several levels by arguing Plaintiffs' damages claims against the Conservancy fails because Plaintiffs do not plead a Conservancy custom or policy, which some circuits require for Section 1983 claims against a private entity. City Resp. Br. 15–17. Principally, Defendants offer no legal authority (binding or otherwise) to support their contention that *Monell*'s requirements apply to the Conservancy. Indeed, Plaintiffs' allegations show the Conservancy is more like a state official acting on the City's behalf for a

24

limited, specific purpose—operating a public park—than it is like a local government entity.[4] ROA.23–24 [¶¶ 56, 61]; ROA.810 [Recitals ¶ B].

Even if this Court followed other circuits in holding Plaintiffs must satisfy *Monell's* custom or policy requirements as to the Conservancy, the allegations here do so. The Complaint pleads throughout that the Conservancy enacted and enforced a policy censoring Plaintiffs' speech based on viewpoint and content. ROA.39 [¶ 174], 41–42 [¶¶ 190–92], 44 [¶¶ 206–10], 49 [¶¶ 241–42]. This includes alleging that, after Plaintiffs' lawyer sent a letter to Defendants outlining the constitutional violations, the Conservancy reiterated that it "has not changed" its policy that Plaintiffs would be prohibited from returning to Discovery Green unless they used an "alternative method" of speech. ROA.36–37 [¶¶ 155–60]; ROA.170. And as Plaintiffs also allege, the Conservancy's exercise of arbitrary and unfettered discretion to determine whether speech is "appropriate" on a "case by case basis" is itself an unconstitutional policy. ROA.30–34 [¶¶ 107, 110–12, 114, 124–29, 132–36, 141]; *see SEIU, Loc. 5 v. City of*

---

[4] To the extent there's a fact question about the Conservancy in this regard, all facts must be construed in Plaintiffs' favor and dismissal would be improper.

*Houston*, 595 F.3d 588, 596 (5th Cir. 2010) (requiring "narrow, objective, and definite standards").

Indeed, the Conservancy itself confirms the existence of a policy. The Conservancy describes it as prohibiting "public broadcasting of videos displaying violence or death" or "depicting mistreatment of animals," "killing, torture, or other violence against animals," or "animal cruelty." City Resp. Br. 68, 3, 6, 7. The Conservancy justifies "its restrictions upon Plaintiffs [as] in furtherance [of] its efforts to protect children from scary, graphic videos." *Id.* at 67–68. And Defendants defend the policy as "content neutral," *id.* at 21–22, 25, 30, 69, and "narrowly tailored," *id.* at 23, 62. There is no way to square these statements on appeal as describing anything other than a policy the Conservancy enforces.

## VIII. Plaintiffs Have Stated Damages Claims for First and Fourth Amendment Violations.

Defendants ignore long-established doctrine and unfavorable facts in their attempt to dodge Plaintiffs' First and Fourth Amendment claims against Officers Douglas and Whitworth, and former Conservancy President, Mr. Mandel. They start by arguing Dr. Harsini "cannot plead a claim against the Officers … because he was not arrested" and thus

suffered only "minor indignity" and "de minimis deprivations" of First Amendment rights. City Resp. Br. 37 (quoting *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 544 (9th Cir. 2010)). But this Court has held that threatening to arrest a demonstrator for constitutionally protected speech is sufficiently chilling to support a First Amendment claim. *World Wide St. Preachers Fellowship v. Town of Columbia*, 245 F. App'x 336, 342–43 (5th Cir. 2007) (per curiam); *see also NAACP v. Button*, 371 U.S. 415, 433 (1963) ("The threat of sanctions may deter [the exercise of First Amendment rights] almost as potently as the actual application of sanctions."). That is what Officers Douglas and Whitworth did here to *both* Plaintiffs at Mr. Mandel's behest. ROA.32–34 [¶¶ 127–36, 141]; *see also* Video 3, at 00:11:33–12:03, 00:12:33–14:17. And the "chill" on Dr. Harsini's speech is not theoretical. Both he and Mr. Dubash "fear returning to Discovery Green" to engage in advocacy and have not done so since Mr. Dubash's arrest. ROA.47 [¶ 229].

As to Mr. Dubash's First and Fourth Amendment claims based on unlawful arrest, Officers Douglas and Whitworth have no answer for the principle that probable cause cannot stand on the mere exercise of First Amendment rights. Opening Br. 39–40, 46. Video confirms both officers

acknowledged the "trespass" that served as the basis for arrest depended solely on the "content of [Plaintiffs'] videos," which the officers and park staff deemed "offensive" and "[in]appropriate." ROA.30–34 [¶¶ 107, 109–12, 114, 116–17, 122–27, 129, 132–33, 135–37, 141]. Nor can the officers evade the core principle that they had a duty to consider the public record, offered at the time of arrest, confirming Discovery Green is a public park, which dissipated probable cause even further. Opening Br. 47–48.[5]

Officers Douglas and Whitworth next defy both precedent and common sense by contending that placing Mr. Dubash in handcuffs and detaining him for hours was merely a "temporary detention" requiring reasonable suspicion rather than probable cause. City Resp. Br. 43. As this Court has explained, "Police detention constitutes an 'arrest,' such that it must be accompanied by probable cause, if a reasonable person in the suspect's position would understand the situation to be a restraint on

---

[5] This principle plainly distinguishes this Court's opinions on which Defendants rely. City Resp. Br. 46, 59–60 (discussing *Bodzin v. City of Dallas*, 768 F.2d 722 (5th Cir. 1985), and *Saldana v. Garza*, 684 F.2d 1159 (5th Cir. 1982)). In those cases, officers relied on witness statements while never confronted with evidence establishing the arrestees' First Amendment rights.

freedom of the kind that the law typically associates with a formal arrest." *Freeman v. Gore*, 483 F.3d 404, 413 (5th Cir. 2007) (citations omitted).

The factual allegations and corroborating video footage confirm *any* reasonable person in Mr. Dubash's position would have understood themselves to be under arrest long before Officer Ta's involvement. Officer Douglas, with Officer Whitworth standing guard, confirmed *twice* that Mr. Dubash was "being arrested." ROA.33–34 [¶¶ 138–40]; Video 3, at 00:14:32–55. Officer Douglas then handcuffed Mr. Dubash behind his back, reiterated he was *not* "free to go," and with Officer Whitworth's assistance, escorted him to a secured office where he remained, handcuffed, for several hours. ROA.33–35 [¶¶ 138–45]; *see also* Video 3, at 00:14:45–16:27.

This Court has specifically held such circumstances constitute an arrest. *See, e.g.*, *Freeman*, 483 F.3d at 413 (finding arrest where officers "threatened [plaintiff] with arrest," "handcuffed" him, and detained him in a secure location for even "30 to 45 minutes.").

This wholly undermines Defendants' insistence that the district court "appropriately took judicial notice" of the Offense Report to hold

Officers Douglas and Whitworth only "temporarily detained Dubash before Officer Ta effectuated an arrest." City Resp. Br. 37, 43. Relying on the Offense Report rather than whether "a reasonable person in the suspect's position would understand" themselves to be under arrest ignores the requisite legal analysis and this Court's binding precedent. *Freeman*, 483 F.3d at 413. It also ignores the rule that on a motion to dismiss, judicial notice of public records is permissible "only for the purpose of determining what statements the documents contain, not to prove the truth of the documents' contents." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1019 (5th Cir. 1996). The district court thus improperly applied "a presumption of truth" to credit the Offense Report over Plaintiffs' allegations. *Poullard v. Jones*, 596 F. Supp. 3d 729, 735–36 (N.D. Tex. 2022); *accord Polnac v. City of Sulphur Springs*, 555 F. Supp. 3d 309, 326 (E.D. Tex. 2021).

Officers Douglas and Whitworth are not entitled to qualified immunity for these same reasons. They effectuated Mr. Dubash's arrest and threatened to arrest Dr. Harsini. They did so based on the "content" and "offensive[ness]" of Plaintiffs' constitutionally protected speech— despite receiving undisputed public records establishing Discovery Green

as a public park where the First Amendment applies. And despite Defendants' claim that Officer Whitworth had no "involvement in arresting Dubash" and no "obligation to become involved," City Resp. Br. 44–45, the law holds him accountable for failure to prevent violations of constitutional rights. *Whitley v. Hanna*, 726 F.3d 631, 646–47 (5th Cir. 2013). Accepting Plaintiffs' factual allegations as true, any reasonable officer in Whitworth or Douglas' position had fair warning that expelling or arresting Plaintiffs for the "content" of their speech violated core First Amendment rights because protected speech cannot provide probable cause for an arrest. *See* Video 3, at 00:02:30–55, 00:14:30–15:22; *see also* ROA.31 [¶ 121], 33–34 [¶¶ 138–41].

That is true under Texas law. *See Reed v. State*, 762 S.W.2d 640, 644 (Tex. App.—Texarkana 1988, pet. ref'd).

And that is true under federal law. *See Wayte v. United States*, 470 U.S. 598, 607 (1985) (requiring "probable cause to believe that the accused committed an offense defined by statute"); *Davidson v. Stafford*, 848 F.3d 384, 393 (5th Cir. 2017), *as revised* (Mar. 31, 2017) (finding it "objectively unreasonable for [] officers to conclude that there was

31

probable cause to arrest [protester]" for "exercise of First Amendment rights"); *Mink v. Knox*, 613 F.3d 995, 1003–04 (10th Cir. 2010).

Finally, Plaintiffs' allegations establish a First Amendment claim against the Conservancy's former president, Mr. Mandel. His sole arguments are that there was no constitutional violation because he and the Conservancy are not state actors, and the First Amendment does not protect Plaintiffs' speech. City Resp. Br. 7. But as Plaintiffs show *supra*, Supreme Court precedent, undisputed public records, and Defendants' own statements refute those arguments. And as Mr. Mandel did not raise a qualified immunity defense in the district court, he has waived it. *Sindhi v. Raina,* 905 F.3d 327, 333 (5th Cir. 2018). Thus, Plaintiffs' claim against Mr. Mandel should proceed.

## IX. Plaintiffs Have Shown They Are Entitled to Preliminary Injunctive Relief.

This Court should exercise its discretion to remand with instructions to grant Plaintiffs' preliminary injunction motion for all the reasons outlined here and in their Opening Brief. *See* Opening Br. 65–67; *see also Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009). For more than three years, Defendants have stifled Plaintiffs from exercising their constitutional rights in downtown Houston's premier public park because

of the content and viewpoint of their speech. And both sides' evidence establishes Plaintiffs' entitlement to preliminary injunctive relief. *See* Opening Br. 65–67.

Defendants' arguments on appeal do nothing to weaken that entitlement. They cannot rely on post-litigation declarations to redefine Discovery Green, which is undisputedly a public park, as a "limited public forum." City Resp. Br. 67. Nor can they rely on the misstatement of law that Plaintiffs' advocacy is unprotected because the "Supreme Court is clear that conduct which requires further explanation is not subject to *any* First Amendment protection." *Id.* at 66 (emphasis in original). This is wrong in several respects. *See* discussion *supra*, Section I.

Rather, Defendants' arguments on appeal repeatedly affirm what they said at the time of Mr. Dubash's arrest: Plaintiffs' expulsion from Discovery Green was due to the *content* and perceived *offensiveness* of their speech. *See* ROA.511–13 [¶¶ 11–14, 16]; ROA.516–19 [¶¶ 8–16]; ROA.522–23 [¶¶ 7–11]; ROA.525–27 [¶¶ 8–11, 13–14]. For that reason, Defendants must satisfy strict scrutiny. *Minn. Voters All. v. Mansky*, 585 U.S. 1, 11 (2018). Yet they make no attempt to do so, effectively conceding the propriety of a preliminary injunction. City Resp. Br. 21–34.

## CONCLUSION

Plaintiffs respectfully request this Court reverse the dismissal of their claims and remand with instructions to grant them preliminary injunctive relief.

Dated: May 14, 2025                    Respectfully submitted,

                                       */s/ Sara Berinhout*

John Greil                             Sara Berinhout
Steven T. Collis                       FOUNDATION FOR INDIVIDUAL
Law and Religion Clinic                RIGHTS & EXPRESSION (FIRE)
University of Texas School of Law       510 Walnut St., Ste. 900
727 East Dean Keeton St.               Philadelphia, PA 19106
Austin, Texas 78705                    (215) 717-3473
(512) 471-5151                         sara.berinhout@thefire.org
john.greil@law.utexas.edu
steve.collis@law.utexas.edu            JT Morris
                                       FOUNDATION FOR INDIVIDUAL
                                       RIGHTS & EXPRESSION (FIRE)
                                       700 Pennsylvania Ave. SE, Ste. 340
                                       Washington, DC 20003
                                       (215) 717-3473
                                       jt.morris@thefire.org

                                       *Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I certify that on May 14, 2025, the foregoing Reply Brief of Appellants was electronically filed with the United States Court of Appeals for the Fifth Circuit using the CM/ECF system, and that all parties required to be served have been served. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of a commercial virus scanning program and is free of viruses.

*/s/ Sara Berinhout*
Sara Berinhout
*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

This Reply Brief of Appellants complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7) because it contains 6,490 words, excluding parts exempted by Rule 32(f); and (2) the typeface and type style requirements of Rule 32(a)(5) & (6), because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word (the program used for the word count).

Dated: May 14, 2025

*/s/ Sara Berinhout*
Sara Berinhout
*Counsel for Plaintiffs-Appellants*